1   RENE L. VALLADARES
    Federal Public Defender
2   Nevada Bar No. 11479
    DAVID ANTHONY
3   Assistant Federal Public Defender
    Nevada Bar No. 7978
4   david_anthony@fd.org
    ALBERT L. SIEBER
5   Assistant Federal Public Defender
    Nevada Bar No. 12153C
6   albert_sieber@fd.org
    411 E. Bonneville Avenue, Ste. 250
7   Las Vegas, Nevada 89101
    Telephone: (702) 388-6577
8   Facsimile: (702) 388-5819

9   Attorneys for Petitioner

10

11                      UNITED STATES DISTRICT COURT

12                          DISTRICT OF NEVADA

13   DONALD SHERMAN,                )
                                    )   2:02-CV-1349-LRH-LRL
14              Petitioner,         )
                                    )   OPPOSITION TO MOTION TO
15   vs.                            )   DISMISS SECOND-AMENDED
                                    )   PETITION FOR A WRIT OF HABEAS
16   RENEE BAKER, Warden, and       )   CORPUS
     CATHERINE CORTEZ MASTO, Attorney )
17   General for the State of Nevada, )
                                    )   (Death Penalty Habeas Corpus Case)
18              Respondents.        )
     _____)

19

20          Petitioner Donald Sherman, by and through undersigned counsel, hereby opposes the State's

21   motion to dismiss his Second Amended Petition for writ of habeas corpus.  This opposition is made

22   and based upon the following points and authorities and the entire file herein.

            DATED this 4th day of October 2011.
23
                                        RENE L. VALLADARES
24                                      Federal Public Defender

25                                      /s/ David Anthony
                                        DAVID ANTHONY
26                                      Assistant Federal Public Defender

27                                      /s/ Albert Sieber
                                        ALBERT L. SIEBER
28                                      Assistant Federal Public Defender

**TABLE OF CONTENTS**

1.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   THE PROCEDURAL HISTORY IN THE INSTANT CASE DEMONSTRATES THAT THE CLAIMS IN MR. SHERMAN'S FIRST AMENDED PETITION ARE TIMELY AND PROPERLY BEFORE THE COURT... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       a.   The Nevada District Court's Standard Procedure for Adjudicated Capital Habeas Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       b.   This Court's Implementation of the Standard Procedure in Mr. Sherman's Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       c.   Mr. Sherman's Diligence in Complying With His Obligations Under this Court's Scheduling Orders and the State's Continuing Disregard of Its Constitutional Non-Disclosure Obligations. . . . . . . . . . . . . . . . . . . . . . . 7

          i.   Diligence Prior to Filing of Motion for Leave to Conduct Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          ii.   Diligence During Pendency of Motion for Leave to Conduct Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          iii.   Diligence After This Court's Order Regarding Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

3.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       a.   Mr. Sherman Is Entitled to Equitable Tolling of the AEDPA Statute of Limitations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          i.   Mr. Sherman Justifiably Relied on This Court's Scheduling Orders, the Standard Procedure in Place in the Nevada District Courts for Resolving Capital Habeas Cases, and Ninth Circuit Precedent in Deciding When to File His Amended Petition.. . . . . . . . . . . . . 18

             (1)   This Court's Scheduling Orders Directed Mr. Sherman on When to File His First Amended Petition.. . . . . . . . . . . 18

             (2)   Mr. Sherman Justifiably Relied on Ninth Circuit Precedent Which Caused Him to File His First Amended Petition According to the Scheduling Orders.. . . . . . . . . . . . . . . 22

          ii.   The State's Conduct Warrants Equitable Tolling. . . . . . . . . . . . 24

             a.   Mr. Sherman Is Entitled to Equitable Tolling Because He Diligently Pursued His Rights... . . . . . . . . . . . . . . . . . . . . . 26

             b.   Mr. Sherman's First Amended Petition Is Timely Under the AEDPA Because It Was Filed Within One Year of the Date on Which the Factual Predicate of the Claims Presented Were Discovered Through the Exercise of Due Diligence and/or the Date the Impediment to Filing an Application by State Action Was Removed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

c.     Dismissal of This Action Would Violate Mr. Sherman's Statutory Right to Mandatory Appointment of Counsel... 35

d.     All Claims in Mr. Sherman's Second Amended Petition Are Exhausted and None Are Procedurally Defaulted.. . . . . 37

i.     Claim One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

ii.     Claim Two(Y). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

iii.     Remaining Portions of Claim Two. . . . . . . . . . . . . . . 48

iv.     Claim Three. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

v.     Claim Four. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

vi.     Claim Five. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

vii.     Claim Six     . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

viii.     Claim Seven. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

ix.     Claim Eight. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

x.     Claim Nine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

xi.     Claim Eleven. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

xii.     Claim Twelve. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

xiii.     Claim Thirteen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

xiv.     Claim Fourteen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

xv.     Claim Sixteen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

xvi.     Claim Seventeen. . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

xvii.     Claim Eighteen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

e.     None of the Claims in Mr. Sherman's Second Amended Petition Are Procedurally Barred Because the Purported Defaults Are Not Clearly Established, Independent of Federal Law, or Adequate to Bar Federal Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

4.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

CERTIFICATE OF ELECTRONIC SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

1

## **TABLE OF AUTHORITIES**

2

### **FEDERAL CASES**

3 Amadeo v. Zant, 486 U.S. 214 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41, 54

4 Anthony v. Cambra, 236 F.3d 568 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

5 Artuz v. Bennett, 531 U.S. 4 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

6 Baggett v. Bullitt, 277 U.S. 360 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

7 Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . .   27

8 Banks v. Dretke, 540 U.S. 668 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . .   41, 52, 71, 73

9 Beam v. Paskett, 3 F.3d 1301 (9th Cir. 1993),. . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

10 Bechtel Corp. v. Local 215 Laborers' International Union of North America, 544 F.2d 1207
(3rd Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   51
11

Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . .   75, 79
12

13 Berger v. United States, 295 U.S. 78 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   61

Blakely v. Washington, 542 U.S. 296 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   66, 67
14

15 Boyko v. Parke, 259 F.3d 781 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

Brady v. Maryland, 373 U.S. 83 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
16

17 Brambles v. Duncan, 412 F.3d 1066 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . .   16

18 Brecheen v. Reynolds, 41 F.3d 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   65

19 Brecht v. Abrahamson, 507 U.S. 619 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43, 71

Calderon v. United States District Ct. (Beeler), 128 F.3d 1283 (9th Cir. 1997). . . . . . .   16, 18, 19
20

21 Calderon v. United States District Ct. (Kelly), 163 F.3d 530 (9th Cir. 1999). . . . . . . . .   16, 19, 20

Caldwell v. Mississippi, 472 U.S. 320 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44, 56
22

23 Carter v. Bell, 218 F.3d 581 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

Castillo-Manzanarez v. INS, 65 F.3d 793 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . .   78
24

25 Chapman v. California, 386 U.S. 18 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   58

Ciak v. United States, 59 F.3d 296 (2nd Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . .   65
26

27 Coleman v. Thompson, 501 U.S. 722 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Collier v. Bayer, 408 F.3d 1279 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . .   75, 79
28

Comer v. Schriro, 463 F.3d 934 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 46, 47

Cooper v. Neven, 641 F.3d 322 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 39, 53, 54, 74

Coss v. Lackawanna County District Att'y, 204 F.3d 453 (8th Cir. 2000). . . . . . . . . . . . . . . 72

Cullen v. Pinholster, 131 S. Ct. 1388 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

Davis v. Johnson, 158 F.3d 806 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Davis v. Silva, 511 F.3d 1005 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Day v. McDonough, 547 U.S. 198 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 25

Dennis v. Brown, 361 F. Supp. 2d 1124 (N.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . 79

Dictado v. Ducharme, 244 F.3d 724 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Douglas v. California, 372 U.S. 353 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50, 51

Douglas v. Workman, 560 F.3d 1156 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Duncan v. Henry, 513 U.S. 364 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Ege v. Yukins, 485 F.3d 364 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Ellzey v. United States, 324 F.3d 521 (7th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004), rev'd, 545 U.S. 644 (2005). . . . . . . . . . . . . passim

Fields v. Woodford, 309 F.3d 1095 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Ford v. Georgia, 498 U.S. 411 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76, 78

Gates v. Woodford (Rohan ex rel. Gates), 334 F.3d 803 (9th Cir. 2003). . . . . . . . . . . . . . . 36

Greenway v. Schriro, __ F.3d __, 2011 WL 3195310 (9th Cir. July 28, 2011). . . . . . . . . . . . 76

Griffin v. Rogers, 399 F.3d 626 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Guzman v. Houk, Case Number 04-CV-194, 2006 U.S. Dist. LEXIS 99978 (S.D. Ohio Mar. 24, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Halbert v. Michigan, 545 U.S. 605 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50, 51

Harbison v. Bell, 556 U.S. 180, 129 S. Ct. 1481 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Harper v. Ercole, 648 F.3d 132 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Harris v. Carter, 515 F.3d 1051 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 16, 22, 23, 24

Hasan v. Galaza, 254 F.3d 1150 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 52

Hicks v. Oklahoma, 447 U.S. 343 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

Hoffman v. Arave, 236 F.3d 523 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . .  44, 46, 48, 65

Holland v. Florida, 130 S. Ct. 2549 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Holmes v. Buss, 506 F.3d 576 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Hoyos v. Wong, Case No. 09-CV-0388, 2010 U.S. App. LEXIS 13086 (S.D. Cal. Feb. 16, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Hung Viet Vu v. Kirkland, 363 Fed. Appx. 439, 2010 U.S. App. LEXIS 270 (9th Cir. 2010). .  17

Hurles v. Ryan, __ F.3d __, 2011 U.S. App. LEXIS 13819 (9th Cir. July 11, 2011). . . . . . . .  42

Jiminez v. Quarterman, 555 U.S. 113 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Johnson v. Arizona, 462 F.2d 1352 (9th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  78

Johnson v. Baldwin, 114 F.3d 835 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  72

Johnson v. United States, 544 U.S. 295 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34, 35

Kern Oil & Refining Co. v. Tenneco Oil Co., 840 F.2d 730 (9th Cir. 1988). . . . . . . . . . . . .  22

Kesser v. Cambra, 465 F.3d 351 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

King v. Bell, 378 F.3d 550 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20, 26

Kyles v. Whitley, 514 U.S. 419 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 61, 72

Landis v. North American Co., 299 U.S. 248 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

Lankford v. Idaho, 500 U.S. 110 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  78

Lawrence v. Florida, 127 S. Ct. 1079 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Lawrence v. Florida, 549 U.S. 327 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

Lewis v. United States, 985 F. Supp. 654 (S.D. W. Va. 1997). . . . . . . . . . . . . . . . . . . . . 17, 26

Magwood v. Patterson, 130 S. Ct. 2788 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Manning v. Foster, 224 F.3d 1129 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 57

Martinez v. Schriro, 623 F.3d 731 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 51

Mayle., 2006 U.S. Dist. LEXIS at 12-13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Mayle v. Felix, 545 U.S. 644 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

McAleese v. Brennan, 483 F.3d 206 (3rd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

McCleskey v. Zant, 499 U.S. 467 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

McDaniel v. United States District Court (Jones), 127 F.3d 886 (9th Cir. 1997). . . . . . 3, 5, 22, 75

1   McFarland v. Scott, 512 U.S. 849 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 36, 37

2   McKenna v. McDaniel, 65 F.3d 1483 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

3   Miller v. Estelle, 677 F.2d 1080 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . 40, 55, 58

4   Moore v. Knight, 368 F.3d 936 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30, 31

5   Moran v. McDaniel, 80 F.3d 1261 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 75, 79

6   Morgan v. Illinois, 504 U.S. 719 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

7   Murray v. Carrier, 477 U.S. 478 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

8   Murray v. Giarratano, 492 U.S. 1 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

9   Myers v. Ylst, 897 F.2d 417 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

10   Myers v. Ylst, 897 F.3d at 421. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

11   Napue v. Illinois, 360 U.S. 264 (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

12   Nash v. Ryan, 581 F.3d 1048 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

13   Pace v. DiGuglielmo, 544 U.S. 408 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

14   Petrocelli v. Angelone, 248 F.3d 877 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 70

15   Pliler v. Ford, 542 U.S. 225 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 26

16   Polk v. Sandoval, 503 F.3d 903 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 62, 63

17   Powell v. Lambert, 357 F.3d 871 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

18   Prieto v. Quarterman, 456 F.3d 511 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . 17, 20, 21, 22

19   Quezada v. Scribner, 611 F.3d 1165 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 28, 29, 31, 32

20   Reece v. Georgia, 350 U.S. 85 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

21   Reed v. Ross, 468 U.S. 1 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67, 70

22   Rice v. Wood, 44 F.3d 1396 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

23   Rogers v. McDaniel, Case No. 02-CV-0342-ECR-RAM, 2011 U.S. Dist. LEXIS 74029 (D. Nev. July 8, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

24

25   Roper v. Simmons, 543 U.S. 551 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69, 70

26   Sandoval v. Calderon, 241 F.3d 765 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Sechrest v. Ignacio, 943 F. Supp. 1245 (D. Nev. 1996). . . . . . . . . . . . . . . . . . . . . 44, 46, 47

27

28   Serrano v. Williams, 383 F.3d 1181 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1   Shannon v. Newland, 410 F.3d 1083 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

2   Sherwood v. Prelesnik, 579 F.3d 581 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

3   Smith v. Texas, 550 U.S. 297 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   67, 70

4   Souliotes v. Evans, 622 F.3d 1173 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

5   Spaziano v. Florida, 468 U.S. 447 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44

6   Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . .   18, 36, 37, 38

7   Starns v. Andrews, 524 F.3d 612 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28, 29

8   Staub v. City of Baxley, 355 U.S. 313 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   48

9   Streu v. Dormire, 557 F.3d 960 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

10  Strickland v. Washington, 466 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50

11  Strickler v. Greene, 527 U.S. 263 (1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41, 52, 53

12  Tart v. Washington, 949 F.2d 490 (1st Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   59

13  Taylor v. Cain, 545 F.3d 327 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   59

14  Tison v. Arizona, 481 U.S. 137 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44

15  Townsend v. Knowles, 562 F.3d 1200 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . .   16, 22, 24

16  Turner v. Louisiana, 379 U.S. 466 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   59

17  United States ex rel. Walker v. Fogliani, 343 F.2d 43 (9th Cir. 1965). . . . . . . . . . . . .   29, 58, 59

18  United States v. Buckles, 647 F.3d 883 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . .   16, 20, 22

19  United States v. Lopez, 577 F.3d 1053 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . .   17, 26, 32

20  United States v. Patterson, 211 F.3d 927 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . .   17, 20

21  Valerio v. Crawford, 306 F.3d 742 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   64, 65, 79

22  Vasquez v. Hillary, 474 U.S. 254 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

23  Village of Willowbrook v. Olech, 528 U.S. 562 (2000). . . . . . . . . . . . . . . . . . . . . . . . .   78, 79

24  Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

25  Walker v. Martin, 131 S. Ct. 1120 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

26  Ward v. Hall, 592 F.3d 1144 (11th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

27  Wasko v. Vasquez, 820 F.2d 1090 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   78

28  Weaver v. Thompson, 197 F.3d 359 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

Wells v. Maass, 28 F.3d 1005 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38, 74

Winston v. Kelly, 592 F.3d 535 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Woodson v. North Carolina, 428 U.S. 280 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Ybarra v. McDaniel, __ F.3d __, 2011 WL 3890741 (9th Cir. Sept. 6, 2011). . . . . . . . . . . . . .  75

**STATE CASES**

Archanian v. State, 122 Nev. 1019, 145 P.3d 1008 (2006). . . . . . . . . . . . . . . . . . . . . . . . . .  45

Bean v. State, 86 Nev. 80, 465 P.2d 133 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  67, 68

Bejarano v. State, 122 Nev. 1066, 146 P.3d 265 (2006). . . . . . . . . . . . . . . . . . . . . . . . . .  34, 67

Berry v. State, Case No. 52905, 2009 WL 3192937 (Nev. Sep. 23, 2009). . . . . . . . . . . . .  63, 64

Blake v. State, 121 Nev. 779, 121 P.3d 567 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45, 61

Bridges v. State, 116 Nev. 752, 6 P.3d 1000 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . .  44, 56, 61

Burriola v. State, Case No. 55364, 2010 WL 3492123 (Nev. May 7, 2010). . . . . . . . . . . . . . .  62

Butler v. State, 120 Nev. 879, 102 P.3d 71 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46, 61

Carpino v. State, Case No. 54500, 2010 WL 3502752 (Nev. June 9, 2010). . . . . . . . . . . . . . .  62

Chambers v. State, 113 Nev. 974, 944 P.2d 805 (1997). . . . . . . . . . . . . . . . . . . . . . . . . .  44

Collman v. State, 116 Nev. 687, 7 P.3d 426 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Crump v. Warden, 113 Nev. 293, 934 P.2d 247 (1997). . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Doleman v. State, Case No. 56399, 2011 WL 221912 (Nev. Jan. 13, 2011). . . . . . . . . . . . . .  62

Ducksworth v. State, Case No. 55445, 2010 WL 3315877 (Nev. June 9, 2010). . . . . . . . . . . .  62

Feazell v. State, 111 Nev. 1446, 906 P.2d 727 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  50

Gaston v. State, Case No. 52768, 2009 WL 3711916 (Nev. Nov. 3, 2009). . . . . . . . . . . . . .  63

Geary v. State, 110 Nev. 261, 871 P.2d 927 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45

Green v. Palmer, Case No. 55786, 2010 WL 5239191 (Nev. Dec. 10, 2010). . . . . . . . . . . . . .  62

Guerrero v. State, Case Nos. 53441, 53839, 53943, 2010 WL 3554312 (Nev. Sep. 10, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  62

Haynes v. State, 103 Nev. 309, 739 P.2d 497 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Herrera v. State, Case Nos. 55708, 55996, 2010 WL 4537128 (Nev. Nov. 8, 2010). . . . . . . . .  62

Hollaway v. State, 116 Nev. 732, 6 P.3d 987 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Jamison v. State, Case No. 55088, 2010 WL 3488529 (Nev. June 10, 2010)............... 62

Jezdik v. State, 121 Nev. 129, 110 P.3d 1058 (2005). .................................... 50

Johnson v. State, 118 Nev. 787, 59 P.3d 450 (2002)................................... 66

Jones v. State, 101 Nev. 573, 707 P.2d 1128 (1985).............................. 44, 56

Jones v. State, 113 Nev. 454, 937 P.2d 55 (1997).................................... 46

Jones v. State, Case No. 55832, 2010 WL 3860441 (Nev. Sep. 29, 2010). ............... 62

Kaczmarek v. State, 120 Nev. 314, 91 P.3d 16 (2004). ...................... 46, 56, 59

Klein v. State, Case No. 54438, 2010 WL 3502815 (Nev. July 15, 2010). ............... 62

Leslie v. Warden, 118 Nev. 773, 59 P.3d 440 (2002). ................................ 69

Lozada v. State, 110 Nev. 349, 871 P.2d 944 (1994). ............................... 62

Mazzan v. Warden, 116 Nev. 48, 993 P.2d 25 (2000)................................ 53

McConnell v. State, 120 Nev. 1043, 102 P.3d 606 (2004). ...................... passim

McConnell v. State, 121 Nev. 25, 107 P.3d 1287 (2005). ........................... 34

McConnell v. State, 125 Nev. __, 212 P.3d 307 (2009). ............................ 74

Middleton v. Warden, 120 Nev. 664, 98 P.3d 694 (2004)........................ 75, 77

Nellums v. State, Case No. 53407, 2011 WL 486606 (Nev. Feb. 9, 2011)................. 63

Parodi v. Washoe Medical Ctr., 111  Nev. 365, 892 P.2d 588 (1995). ................. 47

Rippo v. State, 122 Nev. 1086, 146 P.3d 279 (2006). .............................. 77

Sherman v. State, 114 Nev. 998, 965 P.2d 903 (1998). ................... 40, 60, 61, 68

St. Pierre v. State, 96 Nev. 887, 620 P.2d 1240 (1980).............................. 67

State v. Bennett, 119 Nev. 589, 81 P.3d 1 (2003). ................................ 69

State v. Haberstroh, 119 Nev. 173, 69 P.3d 676 (2003). ............................ 72

State v. Osborn, 102 Idaho 405, 631 P.2d 187 (Idaho 1981)......................... 45

Thomas v. State, 120 Nev. 37, 83 P.3d 818 (2004).............................. 65, 66

Thomas v. State, 122 Nev. 1361, 148 P.3d 727 (2006)...................... 45, 56, 59

Tinch v. State, Case No. 54562, 2010 WL 3502705 (Nev. June 9, 2010)................. 62

Valdez v. State, 124 Nev. __, 196 P.3d 465 (2008)............................. 43, 56

ix

Walker v. Fogliani, 83 Nev. 154, 425 P.2d 794 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Winfrey v. State, Case No. 55070, 2011 WL 222250 (Nev. Jan. 13, 2011). . . . . . . . . . . . . . . 63

Witter v. State, Case No. 52964, 2010 WL 4673531 (Nev. Nov. 17, 2010). . . . . . . . . . . . . . . 63

**DOCKETED CASES**

In re Access to Judicial Records of the Las Vegas Justice Court, Order No.
2004-PR-1 (effective December 1, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 31

Cook v. Arizona, Case No. 10-9742 (U.S.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Feazell v. State, Nev. Sup. Ct. No. 37789. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77, 78

Foster v. Texas, Case No. 11-6427 (U.S.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Greene v. State, Case No. C124806. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

Hill v. McDaniel, Case No. 98-cv-00914-JBR (LRL). . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Jones v. McDaniel, Case No. 96-CV-0633-ECR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

Jones v. McDaniel, Case No. CV-N-96-633-ECR (RAM). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Maples v. Thomas, Case No. 10-0063 (U.S.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Rhyne v. McDaniel, Case No. CV-HC-08-673. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

Rippo v. State, Nev. Sup. Ct. No. 44297. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

Smith v. Bell, Case No. 10-8629 (U.S.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

**FEDERAL STATUTES**

21 U.S.C. § 848(q). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 35, 36

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

35 U.S.C. § 3599(a)(2)]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 35

28 U.S.C. 2244(d)(1)(A-D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 27, 29, 32

28 U.S.C. § 2247. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

28 U.S.C. § 2254(d)(1)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 38, 65, 74

18 U.S.C. § 3599(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

28 U.S.C. § 3599(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

U.S. Const. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

U.S. Const. amend. XIV, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

U.S. Const. Amend. XIV, 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   56

**STATE STATUTES**

Idaho Code §19-2827(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   45

Nev. Rev. Stat. § 34.726. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   75

Nev. Rev. Stat. § 34.726, 34.810. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   74

Nev. Rev. Stat. § 34.800. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   75

Nev. Rev. Stat. § 34.820(1)(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   75, 76, 77, 78

Nev. Rev. Stat. § 177.055(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

**POINTS AND AUTHORITIES**

**1.     INTRODUCTION**

In the State's motion, it argues that all of the claims in Mr. Sherman's Second Amended Petition are time barred under <u>Mayle v. Felix</u>, 545 U.S. 644 (2005). Motion at 10-12. The State's reference to the filing date of the Second Amended Petition is a red herring because the First Amended Petition is a mirror image of the Second, and the First Amended Petition has been continuously on file with this Court since it was filed on November 2, 2005. Therefore, to the extent that the claims in the First Amended Petition are timely under <u>Mayle</u>, it follows that the very same claims are timely in the Second Amended Petition. As to the First Amended Petition, the State's motion completely ignores the procedural history of the federal proceedings which dictate that Mr. Sherman's petition it timely. Specifically, the State does not address the fact that Mr. Sherman filed a timely application for post-conviction relief, that the majority of his remaining time under the AEDPA passed without any attorney representing him (due to the necessity of obtaining a conflict of interest waiver), that the Federal Public Defender's Office complied with this Court's scheduling orders in every respect in filing the First Amended Petition, that there was substantial uncertainty in the law before <u>Mayle</u> was decided, that Mr. Sherman has a statutory right to counsel, and that several of the claims in Mr. Sherman's petition which deal with evidence suppressed by the State are independently timely. Under the totality of the circumstances, controlling Circuit authority holds that Mr. Sherman is entitled to equitable and statutory tolling and his First Amended Petition is timely in its entirety.

The State argues that several of the claims in Mr. Sherman's petition are unexhausted, Motion at 14-20, but this concern should not delay this Court long because it is patently obvious that the claims in his Second Amended Petition are exhausted. The second state post-conviction petition is the mirror image of the First and Second Amended Petitions that are before this Court, and the State's concern about random missing claim numbers when incorporating other claims by reference is frivolous. It is not carbon copies of the petitions that effect exhaustion, but is instead the substance of the claims as raised in the appeal briefs, and there can be no rational dispute that Mr. Sherman properly exhausted and federalized all of the claims in his Second Amended Petition during

1

1   the prior post-conviction appeal.  Moreover, Mr. Sherman did exhaust a claim of cumulative error

2   from the last post-conviction appeal, and that should suffice to exhaust his claims regardless of any

3   technical deficiency in the incorporation by reference sections of the petition.

4          Finally, the State argues that several of the claims in Mr. Sherman's petition are procedurally

5   barred.  Motion at 20-34.  However, as explained below, the claims in Mr. Sherman's petition were

6   either exhausted on the merits, excused from the exhaustion requirement, properly before this Court

7   based on a showing of cause and prejudice, or were subject to a state procedural rule that was not

8   clearly established, independent of federal law, or adequate to bar federal review.  Mr. Sherman will

9   address each of the State's contentions below.

10  **2.     THE PROCEDURAL HISTORY IN THE INSTANT CASE DEMONSTRATES THAT
           THE CLAIMS IN MR. SHERMAN'S FIRST AMENDED PETITION ARE TIMELY**

11  **AND PROPERLY BEFORE THE COURT.**

12         In its motion to dismiss, the State seeks to deny Mr. Sherman <u>any</u> federal review of his capital

13  conviction and sentence of death.  It does so by claiming that his First Amended Petition (FAP),

14  which was filed in full conformity with the scheduling orders issued by this Court, does not relate

15  back to his <u>pro per</u> petition and was otherwise untimely under the Antiterrorism and Effective Death

16  Penalty Act (AEDPA).  The State's position attempts to rewrite history through omission, by

17  ignoring the extraordinary circumstances which occasioned Mr. Sherman's case and which now

18  entitle him to relief from any claim that the FAP was untimely filed.

19         At all times during this litigation Mr. Sherman reasonably relied on this Court's scheduling

20  orders, which directed that Mr. Sherman would file his amended petition outside the statute of

21  limitations contained in Section 2244(d)(1)(A) of the AEDPA.  The State cannot reasonably dispute

22  that these scheduling orders were consistent with the standardized procedure for resolving capital

23  cases in the District of Nevada, as directed by former Chief Judge Lloyd D. George, and that this

24  procedure was developed with the full cooperation of the State (through the Nevada Office of the

25  Attorney General) and implicitly endorsed by the Ninth Circuit Court of Appeals.  The State also

26  cannot reasonably dispute that Mr. Sherman acted with diligence within the context of the court-

27  ordered process, especially considering that Mr. Sherman was unrepresented by counsel for several

28  months after his initial petition was filed; resolution of motions pending before this Court took over

one year; and the State disregarded its federal constitutional disclosure obligations throughout the period preceding the filing of Mr. Sherman's amended petition, as it continues to do to this very day. To deny Mr. Sherman review of the numerous meritorious constitutional claims in his federal petition under these circumstances would violate the well-established principle that strict adherence to federal statutes of limitation, including under the AEDPA, cannot operate to work an injustice in particularized circumstances like those presented here, and additionally would sanction years of misconduct by the State in this case.

Further, by omitting any mention of its long-standing and ongoing refusal to produce material exculpatory and impeachment evidence in this case, the State fails to acknowledge that Mr. Sherman's First Amended Petition, filed within one year of his having obtained proof through extraordinary measures that the State is in violation of its federal constitutional disclosure obligations, is timely under the statute even without resort to equitable tolling.

     **a.**   **The Nevada District Court's Standard Procedure for Adjudicated Capital Habeas Case**

Due consideration of the path taken by Mr. Sherman upon seeking federal review of his constitutional claims requires a review of capital litigation processes in the District of Nevada during the relevant time period, as set forth in the following section.

In 1992 and 1993, the United States District Court for the District of Nevada, through former Chief Judge Lloyd D. George, instituted a set of standardized procedures and form orders for use in adjudicating capital habeas cases. See Docket No. 37 at 7-53 (Ex. 3.1 to Motion for Reconsideration, Memorandum from Richard L. Owens to Chief Judge Lloyd D. George (September 10, 1992) (hereinafter "Memorandum")). This standard procedure, which was the product of an agreement among all interested parties, including the Office of the Attorney General for the State of Nevada, see McDaniel v. United States District Court (Jones), 127 F.3d 886, 889 (9th Cir. 1997) (noting Nevada Attorney General's involvement in formulating procedure); id. at 890 (Rymer, J., concurring in the judgment) (same),[1] was expressly intended to guide the actions of petitioners and

---

[1] See also, e.g., Docket No. 36 (Ex. 3.9(b), Hill v. McDaniel, Case No. 98-cv-00914-JBR (LRL), slip op. at 2 (recognizing, upon order for reconsideration by former district judge Johnnie Rawlinson, that Jones endorsed "the system in place in this district")).

their counsel in death penalty cases:

> Although death penalty actions usually involve complex issues attacking the validity of the conviction and/or sentence, most such actions go through similar stages before the merits of the issues are ripe for decision.  Therefore, <u>standardization of this pre-determination process should assist all of the entities: petitioner as well as counsel, respondent's counsel, and all court personnel; a standardized process would put all of the involved entities on notice of what is expected of everyone and allow each to plan accordingly.</u>  The following standardized procedures and form orders should help reach this common goal.

Memorandum at 1 (emphasis added); <u>see also</u> <u>id.</u> at 7 ("If all entities involved understand that this is a normal process which can be followed in these difficult cases, then perhaps these actions can proceed more efficiently and with greater certainty.").

The standardized procedure instituted by this District contemplated, <u>inter alia</u>, the following steps:

<u>First</u>, following a petitioner's initial federal petition, and upon granting a petitioner's motions to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and for appointment of counsel, the district court would issue a standard order directing the Federal Public Defender and the former Nevada Appellate and Post-conviction Project to locate, within thirty days, appropriate counsel to represent the petitioner. <u>Id.</u> at 2.  The standard order granting <u>in</u> <u>forma</u> <u>pauperis</u> status expressly directed that the State "shall not answer [the initial] petition unless the court subsequently orders otherwise."   <u>Id.</u> (Draft Order Granting Full <u>In</u> <u>Forma</u> <u>Pauperis</u> Status to Habeas Corpus Petitioner).

<u>Second</u>, upon the court's approval of proposed counsel, the district court issues two standard orders, one order formally appointing counsel and a second order setting a First Status Conference sixty days later. <u>Id.</u> at 2-3.  This standard scheduling order required counsel to meet with their client within fifteen days, and then provided an additional forty-five days in order review the record to determine whether the state court record was complete and which additional documents, if any, needed to be obtained.  <u>Id.</u> at 3.  Notably, this standard order contemplated that the State would cooperate in discovery by including a presumption that the State would disclose the prosecutor's files to the petitioner.  <u>Id.</u>  ("Lastly, counsel for respondents is to be prepared to advise the court <u>whether the prosecution files are available</u> and complete and what portions, if any, they intend <u>not</u> to disclose to counsel for petitioner." (emphases added)).

4

1    <u>Third</u>, at the First Status Conference, the parties would be expected to be in a position to

2    advise the Court on how much time would be necessary to complete a review of the record and to

3    conduct discovery.  <u>Id.</u>  The district court procedure contemplated that in the typical case six months

4    would be sufficient to complete this process, but cautioned that "because a petitioner now has only

5    one chance to have the merits of a habeas corpus petition reviewed and considering the severity of

6    a death penalty action, petitioner should be afforded a substantial amount of time to learn-of [sic]

7    and prepare all possible grounds for relief." <u>Id.</u> (citing <u>McCleskey v. Zant</u>, 499 U.S. 467 (1991)).

8    At the completion of this status conference, the district court sets a date for a Second Status

9    Conference, to be held after completion of the discovery period, as well as a date for the petitioner

10   to file an amended petition, while recognizing that in appropriate circumstances extensions of time

11   to complete discovery would be appropriate and that any such extensions would further require the

12   resetting of the date for the Second Status Conference.  <u>Id.</u>  The standard procedure further

13   contemplated that the only circumstance in which a petitioner would <u>not</u> file an amended petition

14   is when appointed counsel determines after discovery that there are no additional grounds for relief

15   other than those contained in the original petition, and submits a declaration to the court to that

16   effect.  <u>See</u> Memorandum, Standard Order "DP-SCHED ORD #2."

17       The district courts' implementation of this procedure was subsequently noted with approval

18   by the Ninth Circuit Court of Appeals in <u>McDaniel v. United States District Court (Jones)</u>, 127 F.3d

19   886 (9th Cir. 1997), the only published authority in the Circuit specific to the pre-amended petition

20   process in capital habeas cases in Nevada. <u>See also</u>, <u>e.g.</u>, Docket No. 36 (Ex. 3.9(b)), <u>Hill v.</u>

21   <u>McDaniel</u>, Case No. 98-cv-00914-JBR (LRL), slip op. at 2 (recognizing, upon order for

22   reconsideration by former district judge Johnnie Rawlinson, that <u>Jones</u> endorsed "the system in place

23   in this district")).

24

         **b.**    **This Court's Implementation of the Standard Procedure in Mr. Sherman's Case**

25
         Mr. Sherman, without the benefit of counsel, timely filed his federal petition for writ of

26   habeas corpus petition on September 11, 2002, along with an application to proceed <u>in forma</u>

27   <u>pauperis</u> and a request for appointment of counsel.  Docket Nos. 1-3.  From this point forward, and

28

1   throughout the remainder of the proceedings to this point, this Court hewed closely to the

2   standardized procedure set forth in the section above.  On October 21, 2002, this Court granted Mr.

3   Sherman's motion for appointment of counsel and, consistent with the standard procedure, allowed

4   thirty days for the Office of the Federal Public Defender to either accept appointment or indicate its

5   inability to do so.  See Docket No. 5 (Order Appointing Counsel in a Death Penalty Action);

6   compare Memorandum, Standard Order "DP-IFP."  This Court also issued the form order granting

7   in forma pauperis status, by which it plainly indicated its intent and understanding that Mr. Sherman,

8   through appointed counsel, eventually would file an amended petition according to a schedule set

9   forth by the Court.  See Docket No. 4 (Order Granting In Forma Pauperis Status After Payment of

10  Filing Fee at 2 (ordering the clerk to serve a copy of this initial petition on the State, but emphasizing

11  that the State "shall not answer said petition unless and until the Court subsequently orders

12  otherwise")).

13         Because of the need to resolve a conflict of interest issue, the Federal Public Defender was

14  not formally appointed to represent Mr. Sherman until several months later, on April 10, 2003.

15  Docket No. 11.  This Court again followed the standard procedure by issuing its First Scheduling

16  Order, in which it granted a total of ninety days for undersigned counsel to meet with Mr. Sherman,

17  to gather the record, and to confer with the State regarding discovery.  Docket No. 12 (First

18  Scheduling Order at 2); compare Memorandum, Standard Order "DP-SCHED ORD #1."  This order

19  reiterated that "Respondents shall not answer or otherwise respond to the petition until ordered by

20  the Court to do so," again indicating its expectation that Mr. Sherman would file a superceding

21  amended petition through counsel.  Id.

22         Following the First Status Conference, held July 11, 2003, at the completion of the court-

23  ordered ninety-day period, this Court issued its Second Scheduling Order, granting Mr. Sherman

24  ninety days in which to file a motion for leave to conduct discovery and seven months to review the

25  record and complete discovery, if authorized.  Docket No. 15 (Second Scheduling Order at 1).

26  Consistent with the standard order, this Court's Second Scheduling Order set a time for a second

27  status conference upon completion of the discovery period and required Mr. Sherman to file two

28  status reports in the interim, while recognizing that the time to complete discovery may need to be

6

1  extended upon a showing of good cause.  Id. at 2; compare Memorandum, Standard Order "DP-
2  SCHED ORD #2."  The Second Scheduling Order further set a time for Mr. Sherman to file an
3  amended petition, if necessary, approximately two months beyond the discovery period, but
4  recognized that Mr. Sherman could seek an extension of the discovery period upon a showing of
5  good cause.  Second Scheduling Order at 2.  This order, like the standard order, also anticipated that
6  Mr. Sherman would file an amended petition unless undersigned counsel determined that there were
7  no additional grounds for relief other than those contained in Mr. Sherman's original petition.  Id. at
8  3.

9      As anticipated by this Court's scheduling orders and the standard procedure, Mr. Sherman
10  sought one extension of time in which to file his motion for leave to conduct discovery, which the
11  State did not oppose and which this Court granted.  Docket Nos. 17-18.  Mr. Sherman then filed his
12  motion.  Docket Nos. 19-24.  Resolution of this motion, and a subsequent motion for
13  reconsideration, necessarily required the resetting of the dates previously set for completion of
14  discovery and the filing of Mr. Sherman's amended petition.  Docket Nos. 30-31, 33, 43, 47, 49-51.

15

16      Mr. Sherman filed his First Amended Petition pursuant to this Court's scheduling order
17  November 2, 2005, see Docket Nos. 52-70, upon which this Court expressly ordered that the
18  "amended petition shall be treated as timely filed," see Docket No. 71.  As contemplated by the
19  standard procedure, the State filed a motion to dismiss the amended petition on exhaustion grounds.
20  Docket No. 73; Memorandum at 4.  The State did not move to dismiss this petition as untimely under
21  the AEDPA.  See Docket No. 73.

22   c.   **Mr. Sherman's Diligence in Complying With His Obligations Under this**
      **Court's Scheduling Orders and the State's Continuing Disregard of Its**
23      **Constitutional Non-Disclosure Obligations**

24       **i.   Diligence Prior to Filing of Motion for Leave to Conduct Discovery**

25      As noted above, Mr. Sherman timely filed his pro per petition and sought appointment of
26  counsel on September 11, 2002.  Docket Nos. 1, 3.  Although this Court recognized Mr. Sherman's
27  right to appointment of counsel to represent him in these federal proceedings on October 21, 2002,
28  see Docket No. 5, undersigned counsel was not formally appointed to represent Mr. Sherman until

7

1  six months later, on April 10, 2003, when this Court filed its order determining that the conflict

2  waivers submitted by undersigned counsel were sufficient to permit the Federal Public Defender to

3  represent Mr. Sherman in these proceedings, see Docket No. 11.  This delay, occasioned first by

4  undersigned counsel's attempts to secure a conflict waiver from one of its attorney's former clients,

5  see Docket Nos. 6-10, and second by this Court's careful consideration of the legal issue, left Mr.

6  Sherman in limbo – aware that he was entitled to appointment of counsel, but without counsel to

7  pursue his claims.

8       Concurrent with its order formally appointing undersigned counsel, this Court issued a

9  standard scheduling order in which it ordered undersigned counsel to confer with Mr. Sherman

10  within thirty days, and granted an additional sixty days "to gather the record, confer with any

11  previous counsel for the petitioner, and meet with counsel for respondents regarding discovery."

12  Docket No. 12 (Order at 2).  This Court also ordered undersigned counsel to be prepared at the time

13  of the First Status Conference, scheduled for July 11, 2003, "to advise the Court whether the state-

14  court record and other relevant documents are complete, and if not, which portions are missing and

15  an estimate of how long it will take to complete the record.  Both counsel shall be prepared to advise

16  the Court whether they anticipate discovery problems."  Id. at 3.

17       Consistent with its obligations under this standard scheduling order, undersigned counsel

18  immediately proceeded to attempt to collect the state-court record and trial counsel's files, see, e.g.,

19  Docket 21 (Ex. 2.7), and when material appeared to be missing from trial counsel's files, expanded

20  its inquiry to include additional sets of counsel, see id. (Exs. 2.11, 2.13).   From the combined files

21  of Mr. Sherman's prior sets of counsel, undersigned counsel determined that they still had not been

22  provided documents that should have appeared in prior counsels' files, including critical documents

23  that were supplied to trial counsel's expert, Stephen Pittel, who testified during the penalty phase

24  of Mr. Sherman's trial about Mr. Sherman's relationship with the victim's daughter, Dianne Bauer.

25  See Docket Nos. 130-6 to -9 (Exs. 74B-D, 2/10/97 TT at 51-207).  Mr. Sherman's attempts to obtain

26  these documents directly from each counsel were met with finger-pointing.  See Docket No. 23 (Ex.

27  3.35).  By early September 2003, undersigned counsel, unable to obtain the relevant materials from

28  former counsel, sought to obtain the missing materials directly from Dr. Pittel.  See Docket No. 21

8

1  (Ex. 2.20).  Resolution of this issue ultimately required the Court's intervention.  See Docket No. 34

2  (Order at 10-15 (granting leave to serve subpoenas on prior counsel and Dr. Pittel while recognizing

3  that Mr. Sherman "should not have to resort to formal discovery to obtain . . . material" regarding

4  his own case)).

5      Further, by May 8, 2003, undersigned counsel had also mailed numerous letter requests for

6  production of documents to various entities, most notably the Clark County District Attorney's

7  Office (CCDA) and various divisions of the Las Vegas Metropolitan Police Department (LVMPD).

8  See Docket No. 21 (Exs. 2.1-2.9).  Neither the CCDA and the LVMPD responded to these informal

9  requests.  See id.[2]

10     Through its review of the record, undersigned counsel determined that exculpatory and

11  impeachment evidence almost certainly existed in the files of not only the CCDA and the LVMPD,

12  but also in the files of other law enforcement agencies, including in Washington State and Idaho.

13  Having been stonewalled in attempts to obtain this information from local state entities, Mr.

14  Sherman attempted to obtain materials directly through the out-of-state entities by sending numerous

15  additional informal records requests throughout September and October 2003.  See, e.g., Docket No.

16  21 (Exs. 2.14-2.17, 2.21, 2.23-2.25, 2.30-2.35, 2.37, 2.44-2.45, 2.47).[3]  Undersigned counsel also

17  attempted to obtain relevant information from out-of-state sources by making multiple trips to

18  Washington and Idaho, and also traveled to Alaska, Alabama, and Mississippi, see Docket No. 17

19  (Declaration of David S. Anthony ¶ 2).

20     Shortly after the First Status Conference on July 11, 2003, this Court issued its second

21  standard scheduling order, ordering Mr. Sherman to file his motion for leave to conduct discovery

22  by October 14, 2003; to complete his review of the record and to complete discovery by February

23

24  [2]Also throughout May and June 2003, Mr. Sherman requested release of his prison medical records
    from Ely State Prison; his records from the Clark County Detention Center, the Nevada Department
25  of Parole & Probation, and the Santa Barbara County (California) Sheriff's Department; and records
    from the Clark County Office of the Coroner/Medical Examiner (CCOCME) related to its autopsy
26  of the victim.  See Docket 21 (Exs. 2.1-2.6, 2.10, 2.12).

27  [3]During this time, Mr. Sherman also submitted numerous additional records requests to other persons
    and agencies believed to be in the possession of relevant materials.  See, e.g., Docket No. 21 (Exs.
28  2.18-2.20, 2.22, 2.26-2.29, 2.36, 2.38-2.43, 2.46-2.49).

13, 2004; and file his amended petition by April 23, 2004. Docket No. 15 (Second Scheduling Order at 1-2). Mr. Sherman filed a single motion for extension of time, for period of thirty days, in which to file his discovery motion, which the State did not oppose. Docket Nos. 17-18. This Court granted the request, allowing Mr. Sherman until November 13, 2003, to file his discovery motion. Id. He filed his motion that day, seeking, inter alia, the exculpatory and impeachment evidence believed to be in the State's actual or constructive possession, as well as the missing documents he believed to be in prior counsel's possession. Docket Nos. 19-23. In the motion, Mr. Sherman pleaded with specificity the facts known to him at the time, the facts he intended to uncover with formal discovery, and federal constitutional claims that he intended to prove. The State cannot now claim that it had no notice of Mr. Sherman's claims in light of his detailed pleadings informing the state of the operative facts and legal theories that he intended litigate in this federal habeas corpus proceeding.

The State filed a motion for extension of time to file its response to Mr. Sherman's discovery motion, which this Court granted, and then filed its opposition on December 19, 2003. Docket Nos. 25-27. Mr. Sherman filed his reply on December 31, 2003. Docket No. 28. This Court did not rule on Mr. Sherman's discovery motion until almost eight months later, on August 30, 2004, when it issued its order granting in part and denying in part the motion. Docket No. 34. Two weeks later, Mr. Sherman filed a motion for reconsideration of this order, to which this Court ordered the State to respond. Docket Nos. 35-37. After obtaining an extension of time from the Court, the State filed its opposition to the motion for reconsideration on November 3, 2004, see Docket Nos. 39-41, and Mr. Sherman filed his reply on November 15, 2004, see Docket No. 42. Over two months later, on January 31, 2005, this Court granted in part and denied in part the motion for reconsideration. Docket No. 43. All told, resolution of Mr. Sherman's request for leave to conduct discovery took over fourteen months.

ii.     **Diligence During Pendency of Motion for Leave to Conduct Discovery**

Mr. Sherman diligently continued his investigation during the many months his discovery motion was pending. For example, Mr. Sherman continued to attempt to substantiate his claims regarding undisclosed benefits granted to state informant witness Michael Placencia and Christine Kalter through indirect means, by, inter alia, seeking to obtain files from the Office of the Clark

County (Nevada) Public Defender and James L. Buchanan, a local attorney, regarding their representation of Mr. Placencia and Ms. Kalter; from the Nevada Department of Corrections regarding Ms. Kalter, from whom it had obtained a signed release; and by locating and speaking with Mr. Placencia directly. Ex. 1; Ex. 2 (Declaration of Herbert Duzant ("Duzant Decl.") ¶¶ 3-7). For his part, Mr. Placencia admitted to feeling "used" by the police, but refused to state whether he received any benefits in exchange for his cooperation and testimony in Mr. Sherman's case. He declined to speak further about anything related to Mr. Sherman's case and did not sign a release for undersigned counsel to obtain records pertaining to him. Duzant Decl. ¶¶ 3-7.

Following this court's initial order on Mr. Sherman's motion for leave to conduct discovery, which denied him leave to seek materials to substantiate his Brady claim related to Mr. Placencia and Ms. Kalter, see Docket No. 34 (Order at 19-22), Mr. Sherman redoubled efforts to seek the materials through other means.  On September 29, 2004, undersigned counsel proceeded to the Criminal Records Department of the Las Vegas Justice Court to review a case file regarding Mr. Placencia that had been retrieved from storage. Ex. 3 (Declaration of Gregore J. Sambor ¶ 2). Before permitting undersigned counsel to review the file, the clerk removed several pages and various post-it notes from the file, explaining that these documents were "not part of the file" and counsel was not permitted to look at them. Id. ¶ 3; see also Ex. 4 (In re Access to Judicial Records of the Las Vegas Justice Court, Order No. 2004-PR-1 (effective December 1, 2004) (requiring the filing of a motion to compel to unseal confidential court records)).

In order to obtain the records contained within the justice court file, and given Mr. Sherman's inability to obtain formal discovery, investigators from the Federal Public Defender's Office made repeated attempts to view and copy the documents in the justice court file that were being withheld by court clerks.  On December 14, 2004, Mr. Sherman finally received disclosure and copies of the materials in Placencia's justice court file for the first time.  See Docket 137-15 (Ex. 176A, Declaration of Carol Hale ¶ 2).

After discovering the documents, Mr. Sherman attempted to obtain certified copies of the documents and an order from the justice court judge, the Honorable Deborah J. Lippis, ordering that the file not be destroyed.  Mr. Sherman obtained a declaration from Annette Spencer, Judge Lippis'

11

1  former secretary, on February 20, 2005, authenticating the notes found contained in the justice court

2  file, see Docket No. 64 at 88-89 (Exs. 5.37 & 5.38); and finally received a certified copy of the

3  confidential information in the justice court file from Judge Lippis on March 11, 2005. Mr. Sherman

4  was not able to obtain these court records any earlier because Mr. Hammack's communications with

5  Judge Lippis were considered confidential pursuant to the Las Vegas Justice Court's orders. See Ex.

6  4 (In re Access to Judicial Records of the Las Vegas Justice Court, Order No. 2004-PR-1 (effective

7  December 1, 2004) (requiring the filing of a motion to compel to unseal confidential court records)).

8  Mr. Sherman was therefore unable to obtain the evidence contained in Claim Three earlier through

9  the exercise of reasonable diligence.

10    Also while awaiting this Court's order on his discovery motion, Mr. Sherman, through

11  undersigned counsel, sought additional materials regarding the Longview (Washington) Police

12  Department's investigation of Mr. Sherman.  At trial, the State  presented the penalty-phase

13  testimony of Rodney Miller, Dianne Bauer's ex-husband, to show that petitioner committed a

14  burglary at their home.  See Docket No. 130 (Ex. 72B, 2/6/97 TT at 83-92).  To refresh Mr. Miller's

15  recollection, the prosecutor referred Miller to a "police report" that he showed Mr. Miller earlier that

16  morning and provided trial counsel with a truncated version of the report.  Id. at 88.  In an effort to

17  obtain the full report and other materials in the Longview Police Department (LPD) files,

18  undersigned counsel obtained Mr. Miller's release and submitted it to the LPD in October 2003

19  along with an informal letter request.  See Docket No. 21 (Ex. 2.37).  Counsel reiterated their request

20  to the LPD in January 2004.  Ex. 5 (Greg Sambor Declaration (Jan. 30, 2004) ¶ 6). Ultimately, Mr.

21  Sherman obtained a copy of the full report relied upon by the State at trial on or about February 4,

22  2004.  The non-produced portion of this police report, received for the first time in the instant

23  proceedings, revealed that the Longview Police Department was amassing evidence on behalf of, and

24  at the specific request of, the Las Vegas Metropolitan Police Department, which itself contained a

25  wealth of exculpatory and impeachment evidence.  See Docket No. 52 (First Amended Petition at

26  206-11).

27    Efforts to obtain LPD materials directly from the LPD were only partially successful,

28  however, resulting only in the production of that agency's "electronic file." Docket No. 55 (Ex.

2.19).  To obtain the complete "paper file," Mr. Sherman attempted to make contact with the representative for the Washington State Office of the Attorney General, which represented the Washington Department of Corrections in connection with a civil lawsuit related to the death of Lester Bauer.  See Docket No. 23 (Ex. 3.37, Declaration of David Anthony ("Anthony Decl.") ¶ 2). In October 2003, Mr. Sherman sent records requests to both the Washington Attorney General's Office and the Washington Department of Corrections.  See Docket No. 21 (Exs. 2.43, 2.45).  Later that month, undersigned counsel began oral discussions with Glen Anderson, a representative of that office, in which Mr. Anderson revealed that he personally flew to Las Vegas to examine the Clark County District Attorney's files regarding Mr. Sherman's case.  See Anthony Decl. ¶ 3.  In November 2003, undersigned counsel again spoke with Mr. Anderson, who agreed to attempt to locate the relevant files in his possession. Ex. 6 (Letter from David S. Anthony to Glen A. Anderson (Nov. 23, 2003)).  Not until October 2004 was undersigned counsel permitted to view the files in the Washington Attorney General's possession. Ex. 7 (Letter from David S. Anthony to Glen A. Anderson (Oct. 21, 2004)).  Through these efforts, Mr. Sherman received what was purported to be the LPD's complete "paper file" recounting an alleged burglary committed by Mr. Sherman. This paper file, like the electronic file, contained valuable exculpatory and impeachment evidence.  See First Amended Petition at 206-11.

### iii.    Diligence After This Court's Order Regarding Discovery

As part of this Court's resolution of Mr. Sherman's discovery motion in August 2004, undersigned counsel received permission to serve subpoenas on each of his prior sets of counsel in this case; against out-of-state organizations believed to have personal information about Mr. Sherman's past; and against Dr. Stephen Pittel, Mr. Sherman's mental health expert at trial.  Docket No. 34 (Order at 14-17).  The Court approved the form of these subpoenas on January 31, 2005, see Docket No. 43 (Order at 3-5), and Mr. Sherman served each of these eleven subpoenas no later than February 24, 2005.[4]

---

[4] In its January 31, 2005 reconsideration order, this Court also granted leave for Mr. Sherman to file a subpoena against Daniel P. Featherston, the attorney who represented Mr. Sherman on his appeal from a prior conviction in Idaho that served as an aggravating circumstance in this action.  Docket No. 43 (Order at 7).  Mr. Sherman timely filed a proposed subpoena against Mr. Featherston, Docket

1    Thereafter, Mr. Sherman sought several short extensions of time in which to complete

2 discovery and to file his amended petition, see id.; Docket Nos. 49, 51. The State did not oppose

3 them, and the Court granted each. See Docket No. 49, 51. Consistent with this Court's orders, Mr.

4 Sherman filed his amended petition on November 2, 2005. See Docket Nos. 52-70. Upon filing,

5 this Court expressly ordered that the "amended petition shall be treated as timely filed." See Docket

6 No. 71. The State filed a motion to dismiss on January 3, 2006, Docket No. 73, which did not argue

7 that the petition was untimely.

8  **3.    ARGUMENT**

9    The AEDPA provides a one-year statute of limitations for a petitioner to bring an application

10 for writ of habeas corpus, measured "from the latest of" the following dates:

11    (A)    the date which the judgment became final by the conclusion of direct review
            or the expiration of the time for seeking such review;

12

13    (B)    the date on which the impediment to filing an application created by State
            action in violation of the Constitution or laws of the United States was
            removed, if the applicant was prevented from filing by such State action;

14

15    (C)    the date on which the constitutional right was initially recognized by the
            Supreme Court, if the right has been newly recognized by the Supreme Court
            and made retroactively applicable to cases on collateral review; or

16

17    (D)    the date on which the factual predicate of the claim or claims presented could
            have been discovered through the exercise of reasonable diligence.

18 28 U.S.C. § 2244(d)(1)(A-D).

19    The State agrees that Mr. Sherman's original pro per petition was timely under the statute.

20 See Docket No. 124 (Motion to Dismiss Second Amended Petition for Writ of Habeas Corpus

21 ("MTD") at 11).[5] In its motion, however, the State seeks dismissal of Mr. Sherman's Second

22 _____

23 No. 44, which this Court rejected on February 28, 2005, as inconsistent with its prior order, Docket
   No. 45.

24 [5]Mr. Sherman's initial petition was filed no more than 95 days into the one-year statute of limitations
   set forth in Section 2244(d)(1)(A) of the AEDPA. This sub-section which provides as one starting
25 point for the statute of limitations "the date on which conviction became final by the conclusion of
   direct review or the expiration of the time for seeking such review." Under this section, the statute
26 began to run on May 17, 1999, the day on which the Supreme Court denied Mr. Sherman's petition
   for writ of certiorari, see, e.g., Jiminez v. Quarterman, 555 U.S. 113, 119 (2009) ("[T]his Court has
27 held that the conclusion of direct review occurs when this Court affirms a conviction on the merits
   on direct review or denies a petition for a writ of certiorari." (internal quotation marks omitted)), and
28 was statutorily tolled during the whole of his first state-court proceedings – i.e., from June 7, 1999

14

1    Amended Petition in its entirety, claiming that it must be dismissed because the claims contained

2    therein do not "relate back" to the claims set forth in Mr. Sherman's original <u>pro per</u> petition. <u>See</u>

3    MTD at 10-12.  The state's position does not frame the issue correctly.  The real question for the

4    Court's consideration is the timeliness of the First Amended Petition, filed by undersigned counsel

5    on Mr. Sherman's behalf in 2005.  If this First Amended Petition is timely under the AEDPA, then

6    all of the claims in the Second Amended Petition are also timely, because the First Amended Petition

7    was never dismissed – rather, the proceedings were stayed pending exhaustion of state remedies.

8    It follows that the state has continuously had the same notice of Mr. Sherman's claims since the

9    filing of the First Amended Petition on November 2, 2005.  <u>Compare generally</u> Docket No. 52 (First

10   Amended Petition) <u>with</u> Docket No. 103 (Second Amended Petition); <u>see</u> <u>Mayle v. Felix</u>, 545 U.S.

11   644, 663 (2005) (claims in a superceding petition will relate back to an earlier filed petition "so long

12   as [each] state claims that are tied to a common core of operative facts").

13          With the issue properly framed, controlling authority compels the conclusion that Mr.

14   Sherman's First Amended Petition is timely filed under either of two approaches – (1) he is entitled

15   to equitable tolling for the period preceding the filing of his First Amended Petition based on his

16   justifiable reliance on this Court's orders, as informed by the standard procedure for adjudicating

17   capital habeas cases in this district and controlling Ninth Circuit authority, both of which

18   contemplated that his claims contained in the amended petition would be timely; <u>and/or</u> (2) his

19   petition is timely without resort to equitable tolling because it was filed within one year of the date

20   on which the factual predicate of the claims contained therein could have been discovered through

21   the exercise of reasonable diligence.  Mr. Sherman addresses each point in turn.

22          a.    **Mr. Sherman Is Entitled to Equitable Tolling of the AEDPA Statute of Limitations.**

23

24          The AEDPA statute of limitations "does not set forth 'an inflexible rule requiring dismissal

25   until at least July 27, 2002, when the time for Mr. Sherman to seek rehearing on the Nevada Supreme
     Court's denial of his state post-conviction petition expired under Nevada Rule of Appellate

26   Procedure 40(a)(1).  <u>See, e.g.</u>, <u>Serrano v. Williams</u>, 383 F.3d 1181, 1187 (10th Cir. 2004) (AEDPA
     limitations period tolled during period in which petitioner could have filed for rehearing under state

27   procedural rules).  In total, twenty-one days elapsed between the conclusion of direct review and
     filing of Mr. Sherman's first post-conviction petition, and an additional seventy-four days elapsed

28   between the completion of his state-court proceedings and filing of his federal petition.

1   whenever' its 'clock has run.'" Holland v. Florida, 130 S. Ct. 2549, 2560 (2010) (quoting Day v.

2   McDonough, 547 U.S. 198, 205 (2006)).  Rather, the Supreme Court in Holland concluded, as had

3   all eleven Courts of Appeals to consider the question, including the Ninth, that § 2244(d) "is subject

4   to equitable tolling in appropriate cases." Id. (citing, inter alia, Calderon v. United States Dist. Ct.

5   (Beeler), 128 F.3d 1283, 1289 (9th Cir. 1997)).  The Court concluded that Section 2244(d) may be

6   tolled "if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some

7   extraordinary circumstance stood in his way and prevented timely filing." Holland, 130 S. Ct. 2549,

8   2560-62 (2010) (internal quotation marks omitted).

9          As the Supreme Court has long recognized, the "exercise of a court's equity powers . . . must

10  be made on a case-by-case basis." Holland, 130 S. Ct. at 2563 (quoting Baggett v. Bullitt, 277 U.S.

11  360, 375 (1964)). The "flexibility" inherent in "equitable procedure" is necessary "meet new

12  situations [that] demand equitable intervention," with the understanding that a court of equity must

13  "exercise judgment in light of prior precedent, but with awareness of the fact that specific

14  circumstances, often hard to predict in advance, could warrant special treatment in an appropriate

15  case." Id. (internal quotation marks omitted; alteration in original). Thus, rejecting the notion that

16  rigid and non-variable rules must guide courts of equity, the Supreme Court concluded that "given

17  the long history of judicial application of equitable tolling, courts can easily find precedents that can

18  guide their judgments." Id. at 2563.

19         Post-Holland, the Ninth Circuit reaffirmed prior cases holding that a habeas petitioner is

20  entitled to equitable tolling where a petitioner detrimentally relies (1) on "affirmatively misleading"

21  instructions from a federal district court, or (2) on the Ninth Circuit's incorrect statements of the law.

22  See United States v. Buckles, 647 F.3d 883, 891 (9th Cir. 2011) (citing, inter alia, Townsend v.

23  Knowles, 562 F.3d 1200, 1205-06 (9th Cir. 2009), abrogated on other grounds by Walker v. Martin,

24  131 S. Ct. 1120 (2011); Harris v. Carter, 515 F.3d 1051, 1055-56 (9th Cir. 2008); Brambles v.

25  Duncan, 412 F.3d 1066, 1070 (9th Cir. 2005)); see also Calderon v. United States Dist. Ct. (Kelly),

26  163 F.3d 530, 541-42 (9th Cir. 1999) (district court properly granted petitioner's request for

27  equitable tolling where, inter alia, habeas counsel reasonably viewed district court's stay pending

28  determination of sanity as precluding filing of petition), overruled on other grounds by Woodford

16

1   v. Garceau, 538 U.S. 202 (2003).[6]

2       Both theories have also been endorsed by other circuit courts of appeal. See, e.g., Sherwood

3   v. Prelesnik, 579 F.3d 581, 588-89 (6th Cir. 2009) (granting equitable tolling because counsel, in

4   "deciding when to file his post-conviction motion," reasonably relied on circuit precedent that was

5   subsequently reversed by the Supreme Court); Streu v. Dormire, 557 F.3d 960, 967-68 (8th Cir.

6   2009) (habeas petitioner's reliance on prior Eighth Circuit case law, subsequently overruled by an

7   en banc panel of the Eighth Circuit, entitled him to equitable tolling); Prieto v. Quarterman, 456 F.3d

8   511, 514-15 (5th Cir. 2006) (granting equitable tolling where petitioner relied "in good faith and to

9   his detriment" on district court's scheduling order granting motion to extend time to file petition);

10  Griffin v. Rogers, 399 F.3d 626, 635-38 (6th Cir. 2005) (remanding for evidentiary hearing where

11  petitioner relied on federal court's assurance that he would be entitled to federal review of his claims

12  following dismissal of his federal petition for purposes of exhaustion); United States v. Patterson,

13  211 F.3d 927, 931 (5th Cir. 2000) ("Equitable tolling is . . . appropriate in cases where [the] court

14  has led the plaintiff to believe that she had done everything required of her." (internal quotation

15  marks omitted; second alteration in original)).

16      Furthermore, equitable tolling is also appropriate where the State interferes with a petitioner's

17  ability to timely file his federal petition by withholding relevant materials.  The equities implicated

18  in such circumstances compel relief, because, as explained by one court, in the absence of equitable

19  tolling in such situations, "the government could prevent any defendant from filing a timely claim

20  simply by failing to produce relevant evidence in a reasonable period, agreeing to a court-approved

21  extended filing schedule, and then sandbagging him with a statute of limitations defense." King v.

22  Bell, 378 F.3d 550, 553, 554 (6th Cir. 2004); see also, e.g., United States v. Lopez, 577 F.3d 1053,

23  1064-65 (9th Cir. 2009) (statute of limitations should not be construed to "reward prosecutors for

24  failing to meet their constitutional disclosure obligations under Brady"); Lewis v. United States, 985

25  F. Supp. 654, 657 (S.D. W. Va. 1997) (granting equitable tolling in situation involving, inter alia,

26  ────────────────

27  [6]Other unpublished opinions of the Ninth Circuit are in accord.  See, e.g., Hung Viet Vu v. Kirkland,
    363 Fed. Appx. 439, 442, 2010 U.S. App. LEXIS 270, at *6-*7 (9th Cir. 2010) ("[W]hen an error
    by a district court contributes to a petition's untimely filing, the district court has the power to right

28  its own wrong by accepting the untimely petition nunc pro tunc to a timely date.").

1    failure to disclose exculpatory information); cf. Pliler v. Ford, 542 U.S. 225, 235 (2004) (O'Connor,

2    J., concurring) ("[I]f the petitioner is affirmatively misled . . . by the State, equitable tolling might

3    well be appropriate.").

4          Mr. Sherman's case represents a confluence of each of these and other extraordinary

5    circumstances which, individually and collectively, entitle Mr. Sherman to equitable tolling to the

6    point he filed his First Amended Petition, as further explained in the sections below.

7              **i.    Mr. Sherman Justifiably Relied on This Court's Scheduling Orders, the**
                       **Standard Procedure in Place in the Nevada District Courts for Resolving**
8                      **Capital Habeas Cases, and Ninth Circuit Precedent in Deciding When**
                       **to File His Amended Petition.**
9
                       **(1)    This Court's Scheduling Orders Directed Mr. Sherman on When**
10                             **to File His First Amended Petition.**

11          Mr. Sherman filed his timely pro per petition on September 11, 2002, well within the statute

12   of limitations contained in Section 2244(d)(1)(A) of the AEDPA.  However, this Court's scheduling

13   orders, as well as its delay in resolving the legal issues arising under those scheduling orders, ensured

14   that Mr. Sherman would not file his amended petition until after any remaining time elapsed.

15          Specifically, even though this Court recognized Mr. Sherman's right to mandatory

16   appointment of counsel as early as October 21, 2002, Mr. Sherman was not appointed counsel until

17   six months after his initial request, on April 10, 2003.  Docket Nos. 3, 5, 11.  Accordingly, a period

18   of 181 days elapsed in which Mr. Sherman was entitled to expect he would be appointed counsel

19   shortly, who would then research and develop additional claims on his behalf.  See McFarland v.

20   Scott, 512 U.S. 849, 854, 858 (1994) (recognizing that 21 U.S.C. § 848(q) [now codified as 35

21   U.S.C. § 3599(a)(2)], which "grants indigent capital defendants with a mandatory right to qualified

22   legal counsel and related services in any [federal] post conviction proceeding," also "necessarily

23   includes a right for that counsel meaningfully to research and present a defendant's habeas claims").

24          The denial of mandatory counsel for this extended period of time itself constitutes an

25   extraordinary circumstance that supports equitable tolling.  See Spitsyn v. Moore, 345 F.3d 796, 800

26   n.1 (9th Cir. 2003).  In Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283 (9th Cir. 1997),

27   a case cited with approval by the Supreme Court in Holland, one of the attorneys appointed to

28   represent the petitioner accepted employment elsewhere.  Much of the attorney's work product that

1   he left behind was determined to be unusable by replacement counsel. Beeler, 128 F. 3d at 1285,

2   1289.   The Ninth Circuit concluded that counsel's withdrawal constituted an "extraordinary

3   circumstance" that justified tolling.  Id. at 1289.  If equitable tolling is proper where there is a

4   substitution of attorneys for a represented petitioner, then a fortiori it is warranted where, as here,

5   a petitioner had no representation at all.  Similarly, in Calderon v. United States Dist. Ct. (Kelly),

6   163 F.3d 530 (9th Cir. 1999), the Ninth Circuit identified several grounds for equitable tolling,

7   including the petitioner's alleged mental incompetency, explaining that "[a] putative habeas

8   petitioner's mental incompetency . . . renders the petitioner unable to assist his counsel in the

9   preparation of a habeas petition.  Such a condition would eviscerate the statutory right to counsel."

10  Id. at 541.  If alleged mental incompetency warrants tolling because it could eviscerate the right to

11  counsel, then tolling is plainly warranted where the petitioner actually lacks counsel, because that

12  does eviscerate the statutory right to counsel.  See also Hoyos v. Wong, Case No. 09-CV-0388, 2010

13  U.S. App. LEXIS 13086 (S.D. Cal. Feb. 16, 2010) (collecting cases in which courts have equitably

14  tolled AEDPA statute of limitations during period of delay in appointing counsel).

15        The Supreme Court's recent decision in Holland only confirms the correctness of the Ninth

16  Circuit's approach.  There, the Supreme Court agreed that attorney misconduct, if of a sufficiently

17  serious nature, constitutes ground for equitable tolling. See 130 S. Ct. at 2564-65.  If serious attorney

18  misconduct, or abandonment, see id. at 2568 (Alito, J., concurring), is sufficient to trigger equitable

19  tolling, then certainly a petitioner whose right to mandatory appointment of counsel is recognized,

20  but then not given effect, is also sufficient.

21        Upon formal appointment of counsel in this case, this Court issued its first scheduling order

22  granting undersigned counsel a total of ninety days for undersigned counsel to meet with Mr.

23  Sherman, to gather the record, and to confer with the State regarding discovery, upon completion of

24  which the Court would hold its First Status Conference.  Docket No. 12 (First Scheduling Order at

25  2).  This Court issued its second scheduling order on July 14, 2003, following the First Status

26  Conference, granting Mr. Sherman until February 13, 2004 (a period of 214 days) to review the

27  record and complete discovery, if authorized, and, until April 23, 2004 (an additional period of

28  seventy days) in which to file an amended petition, if necessary.  Docket No. 15.  From these

19

1   scheduling orders, with which Mr. Sherman complied in every respect and to which the State did not

2   object, it is apparent that the Court expected and intended that Mr. Sherman would file an amended

3   petition, and that such petition would necessarily fall outside of the statute of limitations set forth

4   in Section 2244(d)(1)(A).

5           Further, through no fault of Mr. Sherman, the period by which he would file his amended

6   petition was necessarily delayed for over one year, because it took over nine months (from

7   November 13, 2003 until August 30, 2004) to resolve Mr. Sherman's long-anticipated motion for

8   leave to conduct discovery, and over four months (from September 15, 2004 until January 31, 2005)

9   to resolve his motion for reconsideration.  The bulk of these fourteen months occurred after full

10  briefing by the parties, during which the parties were waiting for the Court to resolve the motions.

11  This delay, in turn, caused the Court to extend the time for Mr. Sherman to file his amended petition

12  to July 20, 2005, then to August 30, 2005, then to October 31, 2005, and, ultimately, to November

13  2, 2005.  Docket Nos. 31, 33, 43, 47, 50, 71.  See Harper v. Ercole, 648 F.3d 132, 139 (2d Cir. 2011)

14  (extension of time requests granted by court supported showing of diligence).

15          By themselves, these circumstances fall comfortably into those class of cases in which a

16  petitioner is entitled to equitable tolling under the AEDPA because he detrimentally relied on the

17  district court's scheduling order regarding when to file an otherwise untimely petition. See, e.g.,

18  Buckles, 647 F.3d at 883, 891-93 (9th Cir. 2011) (recognizing availability of equitable tolling when

19  petitioner relies on instructions from the courts); Prieto, 456 F.3d at 514-15 (5th Cir. 2006) (granting

20  equitable tolling where petitioner relied "in good faith and to his detriment" on district court's order

21  granting motion to extend time to file petition); Patterson, 211 F.3d at 931-32; Kelly, 163 F.3d at

22  541-42; see also King, 378 F.3d at 552-53 (equitably tolling petition where state failed to produce

23  voir dire transcripts, which in turn caused the court to modify the scheduling order to permit filing

24  of amended petition outside statute of limitations with parties' consent).

25          Prieto, a Fifth Circuit capital case, is particularly instructive.  There, the petitioner filed a

26  timely request for appointment of counsel, in response to which the court appointed counsel and

27  issued various scheduling orders, including a time by which the petitioner was to file his habeas

28  petition.  456 F.3d at 513.  The petitioner affirmatively sought an extension of time in which to file

20

1  his petition, which the district court granted, instructing the petitioner that his habeas petition "shall

2  be filed no later than" a specific date that was outside of the statute of limitations under Section

3  2244(d)(1)(A). Id. at 513-14. When the petitioner filed his petition according to the court-ordered

4  deadline, the State moved to dismiss the petition on the ground that it was untimely under the

5  AEDPA. Id. at 513. The district court granted the State's motion and issued a Certificate of

6  Appealability on the issue. Id.

7  On appeal, the Fifth Circuit reversed, finding that the petitioner's circumstances warranted

8  equitable tolling because "the district court's order granting him time for the express purpose of

9  filing his petition at a later date [outside the statute of limitations] was crucially misleading." Id. at

10  514-15. In such circumstance, the equities were plain: It would be unfair and inappropriate to deny

11  the petitioner a review of the merits where he "relied on the district court's order in good faith and

12  to his detriment when he filed the petition." Id. at 515.[7]

13  The logic underlying Prieto applies with equal force to Mr. Sherman's case. Each of the

14  scheduling orders issued by this Court setting forth a deadline for him to file an amended petition

15  contain the same mandatory language found in Prieto. See Docket No. 15 ("If necessary, petitioner

16  shall file and amended petition on or before April 23, 2004."); Docket No. 31 ("IT IS FURTHER

17  ORDERED that the deadline for petitioner to file an amended petition shall be extended (beyond

18  April 23, 2004, the current deadline)."); Docket No. 33 ("The Court will address the matter of

19  scheduling of further proceedings in this action [including] the scheduling of amendment of the

20  petition . . . after the pending discovery motion is resolved"); Docket No. 43 ("[P]etitioner shall file

21  an amended habeas corpus petition within one hundred eighty (180) days after the date of entry of

22  this order."); Docket No. 47 ("IT IS FURTHER ORDERED that the time for petitioner to file and

23  serve an amended habeas corpus petition is extended to and including August 30, 2005."); Docket

24  No. 50 ("Ptr shl have through 10/31/05 to file amend ptn."). After the filing of the amended petition,

25

26  [7]The Fifth Circuit found additional support for its position in Davis v. Johnson, 158 F.3d 806 (5th Cir. 1998), in which the petitioner, also a capital petitioner, "moved for and was granted extensions of time that set the deadline for filing his habeas petition beyond the AEDPA limitations period."

27  The Davis court assumed, without deciding, that extensions of time beyond the limitations period were exceptional circumstances that justified equitable tolling. Prieto, 456 F.3d at 515 (citing Davis,

28  158 F.3d at 808 & n.2, 811-12).

1   this Court expressly ordered that the "amended petition shall be treated as timely filed," see Docket

2   No. 71 (emphasis added), and the State did not assert in its motion to dismiss the First Amended

3   Petition that it was untimely under the AEDPA, see Docket No. 73.   In the same way as in Prieto,

4   these scheduling orders led Mr. Sherman, acting in good faith, to rely on them in assuming that his

5   amended petition would be timely.

6                   **(2)**       **Mr. Sherman Justifiably Relied on Ninth Circuit Precedent Which Caused Him to File His First Amended Petition According**

7                                      **to the Scheduling Orders**.

8   Beyond the specific scheduling orders issued by the Court in this case and the context in

9   which they were issued, Mr. Sherman is entitled to equitable tolling due to his reliance on Ninth

10   Circuit authority which had the effect of endorsing his approach to preparing and filing his First

11   Amended Petition.  See, e.g., Buckles, 647 F.3d at 891-93; Townsend, 562 F.3d at 1205-06; Harris,

12   515 F.3d at 1055-56.

13   As noted above, in McDaniel v. United States District Court (Jones), 127 F.3d 886 (9th Cir.

14   1997), the Ninth Circuit approved the Nevada district courts' standard procedure by upholding

15   petitioners' rights under the scheduling orders to pursue discovery in support of an amended petition

16   to be filed at some later date.  Id. at 887-88.  More significantly, when Mr. Sherman filed his initial

17   pro per petition, he was on notice that Rule 15(c) applied to federal habeas corpus cases.  See

18   Anthony v. Cambra, 236 F.3d 568, 576 (9th Cir. 2000); Fed. Rule Civ. Proc. 81(a)(2).  Mr. Sherman

19   reasonably relied upon the Ninth Circuit's liberal construction in non-habeas cases as applying with

20   the same force in habeas cases.  See Kern Oil & Ref. Co. v. Tenneco Oil Co., 840 F.2d 730, 736 (9th

21   Cir. 1988).  Mr. Sherman's assumption was confirmed when the Ninth Circuit, in Felix v. Mayle,

22   379 F.3d 612 (9th Cir. 2004), rev'd, 545 U.S. 644 (2005), held that new claims challenging a

23   conviction and/or sentence raised for the first time in an amended federal habeas "relate back" to the

24   original petition because such claims "arise[] out of the same transaction or occurrence as his

25   original petition because the transaction or occurrence in issue is his state trial and conviction." Id.

26   at 614; accord Ellzey v. United States, 324 F.3d 521 (7th Cir. 2003).  Under the Ninth Circuit test

27   set forth in Mayle, Mr. Sherman was entitled to expect that the claims he was diligently pursuing and

28   preparing to include his First Amended Petition would relate back to his pro per petition, because

1    these additional claims involved the same "transaction or occurrence" as that set forth in the original

2    petition – Mr. Sherman's conviction and sentence.

3           In this regard, Harris is instructive. There, the petitioner relied on the Ninth Circuit's opinion

4    in Dictado v. Ducharme, 244 F.3d 724 (9th Cir. 2001), which held that an untimely state post-

5    conviction petition was nevertheless "properly filed" under the AEDPA and therefore statutorily

6    tolled the statute of limitations.  See Harris, 515 F.3d at 1053.  The Supreme Court subsequently

7    issued its opinion in Pace v. DiGuglielmo, 544 U.S. 408 (2005), which rejected Dictado and

8    rendered any subsequent petition filed by the petitioner untimely.  Harris, 515 F.3d at 1053.  The

9    Ninth Circuit held that the petitioner was entitled to equitable tolling, explaining:

10           The fact that Harris could have filed a timely federal habeas petition at a certain point
             in time is not dispositive. The critical fact here is that Harris relied in good faith on
11           then-binding circuit precedent in making his tactical decision to delay filing a federal
             habeas petition. Harris' failure to file a timely petition is not the result of oversight,
12           miscalculation or negligence on his part, all of which would preclude the application
             of equitable tolling. . . . Harris presumably chose his tactical strategy precisely
13           because he believed that, under Dictado, he could pursue relief in state courts without
             jeopardizing his ability to file a federal habeas petition.
14
             . . . The Supreme Court's overruling of the Dictado rule made it impossible for Harris
15           to file a timely petition. Harris' petition became time-barred the moment that Pace
             was decided. Finally, Harris had no control over the operative fact that caused his
16           petition to become untimely – the Supreme Court's decision in Pace.

17   Id. at 1055-56 (citing Lawrence v. Florida, 127 S. Ct. 1079, 1085 (2007)).[8]

18          The same principles apply here.  Mr. Sherman, diligently complying with the court's

19   scheduling orders, received further assurance that his amended petition would "relate back" to his

20

21   _____
     [8]Likewise, in Guzman v. Houk, Case No. 04-CV-194, 2006 U.S. Dist. LEXIS 99978 (S.D. Ohio
22   Mar. 24, 2006), the district court rejected an argument similar to the one the State presents here.
     There, the petitioner filed a pro se federal petition and, after appointment of counsel, filed a traverse
23   and supplement to his pro se petition.  Id. at *8-*10.  The State objected to the assertion of new
     claims in the supplement as time-barred under the AEDPA.  Id. at *10-*11. The court acknowledged
24   that new claims contained in the traverse "may be time-barred[] unless such claims 'relate back' to
     the date the initial petition was filed" under the Supreme Court's decision in Mayle. 2006 U.S. Dist.
25   LEXIS at *12-*13. The court, however, refused to apply Mayle to dismiss the claims in the traverse,
     because the unsettled state of the law "regarding 'relate back of habeas petition amendments'"
26   before Mayle entitled the petitioner to equitable tolling. 2006 U.S. Dist. LEXIS at *35-*36 (quoting
     and citing Mayle, 545 U.S. at 653).  Indeed, the case for equitable tolling in Mr. Sherman's case is
27   much stronger than in Guzman, where the district court recognized that the Sixth Circuit had not
     addressed the interplay between the AEDPA statute of limitations and amended petitions, see id. at
28   *36, while the Ninth Circuit had addressed the issue, favorably to Mr. Sherman, in the very case that
     was ultimately reversed by the Supreme Court.

timely pro se petition under the Ninth Circuit rule set forth in Mayle.  In its motion to dismiss, the State rightly recognized the dramatic change in law occasioned by the Supreme Court's opinion in Mayle, explaining that the Supreme Court "held that the Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c), which allowed an amendment to a habeas petition to 'relate back' to the date of the original petition 'so long as the new claim stems from the habeas petitioner's trial, conviction or sentence,' was too broad."  Docket No. 124 (MTD at 10 (quoting Mayle v. Felix, 545 U.S. 644, 656 (2005)).  In practice, the Supreme Court's decision in Mayle constituted an impediment to Nevada's standard procedure for resolving capital habeas cases, because this precedent ensured that in all, or virtually all, cases new claims developed during the court-ordered period for factual development would be untimely under the AEDPA. Mr. Sherman, through undersigned counsel, recognized that the sea change occasioned by the Supreme Court's reversal in Mayle and diligently filed his Second Amended Petition shortly thereafter. Accordingly, the same equitable principles "dictat[ing]" relief in Harris are present here, and entitle Mr. Sherman to equitable tolling.  Harris, 515 F.3d at 1057; see also Townsend, 562 F.3d at 1205-06 (reaffirming Harris).

## ii.    The State's Conduct Warrants Equitable Tolling

On the other side of the scale, the rationale for strictly applying the AEDPA's statute of limitations is sharply limited in the circumstances presented here, where the State, though the Nevada Office of the Attorney General, helped develop the standardized procedure and form scheduling orders of which Mr. Sherman availed himself; did not object in any form to their continued use in this case; did not object to any extensions sought by Mr. Sherman; itself sought extensions of time to prepare responses to materials filed by Mr. Sherman; and waived its earlier opportunity to argue that Mr. Sherman's First Amended Petition was untimely.

Representatives for the Nevada Attorney General's Office have acknowledged that their requests for extension of time, and acquiescence in Mr. Sherman's requests, prevent them from relying upon those same delays to assert a statute of limitations defense.  Indeed, on October 26, 2005, one week before Mr. Sherman filed his First Amended Petition, the Nevada Office of the Attorney General disavowed any reliance on Mayle under similar circumstances, acknowledging that

1   "there is a strong argument that [the petitioner] could make regarding estoppel – since at no time did

2   Respondent's object to [the petitioner's] requests for enlargements and indeed at times stipulated to

3   them.  For that reason, Respondents will not offend the Court by arguing that the Amended Petition

4   was not timely filed for <u>Mayle</u> purposes."  <u>See</u> Ex. 8 (<u>Jones v. McDaniel</u>, Case No.

5   CV-N-96-633-ECR (RAM), Motion to Dismiss, at 26 (filed October 26, 2005)).  The State should

6   not be heard to assert a different position on the legal effect of its own requests for an extension of

7   time under estoppel principles.

8        Further, this Court should take into account the prejudice that followed the state's failure to

9   previously assert a the statute of limitations defense.  <u>Cf.</u> <u>Day</u>, 547 U.S. at 210-11 (court must

10  consider "prejudice [caused] by the delayed focus on the limitations issue," including whether there

11  were other court proceedings or action occurred as a result).  In Mr. Sherman's case, the State's non-

12  assertion of the defense was followed this Court's order granting Mr. Sherman a stay to exhaust

13  certain claims in his First Amended Petition, and by over four years of state-court litigation during

14  which Mr. Sherman rightfully presumed that such claims would be addressed by the federal district

15  court upon his return.  At a minimum, the State's failure to raise the defense in 2002-2005 reflects

16  an uncertainty in the law and the effect of controlling precedent at that time, which counsels against

17  strict application of the statute of limitations in this case.

18       In addition to its acquiescence at all times to the filing of Mr. Sherman's First Amended

19  Petition according to the schedule set by this Court, the State's conduct in this litigation compels

20  equitable tolling due to its ongoing refusal to comply with its constitutional obligation to produce

21  exculpatory and impeachment evidence.  As this Court is aware, Mr. Sherman was denied leave to

22  serve subpoenas on the Clark County District Attorney's Office, the Las Vegas Metropolitan Police

23  Department, and various out-of-state law enforcement agencies that assisted the state in the

24  investigation of Mr. Sherman's case.  Docket No. 127.  While preparing and filing his motion for

25  reconsideration, Mr. Sherman proceeded to undertake extraordinary measures to further demonstrate

26  that the State continued to withhold evidence it was obligated to disclose, and ultimately did so by

27  gaining access to a confidential court file which demonstrated that the State had violated its

28  constitutional disclosure obligations; that the State had presented false testimony at Mr. Sherman's

1  trial; and that District Attorney David Roger had affirmatively misrepresented the facts regarding

2  benefits received by State witnesses to Mr. Sherman's trial counsel.  See Section II.B, supra, &

3  Section III.B, infra; Second Amended Petition at 194-234.

4       These facts, too, compel equitable tolling in Mr. Sherman's case because otherwise, "the

5  government could prevent any defendant from filing a timely claim simply by failing to produce

6  relevant evidence in a reasonable period, agreeing to a court-approved extended filing schedule, and

7  then sandbagging him with a statute of limitations defense." King v. Bell, 378 F.3d 550, 553, 554

8  (6th Cir. 2004) (reversing district court's dismissal of petition and remanding for consideration of

9  merits on petitioner's claims where State failed to produce voir dire transcripts, which in turn caused

10  the court to modify the scheduling order to permit filing of amended petition outside statute of

11  limitations with parties' consent); see also, e.g., United States v. Lopez, 577 F.3d 1053, 1064-65 (9th

12  Cir. 2009) (statute of limitations should not be construed to "reward prosecutors for failing to meet

13  their constitutional disclosure obligations under Brady"); Lewis v. United States, 985 F. Supp. 654,

14  657 (S.D. W. Va. 1997) (granting equitable tolling in situation involving, inter alia, failure to

15  disclose exculpatory information); cf. Pliler v. Ford, 542 U.S. 225, 235 235 (O'Connor, J.,

16  concurring) ("[I]f the petitioner is affirmatively misled . . . by the State, equitable tolling might well

17  be appropriate.").  These cases reinforce the point that the State should not now profit from its long-

18  standing and ongoing denial of Mr. Sherman's constitutional rights by claiming that his First

19  Amended Petition is untimely, when the supposed delay was occasioned by (1) Mr. Sherman's

20  justified belief that the State was (and is) withholding exculpatory and impeachment evidence,

21  causing him to file a motion for leave to conduct discovery and seek rehearing of the denial that

22  motion; and (2) the State's refusal to recognize its constitutional obligations in the face of the

23  evidence and argument presented in Mr. Sherman's amended petitions.

24           **a.**    **Mr. Sherman Is Entitled to Equitable Tolling Because He Diligently Pursued His Rights.**

25

26       In the preceding sections, Mr. Sherman set forth several extraordinary circumstances which

27  caused him to file his First Amended Petition at the time he did.  He turns now to the second element

28  of the Supreme Court's test for the availability for equitable tolling – whether "he has been pursuing

his rights diligently." Holland v. Florida, 130 S. Ct. 2549, 2560-62 (2010) (internal quotation marks omitted). "[T]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence," id. at 2565 (internal quotation marks and citations omitted), which a petitioner may satisfy by showing that he "act[ed] as diligently as reasonably could have been expected under the circumstances," Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003) (emphasis in original).

Mr. Sherman's efforts far exceed this standard, as set forth in Section II.C, supra. To summarize, Mr. Sherman personally filed a pro per petition far in advance of any conceivable AEDPA limitations time period. Upon its appointment to Mr. Sherman's case months after his initial request, undersigned counsel immediately undertook to attempt to collect prior counsels' files and initiated informal discovery against key entities, including the CCDA and the LVMPD, but was hamstrung in his efforts to obtain information essential to his claims. As a result, Mr. Sherman rightly sought this Court's assistance in obtaining those materials according to its scheduling orders, a process which took well over one year. Mr. Sherman pressed on with his case even while his discovery-related motions were pending, and through extraordinary measures obtained evidence that shows that the State at all times in this litigation and prior state-court proceedings has withheld exculpatory and impeachment evidence, and that it presented materially false testimony before the grand jury and at trial. Such efforts establish "reasonable diligence," as required under the statute, and, accordingly Mr. Sherman is entitled to equitable tolling.

**b.    Mr. Sherman's First Amended Petition Is Timely Under the AEDPA Because It Was Filed Within One Year of the Date on Which the Factual Predicate of the Claims Presented Were Discovered Through the Exercise of Due Diligence and/or the Date the Impediment to Filing an Application by State Action Was Removed.**

The circumstances set forth in the preceding sections entitle Mr. Sherman to equitable tolling of the AEDPA statute of limitations until the point at which he filed his First Amended Petition. In the alternative, Mr. Sherman's petition is timely under 28 U.S.C. § 2244(d)(1)(B), which provides that "an application" for writ of habeas corpus is timely if filed within one year of the date an "impediment to filing an application created by State action . . . was removed," and/or Section 2244(d)(1)(D), which provides that an application is timely if filed within one year of "the date on

27

1   which the factual predicate of the claim or claims presented could have been discovered through the

2   exercise of reasonable diligence."  Mr. Sherman filed his amended petition on November 2, 2005,

3   see Docket No. 52-70, well within one year of discovering, through the exercise of extraordinary

4   diligence, evidence showing that the State withheld highly material exculpatory and impeachment

5   evidence, in violation of Mr. Sherman's federal constitutional rights under Brady v. Maryland, 373

6   U.S. 83 (1963), and Kyles v. Whitley, 514 U.S. 419 (1995), and also knowingly presented false

7   testimony, in violation of Mr. Sherman's federal constitutional rights under Napue v. Illinois, 360

8   U.S. 264, 269 (1959), as set forth below.

9        As recognized by numerous courts of appeal, including the Ninth, Section 2244(d)(1)(D) is

10  triggered by circumstances in which the State fails to disclose material exculpatory or impeachment

11  evidence, see, e.g., Quezada v. Scribner, 611 F.3d 1165, 1167-68 (9th Cir. 2010); Douglas v.

12  Workman, 560 F.3d 1156, 1181 (10th Cir. 2009) (per curiam) (rejecting state's argument that

13  petitioner "could have discovered the factual basis for the . . . Brady claims within the statutory

14  period" because prosecutor "was an active participant in shielding any evidence of the facts

15  underlying the instant claim"); Starns v. Andrews, 524 F.3d 612, 619 (5th Cir. 2008), or otherwise

16  is in the possession of information relevant to petitioner's claims, see, e.g., Ege v. Yukins, 485 F.3d

17  364, 373-74 & n.4 (6th Cir. 2007) (factual predicate for due process claim to prosecution witness's

18  testimony was a copy of letter issued by another county's prosecutor that warned of expert's

19  unreliability).[9]  Accordingly, the State's non-disclosure of such evidence in its actual or constructive

20  possession in this case prevented the clock from starting on the statute of limitations.  Indeed,

21  because the State continues to withhold such documents, see Renewed Motion for Leave to Conduct

22  Discovery at 7-14 (filed concurrently herewith), and Mr. Sherman has maintained his diligence

23  throughout these federal proceedings and during the state-court exhaustion proceedings, the clock

24

25

26

---

27  [9]Cf. Hasan v. Galaza, 254 F.3d 1150, 1154-55 (9th Cir. 2001); Moore v. Knight, 368 F.3d 936, 939
28  (7th Cir. 2004) (judicial misconduct claim timely where petitioner's investigator found information
    undermining trial judge's representations about her communications with jury).

28

1    has not yet begun to run.[10]  Accordingly, Mr. Sherman's petition is timely without resort to equitable

2    tolling.  See Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003).[11]

3          Like the diligence requirement for equitable tolling, "§ 2244(d)(1)(D) does not demand the

4    maximum diligence possible, but only 'due' or 'reasonable' diligence." Souliotes v. Evans,

5    622 F.3d 1173, 1178 (9th Cir. 2010) (reversing dismissal of habeas petition and remanding for

6    evidentiary hearing where district court applied overly stringent standard of diligence).  Such

7    "reasonable" diligence does not require that later-obtained information was previously

8    "undiscoverable," or that such information could have could have been obtained "through any means

9    conceivable." Id.  Rather, under Section 2244(d)(1)(D), a petitioner is merely required to establish

10   "when a reasonable investigation would have uncovered the facts he alleges are newly discovered."

11   Id. (emphasis in original).  In the context of a State's non-disclosure of information relevant to a

12   petitioner's claims, a petitioner's diligence in obtaining the withheld information must take into

13   account representations made by the State regarding the existence of non-disclosed documents.  See,

14   e.g., Quezada, 611 F.3d at 1168 (diligence found under Section 2244(d)(1)(D) where attempts to

15   acquire information from government were met with "an outright denial of the existence of the

16   missing compensation information"); Starns, 524 F.3d at 619 (petitioner "did not fail to act with due

17   diligence in not investigating further given the state's representations about the content, scope, and

18

19   [10]Cf. Quezada v. Scribner, 611 F.3d 1165 (9th Cir. 2010) (remanding for evidentiary hearing on "the
     admissibility, credibility, veracity and materiality of . . . newly discovered evidence" presented for
20   the first time in petitioner's motion for remand filed with the Ninth Circuit, after his petition had
     been dismissed by the district court; new evidence was timely under Section 2244(d)(1)(D)).
21
     [11]In Walker, the Eleventh Circuit held that the plain language of the statute, which provides that "[a]
22   1-year period shall apply to an application for writ of habeas corpus" and shall run from the latest
     of" the various possible time periods set forth in the statute, see 28 U.S.C. § 2244(d)(1) (emphases
23   added), compelled the conclusion that an entire application was rendered timely whenever a single
     claim met the requirements of Section 2244(d)(1)(D), see 341 F.3d at 1247 (citing, inter alia, Artuz
24   v. Bennett, 531 U.S. 4, 9 (2000).  Walker is in accord with the Supreme Court's recent decision in
     Magwood v. Patterson, 130 S. Ct. 2788 (2010), which rejected the state's proposed reading of
25   Section 2244(b) purporting to remove claims from the courts' consideration where the "application"
     was otherwise appropriately filed, recognizing that it had "previously found Congress' use of the
26   word 'application' significant, and have refused to adopt an interpretation of §2244(b) that would
     'elid[e] the difference between an "application" and a "claim."'" Id. at 2798 (quoting Artuz, 531 U.S.
27   at 9).  Mr. Sherman recognizes that the Ninth Circuit rejected the Walker opinion in Souliotes v.
     Evans, 622 F.3d 1173 (9th Cir. 2010), but it did so without the apparent benefit of the Supreme
28   Court's guidance in Magwood, decided three months earlier.

                                                    29

1   relevance" of exculpatory material); <u>see also</u> <u>Moore</u>, 368 F.3d at 939 (diligence standard relaxed

2   where trial judge misled petitioner about contents of her communications with jurors).

3          Applying these principles, it is apparent that the factual allegations contained in, and exhibits

4   attached to, Mr. Sherman's First Amended Petition consist of newly discovered evidence which

5   could not have been discovered through the exercise of reasonable diligence.  Mr. Sherman's

6   diligence with respect to seeking exculpatory and impeachment evidence began before trial, when

7   his trial counsel filed with the District Attorney routine requests for discovery, upon which the case

8   proceeded according to the Clark County District Attorney's "open file" policy.  <u>See</u> First Amended

9   Petition at 203-06.  Trial counsel additionally filed a motion to compel production of the State

10  witnesses' "rap sheets," and a second motion to compel disclosure of the existence and substance

11  of expectation, or actual benefits and or preferential treatment received, for cooperation with the

12  State, both of which were granted by the trial court.  <u>See</u> Docket Nos. 126-15, 126-18 (Exs. 25, 28);

13  First Amended Petition at 211-12.

14         In response to the trial court's order, prosecutor David Roger personally sent a letter to trial

15  counsel which purported to reveal all of the material exculpatory and impeachment evidence in the

16  possession or control of the state relating to its witnesses Michael Placencia, Christine Kalter and

17  Stacey Maher. <u>See</u> Docket No. 65 at 113-14 (Ex. 5.67).  In this letter, Mr. Roger disclosed that Ms.

18  Maher received a release on her own recognizance that he personally obtained on her behalf after she

19  was arrested on prostitution charges, and "[t]hat is the only benefit that she has received from the

20  state." <u>Id.</u>  With respect to informant witness Mr. Placencia, Mr. Roger disclosed that he "received

21  Secret Witness funds as a reward for his cooperation."  <u>Id.</u>  Finally, Mr. Roger revealed that he did

22  not obtain any benefits on behalf of Ms. Kalter but he expressed his belief that she anticipated to

23  receive favorable sentencing on the involuntary manslaughter conviction to which she had already

24  entered a guilty plea in exchange for her assistance to the state.  <u>Id.</u>  Mr. Roger further represented

25  that "this is the extent of the benefits provided to prosecution witnesses. Please be assured that I will

26  provide any further information to you as soon as I become aware of the information."  <u>Id.</u>  Each of

27  these representations turned out to materially omit exculpatory and impeachment information.  <u>See</u>

28  <u>generally</u> First Amended Petition at 212-35.

1    Despite Mr. Roger's pre-trial representations, undersigned counsel nevertheless sought

2    discovery from both the Clark County District Attorney's Office and the Las Vegas Metropolitan

3    Police Department almost immediately upon his appointment.  See Docket No. 21 (Exs. 2.1-2.9).

4    These requests were ignored. See id. In response to the State's stonewalling, Mr. Sherman sought

5    recourse from the Court by seeking leave to conduct discovery according to its scheduling orders.

6    Each of these briefs filed by Mr. Sherman in support of his requests for discovery reiterated the

7    State's constitutional obligations to disclose exculpatory and impeachment evidence.  See Docket

8    Nos. 19, 28, 35, 42.  The State opposed the motions but did nothing to set the record straight. See

9    Docket Nos. 27, 41. This Court denied Mr. Sherman's motions as they pertained to discovery of

10    Brady material in their entirety.  Docket Nos. 34, 43.  Conversations with Mr. Placencia directly

11    proved fruitless. Ex. 2 (Declaration of Herbert Duzant ¶¶ 3-7 (May 25, 2004)).  Ultimately,

12    undersigned counsel was forced to seek this information indirectly and through extraordinary means

13    – in one instance, being forced to repeatedly request and review a court file to which various court

14    clerks had denied access on the ground of "confidentiality," see Ex. 4 (In re Access to Justice Court

15    Record of the Las Vegas Justice Court, Order No. 2004-PR-1 (effective December 1, 2004)) – before

16    obtaining information that was wrongfully withheld.

17    Such circumstances compel the conclusion that Mr. Sherman's petition is timely under

18    Section 2244(d)(1)(D).  Quezada is particularly instructive.  There, the petitioner filed an amended

19    petition generally alleging that the government withheld evidence of compensation paid to a

20    government witness in violation of Brady.  611 F.3d at 1166.  The petition was dismissed by the

21    district court, and the petitioner filed a notice of appeal.  Id.  Almost two years later, petitioner filed

22    a motion for remand with the Ninth Circuit on the basis of newly discovered evidence tending to

23    show that a government witness received benefits that were not disclosed by the State despite a

24    specific request for that information. Id. The Ninth Circuit granted the motion and remanded for an

25    evidentiary hearing, because "[t]he evidence allegedly withheld by the state . . . is favorable

26    impeachment evidence involving a key government witness" that was sufficient to undermine

27    confidence in the verdict.  Id. at 1167.  In so holding, the Ninth Circuit rejected the State's argument

28    that the claim based on this new evidence was time-barred, explaining:

1   AEDPA's one-year statute of limitations does not run until "the date on which the
2   factual predicate of the claim or claims could have been discovered through the
    exercise of due diligence." . . . Quezada requested compensation information from
3   the court, from the government and from [the government witness]. Quezada's
    attempts to acquire this information were repeatedly rebuffed by silence on the part
4   of the informant, or an outright denial of the existence of missing compensation
    information by the government. On December 11, 2008, [the government witness]
5   changed his testimony. Quezada discovered this in the spring of 2009. On the record
    before us it is clear that Quezada did exercise reasonable diligence but was unable
    to acquire this information earlier.
6

7   Id. at 1167-68 (emphasis added). For the same reasons, the State's long-standing and ongoing

8   refusal to provide documents requested by Mr. Sherman renders his petition timely.[12]

9        Mr. Sherman's petition is also timely under Section 2244(d)(1)(D) on the grounds that Claim

10  Eleven was not ripe until the conclusion of the third state post-conviction proceeding. Cf. Lopez v.

11  United States, 577 F.3d 1053, 1062 (9th Cir. 2009) (procedural barriers must be reconciled with

12  ripeness doctrine). In his first state habeas proceeding, Mr. Sherman alleged that the dual use of the

13  same felonies in support of a felony-murder theory and as aggravating circumstances violated his

14  state and federal constitutional rights. See Docket No. 132-14 (Ex. 116B, Supplemental Brief at

15  37-38). The Nevada Supreme Court rejected the claim, noting that it has "repeatedly rejected

16  identical challenges." See Docket No. 133-19 (Ex. 139, Order of Affirmance at 9-10 & n.22). Long

17  after the close of those proceedings, the Nevada Supreme Court reconsidered its prior holdings and

18  determined that it was "impermissible under the United States and Nevada Constitutions to base an

19  aggravating circumstance in a capital prosecution on the felony upon which a felony murder is

20  predicated." McConnell v. State, 120 Nev. 1043, 1069, 102 P.3d 606, 624 (2004).

21       In light of McConnell, Mr. Sherman re-raised this claim in his First Amended Petition, see

22  Docket No. 52 (First Amended Petition at 287-90), and in his second state-court petition, see Docket

23  No. 134-10 (Ex. 141J, Petition for Writ of Habeas Corpus at 328-30). At the state-district-court

24  level, the State agreed that Mr. Sherman had established cause for not raising this claim earlier, but

25  disagreed that Mr. Sherman had demonstrated prejudice. See Docket 138-21 (Ex. 179, Reply in

26

27  [12]At a minimum, this Court cannot conclude in the procedural posture of a motion to dismiss that
    Mr. Sherman's claims in his amended petition are untimely under 28 U.S.C. § 2244(d)(1)(D) without
28  the benefit of discovery and an evidentiary hearing.

1  Support of Motion to Dismiss at 3-4).  The district court's order, drafted by the State without the

2  benefit of discovery or an evidentiary hearing, reflected the State's position.  See Docket No. 139-8

3  (Ex. 188, Order at 3, 5).  Mr. Sherman appealed this finding, focusing on the district court's

4  erroneous harmless error analysis.  See Docket No. 139-18 (Ex. 196B, Appellant's Opening Brief

5  at 38-48).  The Nevada Supreme Court affirmed the district court's decision in all respects, agreeing

6  that the McConnell decision constituted "good cause," striking the two offending aggravating

7  circumstances, but then conducting constitutionally inadequate appellate review of the effect of the

8  invalid aggravating circumstances.  See Docket No. 140-11 (Ex. 205, Order of Affirmance at 6-9).

9  Accordingly, Mr. Sherman updated this claim in his Second Amended Petition to reflect what

10  occurred in state-court proceedings below – i.e., by focusing on the Nevada Supreme Court's

11  erroneous prejudice analysis rather than the underlying McConnell issue.  See Docket No. 103

12  (Second Amended Petition at 282-89).  In its motion to dismiss, however, the State argues that this

13  claim is unexhausted because of differences between the two petitions.  See MTD at 15-17.

14        The state's position on the exhaustion issue lacks merit because the factual predicate of the

15  claim – the Nevada Supreme Court's opinion setting forth constitutionally deficient prejudice

16  analysis – could not have been discovered earlier through the exercise of reasonable diligence.

17  Johnson v. United States, 544 U.S. 295 (2005), is instructive on this point. There, the petitioner

18  sought habeas relief after he successfully challenged in state court the underlying convictions that

19  served as the basis for his career-offender sentencing enhancement.  Id. at 300-01.  All nine justices

20  agreed that the underlying state court decision vacating his prior convictions constituted a "fact"

21  sufficient to trigger the delayed limitations period contained in Section 2255(f)(4), see id. at 306-07;

22  id. at 312 (Kennedy, J., dissenting), which, like Section 2254(d)(1)(D), provides for one-year

23  limitations period from "the date on which the facts supporting the claim or claims presented could

24  have been discovered through the exercise of reasonable diligence."  Following Johnson, the Ninth

25  Circuit agreed that a state-court decision involving the petitioner qualifies as a fact for purposes of

26  Section 2254(d)(1)(D).  See Shannon v. Newland, 410 F.3d 1083, 1088-89 (9th Cir. 2005); see also,

27  e.g., McAleese v. Brennan, 483 F.3d 206, 217 (3rd Cir. 2007) (recognizing that "a legal event" may

28  constitute the factual predicate of a habeas corpus claim under Section 2254).  Under this authority,

1   Mr. Sherman's petition is timely under Section 2254(d)(1)(D) because the factual predicate of Claim

2   Eleven – which concerns the Nevada Supreme Court's failure to provide constitutionally adequate

3   harmless error analysis after invalidating two aggravating circumstances found against him – was

4   unavailable to Mr. Sherman until the Nevada Supreme Court issued its order erroneously denying

5   relief.

6          Mr. Sherman can further establish diligence in pursuing the relief in state court that resulted

7   in the Nevada Supreme Court's erroneous order.  In Johnson, the Supreme Court held that diligence

8   in this context "can be shown by prompt action on the part of the petitioner as soon as he is in a

9   position to realize he has an interest in challenging the prior conviction."  544 U.S. at 309.  By

10  analogy, the question presented in this case is whether Mr. Sherman took "prompt action" in

11  challenging his conviction in state court upon receiving notice of a basis to do so.  The facts bear out

12  Mr. Sherman's diligence under this standard as he first raised a McConnell-type claim in his first

13  state habeas petition, long before McConnell was decided on December 29, 2004.  McConnell itself

14  expressed no view on whether its ruling was retroactive, and the Nevada Supreme Court declined

15  to reach that question on the State's motion for reconsideration.  See McConnell v. State, 121 Nev.

16  25, 29, 107 P.3d 1287, 1290 (2005).  Nevertheless, Mr. Sherman filed his state-court petition

17  challenging his sentence under McConnell well within one year of the Nevada Supreme Court's

18  original opinion, anticipating that the landmark McConnell decision both established cause for not

19  earlier raising the claim and that McConnell should be found retroactive.

20         Mr. Sherman's argument proved prescient.  In November 2006, almost one year after Mr.

21  Sherman filed his state petition, the Nevada Supreme Court recognized habeas petitioners seeking

22  to invalidate their sentences under McConnell could establish cause for not earlier raising the claim

23  because it was not reasonably available to them.  See Bejarano v. State, 122 Nev. 1066, 1073, 146

24  P.3d 265, 270 (2006).  At that time, the Nevada Supreme Court also determined that McConnell

25  applied retroactively.  Id. at 1076-78, 146 P.3d at 272-74.  The Nevada Supreme Court then affirmed

26  these principles in denying Mr. Sherman's most recent state-court petition.  See Docket No. 140-11

27  (Ex. 205, Order of Affirmance at 6-7).  At no point in those proceedings did the courts, or the State,

28  question Mr. Sherman's diligence in seeking relief under McConnell, and there is no basis for

34

1  concluding otherwise now.  What Mr. Sherman could not anticipate, however, is that the Nevada

2  Supreme Court would perform constitutionally invalid error analysis in adjudicating this claim,

3  forcing him to raise this new issue in his Second Amended Petition.  Accordingly, pursuant to

4  Johnson, Mr. Sherman's petition is timely under Section 2254(d)(1)(D).

5

6  **c.    Dismissal of This Action Would Violate Mr. Sherman's Statutory Right to Mandatory Appointment of Counsel.**

7          As set forth above, the State's motion to dismiss Mr. Sherman's petition in its entirety must

8  be denied because (i) he is entitled to equitable tolling and (ii) he filed his petition within one year

9  of "the date on which the factual predicate of the claim or claims presented could have been

10 discovered through the exercise of reasonable diligence" under 28 U.S.C. § 2254(d)(1)(D).  In

11 addition, under the circumstances of this case, granting the State's motion to dismiss would deprive

12 Mr. Sherman of his right to mandatory appointment of counsel under 35 U.S.C. § 3599(a)(2),

13 because it would cause his capital case to have been decided, and ultimately dismissed, based on a

14 bare-bones petition he filed without the assistance of counsel.

15         Section 3599(a)(2) provides that

16         [i]n any post conviction proceeding under section 2254 or 2255 of title 28, United
       States Code, seeking to vacate or set aside a death sentence, any defendant who is or
17     becomes financially unable to obtain adequate representation or investigative, expert,
       or other reasonably necessary services shall be entitled to the appointment of one or
18     more attorneys.

19 Id.; see also 21 U.S.C. § 848(q)(4)(B) (repealed 2006).[13]  The involvement of counsel in

20 investigating and preparing a capital petitioner's federal petition for writ of habeas corpus is

21 imperative to ensuring the fundamental fairness in the imposition of the death penalty.  As explained

22 by the Supreme Court,

23         Congress' provision of a right to counsel under § 848(q)(4)(B) reflects a
       determination that quality legal representation is necessary in capital habeas corpus
24     proceedings in light of "the seriousness of the possible penalty and . . . the unique and
       complex nature of the litigation." § 848(q)(7).  An attorney's assistance prior to the
25     filing of a capital defendant's habeas corpus petition is crucial, because "the
       complexity of our jurisprudence in this area . . . makes it unlikely that capital
26

27 [13]In 2006, Congress repealed Section 848(q), which was then replaced by a "materially identical
   statute," Section 3599(a)(2).  See Holmes v. Buss, 506 F.3d 576, 578 (7th Cir. 2007); see also Nash
28 v. Ryan, 581 F.3d 1048, 1052 n.5 (9th Cir. 2009).

                                              35

1    defendants will be able to file successful petitions for collateral relief without the
2    assistance of persons learned in the law." <u>Murray v. Giarratano</u>, 492 U.S. 1, 14 (1989) (Kennedy, J., concurring in the judgment).

3    <u>McFarland v. Scott</u>, 512 U.S. 849, 855-56 (1994); <u>see also</u> 18 U.S.C. § 3599(d) (identical language

4    in superseding statute regarding "the seriousness of the possible penalty and . . . the unique and

5    complex nature of the litigation"); <u>Gates v. Woodford (Rohan ex rel. Gates)</u>, 334 F.3d 803, 813 (9th

6    Cir. 2003) (Kozinski, J.) (appointment statute "reflects Congress's belief that . . . the meaningful

7    assistance of counsel is essential to secure federal constitutional rights").  The importance placed

8    upon the assistance of counsel in capital litigation is further exemplified by the all-encompassing

9    scope of the attorney's representation upon being appointed, <u>see Harbison v. Bell</u>, 556 U.S. 180, __,

10   129 S. Ct. 1481, 1486 (2009) (concluding that broad language regarding counsel's responsibilities

11   under 28 U.S.C. § 3599(e) includes representation during state clemency proceedings), and the

12   heightened professional qualifications required by the statute to represent capital defendants, <u>see</u> 18

13   U.S.C. § 3599(b)-(d); <u>McFarland</u>, 512 U.S. at 854 n.2 (noting the "more stringent experience

14   criteria" required under Section 848(q)(4)(B) than for attorneys appointed to represent non-capital

15   defendants under the Criminal Justice Act).

16        The aims of the mandatory-appointment-of-counsel statutes are not fulfilled by simply

17   appointing an attorney, however.  Rather, the statute contemplates that attorneys appointed

18   thereunder will seek "investigative, expert or other services [that] are reasonably necessary for the

19   representation of the defendant," <u>see</u> 18 U.S.C. § 3599(f); 21 U.S.C. § 848(q)(9) (repealed), and that

20   the results of those "critical" services will be incorporated into the federal petition, <u>see McFarland</u>,

21   512 U.S. at 855-56.  Likewise, because the statute insists upon meaningful assistance of counsel, it

22   necessarily presumes that a petitioner will have the opportunity to communicate with his counsel

23   regarding the claims to be set forth in his operative petition.  <u>Rohan</u>, 334 F.3d at 818-19.

24        The State's position that this case must proceed on the basis of Mr. Sherman's skeletal <u>pro</u>

25   <u>se</u> petition, <u>see</u> Docket No. 124, MTD at 12, would eviscerate Mr. Sherman's statutory right to the

26   mandatory appointment of counsel.  <u>See Spitsyn v. Moore</u>, 345 F.3d 796, 800 n.1 (9th Cir. 2003).

27   As is evident, this petition was filed solely to trigger his right to appointment of counsel, and was

28   prepared without the benefit of any investigative and expert services and without the benefit of

36

1   learned counsel.  See Docket No. 1 (Petition at 7 ("I am indigent and do not understand the law and

2   need counsel appointed to help me complete this petition and file a supplemental petition.")).  The

3   further outcome proposed by the State, that his case should be summarily dismissed without any

4   meaningful federal review, would be the result expressly warned against by the Supreme Court in

5   McFarland, where the Court recognized that "[r]equiring a petitioner to proceed without counsel .

6   . . would expose him to a substantial risk that his habeas claims would never be heard on the merits"

7   because pro se petitions often would be subject to summary dismissal because of a failure to meet

8   the heightened pleading requirements for habeas actions and comply with the doctrines of procedural

9   default and waiver.  512 U.S. at 856.

10      In this case, the only way in which to vindicate Mr. Sherman's statutory right to counsel is

11  to adjudicate his amended petitions filed in accordance with this Court's scheduling orders with the

12  assistance of counsel as contemplated by the statute.  The case cited by the State in support of

13  outright dismissal, Mayle v. Felix, 545 U.S. 644 (2005), was not a capital case, see id. at 648, and

14  therefore presented no opportunity for the Supreme Court to consider the impact of the additional

15  safeguards adopted by Congress to prevent summary dismissal of federal constitutional claims in

16  capital cases.  See Spitsyn, 345 F.3d at 800 n.1.  Nor did the High Court have the opportunity to

17  consider any circumstances like those present here, where counsel was appointed shortly before the

18  expiration of the one-year statute of limitations, justifiably relied on this Court's scheduling orders

19  and existing case law in deciding when to file his amended petition, and put the State on notice of

20  the theories of many of its claims through discovery motions and other papers filed with the Court.

21          d.      **All Claims in Mr. Sherman's Second Amended Petition Are Exhausted and
                    None Are Procedurally Defaulted.**

22

23      Having established that the Second Amended Petition is properly before this Court on

24  multiple grounds, Mr. Sherman now turns to the remainder of the State's arguments.  Specifically,

    in its motion to dismiss, the State argues that Claims Three, Six, Eleven, Fifteen, Seventeen, and

25  Eighteen in Mr. Sherman's Second Amended Petition are unexhausted, "together with all other

26  claims which incorporate these allegations," and, accordingly, that Mr. Sherman is not entitled to

27  relief on those claims.  MTD at 13-20.  The State further argues that Claims Three, Four, Six, Nine,

28

1   Ten, Twelve, Fourteen, Fifteen, Seventeen and Eighteen, as well as all portions of Claim Two except

2   Claim Two(Y) and all portions of Claim Thirteen except those relating to the "anti-sympathy"

3   instruction, are procedurally barred.  Id. at 21.  Finally, the State further argues that Claims One,

4   Two(Y), Five, Seven, Eight, Eleven, Thirteen(B), and Sixteen are also procedurally barred unless

5   Mr. Sherman "can show that these claims were previously unexhausted [sic] on direct appeal or in

6   the first state habeas petition."  Id.

7           Mr. Sherman respectfully submits that the none of the procedural hurdles identified by the

8   State in its motion can bar this Court's consideration of the merits of his constitutional claims.  It is

9   well-established that the exhaustion doctrine, as codified by the Antiterrorism and Effective Death

10  Penalty Act of 1996, provides that habeas relief must be denied if the petitioner has not "exhausted

11  the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); Exhaustion under the

12  AEDPA, however, "does not require that a habeas petitioner . . . present to the state courts every

13  piece of evidence supporting his federal claims in order to satisfy the exhaustion requirement.'"

14  Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) (emphasis in original; internal quotation marks

15  omitted).  Exhaustion merely requires the fair presentation

16  of a constitutional claim in the state courts, see Duncan v. Henry, 513 U.S. 364, 365 (1995),

17  and this rule "does not require exact correlation between the pleadings in both federal and

18  state court." Rice v. Wood, 44 F.3d 1396, 1403 (9th Cir. 1995) (citing Vasquez v. Hillary, 474 U.S.

19  254, 257-58 (1986)), opinion vacated in part on other grounds by rehearing en banc, 77 F.3d 1138

20  (9th Cir. 1996); see also, e.g., Carter v. Bell, 218 F.3d 581, 606-07 (6th Cir. 2000) ("We do not

21  require word-for-word replication of the state claim in the habeas corpus petition in order to address

22  the merits therein."); Boyko v. Parke, 259 F.3d 781, 788 (7th Cir. 2001) ("A petitioner may

23  reformulate his claims somewhat, so long as the substance of his argument remains the same. . . .

24  In applying these standards, federal courts should avoid hypertechnicality." (internal quotation marks

25  omitted)); Wells v. Maass, 28 F.3d 1005, 1008 n.1 (9th Cir. 1994) (remanding for consideration on

26  the merits a claim in which petitioner "ha[d] over time changed the relative emphasis he ha[d] put

27  on the two aspects of the claim"). It is only when different factual allegations "fundamentally alter

28  the legal claim already considered by the state court" that those allegations render the claim

1  unexhausted.  Vasquez, 474 U.S. at 257-58 (1986).

2      Furthermore, any alleged procedural default may be overcome by, inter alia, demonstrating

3  that the alleged procedural bars employed by the state are either not independent of federal law or

4  not adequate to preclude federal review; or by showing that (1) good cause for the failure to exhaust

5  the claim, and (2) prejudice from the purported constitutional violation.  Cooper v. Neven, 641 F.3d

6  322, 327-28 (9th Cir. 2011) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

7      With these principles in mind, Mr. Sherman turns to the specific arguments with respect to

8  exhaustion and procedural default raised in the State's motion to dismiss.

9          **i.      Claim One**

10     The State's argues that Claim One, regarding the trial court's order preventing the defense

11 from presenting evidence of Dianne Bauer's culpability in the offense for which Mr. Sherman was

12 convicted, is procedurally defaulted unless Mr. Sherman can show that this claim was previously

13 exhausted on direct appeal or in his first state habeas petition because the Nevada Supreme Court

14 found it procedurally barred during Mr. Sherman's most recent state-court proceeding.  MTD at 21-

15 24.

16     This argument fails because (i) this Claim was sufficiently exhausted on direct appeal and

17 in his first state habeas petition; or (ii) Mr. Sherman can show cause and prejudice for failing to raise

18 any factual allegations which fundamentally alter the claim. On direct appeal, Mr. Sherman

19 succinctly laid out the legal basis of this claim, including references to specific federal constitutional

20 guarantees under the Sixth Amendment and his right to a fundamentally fair trial and due process

21 of the law.  See Docket No. 131-7 (Direct Appeal Brief at 26); see also Docket No. 131-14

22 (Appellant's Reply Brief at 2-3).  He also set forth the operative facts underlying the alleged

23 constitutional violations, including the trial court's original order excluding evidence regarding Mr.

24 Sherman's state of mind and examples of the evidence wrongfully excluded by the trial court as set

25 forth in trial counsel's offers of proof.  See Docket No. 131-7, Direct Appeal Brief at 20-25. When

26 the State rejected the premise of his argument, appellate counsel offered several further factual issues

27 upon which Mr. Sherman was denied the opportunity to present evidence at trial.  See Docket No.

28 131-14, Appellant's Reply Brief at 3-6.  The Nevada Supreme Court then itself undertook "a

39

thorough review of the record" in determining that no error occurred, or, in the alternative, that any error was harmless. Sherman v. State, 114 Nev. 998, 1007-08, 965 P.2d 903, 910 (1998). In turn, Mr. Sherman's presentation of the same claim in his Second Amended Petition, with the addition of some factual allegations which do not "fundamentally alter the nature of the legal claim already considered by the state courts," does not now render his claim unexhausted. Vasquez, 474 U.S. 254 at 260; see also Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999) ("additional facts" supporting existence of unconstitutional actions "that differed in number, but not in kind" did not render the claim unexhausted, citing Miller v. Estelle, 677 F.2d 1080, 1083 (5th Cir. 1983)); Winston v. Kelly, 592 F.3d 535, 550 (4th Cir. 2010) (evidence that "supports factual allegations for which there is at least some support in the state record" can be considered on federal review).[14]

In the alternative, Mr. Sherman can establish cause and prejudice to excuse any alleged procedural default. Cause for an alleged procedural default exists if "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," Murray v. Carrier, 477 U.S. 478, 488 (1986), including situations in which "the factual or legal basis for a claim was not reasonably available to counsel" at the time of the alleged procedural default, Coleman v. Thompson, 501 U.S. 722, 753 (1991) (internal quotation marks omitted). Claim One of Mr. Sherman's Second Amended Petition includes allegations demonstrating the falsity of testimony offered by the State's key witness, Dianne Bauer, in support of its revenge theory of motive. See, e.g., Second Amended Petition at 11, 13-14, 35-36. These allegations are based on documents which were in the State's actual or constructive possession but

---

[14]The State's motion to dismiss is simply wrong about which facts were contained in Mr. Sherman's direct appeal brief. For example, the State asserts that in his Second Amended Petition, Mr. Sherman went "well beyond" the facts asserted in the direct appeal regarding the proposed testimony of witness Erin Murphy by "now alleging that Ms. Murphy would have testified about speaking in front of Sherman of being sexually molested by her father." MTD at 23. But appellate counsel made exactly the same factual assertions on direct appeal, noting that numerous witnesses, including Ms. Murphy, "would have refuted" Dianne Bauer's testimony that she had never told Mr. Sherman that her father molested her. Appellant's Reply Brief at 5. Similarly, the State incorrectly asserts that Mr. Sherman never discussed the Alaska Highway Incident or the involvement of witness Katie Cox in this incident in his direct appeal, see MTD at 24, even though appellate counsel discussed the testimony that Ms. Cox would have given regarding the incident, see Appellant's Reply Brief at 5-6. The Nevada Supreme Court then plainly considered these facts in its disposition of this claim on direct appeal. Sherman, 114 Nev. at 1007, 965 P.2d at 909 (discussing testimony that Mr. Sherman sought to introduce at trial).

never disclosed to trial or subsequent counsel, in violation of its obligations under <u>Brady v.</u> <u>Maryland</u>, 373 U.S. 83 (1963), and its progeny.  The State's withholding of these materials constitutes cause to overcome any alleged procedural default.  <u>See, e.g.</u>, <u>Banks v. Dretke</u>, 540 U.S. 668, 691-98 (2004); <u>Strickler v. Greene</u>, 527 U.S. 263, 283-90 (1999).

Moreover, Mr. Sherman can establish cause because he was prevented from developing this claim at trial and presenting it on direct appeal by the trial court's refusal to turn over to trial counsel the contents of the victim's trust file after it conducted an <u>in camera</u> review, <u>see</u> Second Amended Petition at 56-58, as well as by the inadequate process offered to Mr. Sherman to create a record on appeal.  Mr. Sherman alleged that the trust documents withheld from trial counsel would establish that the victim met with his counsel one month before his death for the purpose of excluding Dianne Bauer from receiving an inheritance, which in turn would further demonstrate the prejudice from the trial court's erroneous order on the State's motion <u>in limine</u>.  <u>See</u> Second Amended Petition at 57. The prosecution and trial judge also effectively prevented trial counsel from developing a record regarding the trial court's erroneous ruling. As trial counsel explained, the prosecution first raised their objection to the introduction of evidence regarding Dianne Bauer's culpability in the offense on the morning that the defense was to begin its case-in-chief, in the form of an oral motion heard off-the-record.  Docket No. 67 (Ex. 7.18, Declaration of David Schieck ¶¶ 2-8).  This last-minute maneuver by the State not only "gutted the anticipated testimony of [the defense] witness," <u>see</u> <u>id.</u> ¶ 5, but also prevented trial counsel from developing the record in anticipation of appeal, <u>see</u> Ex. 9 (Declaration of Nancy Lemcke ¶ 4 ("I did not anticipate the prosecution's oral motion, which immediately preceded the case defense-case-in-chief.  Consequently, it is entirely possible that I may not have placed each and every relevant piece of testimony from each witness before the trial court.")); <u>see also</u> Docket No. 129-9 (Ex. 66A, 02/03/97 TT at 16-17 (reflecting trial court's hostility to trial counsel's offer of proof)).  These impediments also constitute cause for excusing any purported procedural default.  <u>See, e.g.</u>, <u>Amadeo v. Zant</u>, 486 U.S. 214, 222 (1988) (finding cause where evidence in support of constitutional violation "was concealed by county officials and therefore was not reasonably available to petitioner's lawyers"); <u>Ward v. Hall</u>, 592 F.3d 1144, 1176-77 (11th Cir. 2010) (finding cause to excuse procedural default where neither the bailiff nor the trial

1   judge informed counsel about facts supporting juror/bailiff misconduct claim); cf. Hurles v. Ryan,

2   __ F.3d __, __, 2011 U.S. App. LEXIS 13819, at *8 (9th Cir. July 11, 2011) (state court fact-finding

3   process "fundamentally flawed" and entitled to no deference under AEDPA where trial judge

4   prevented development of the record).

5           **ii.      Claim Two(Y)**

6           With respect to Claim Two, the State argues that Claim Two(Y), regarding ineffective

7   assistance of trial counsel in failing to object to the prejudicial comments made by the trial court, is

8   unexhausted, even while acknowledging that the claim was raised on appeal from the denial of his

9   first state post-conviction petition and this claim was actually decided by the Nevada Supreme Court

10  as a claim under the Sixth, Eighth, and Fourteenth Amendments.  See MTD at 25.  By itself, the

11  Nevada Supreme Court's prior consideration of this claim on the merits renders the claim sufficiently

12  exhausted, and Mr. Sherman's subsequent pleading of this claim, which does not "fundamentally

13  alter the nature of the legal claim already considered by the state courts," does not now render his

14  claim unexhausted.  Vasquez, 474 U.S. 254 at 260; see also Weaver,197 at 364; Winston, 592 F.3d

15  at 550.

16          Furthermore, this claim is exhausted because it is apparent the Nevada Supreme Court

17  considered the entire voir dire transcript in addressing this claim in Mr. Sherman's first state post-

18  conviction proceeding.  After agreeing that the trial judge's comments regarding the Book of Judges

19  were inappropriate under federal constitutional law, the Nevada Supreme Court relied on portions

20  of the voir dire transcript not referenced by the State at either the district court level or on appeal in

21  erroneously determining that Mr. Sherman did not suffer prejudice.  Compare Docket 133-19 (Ex.

22  139, Order of Affirmance at 7-9 & n.16) with Docket 132-16 (Ex. 118, State's Opposition to

23  Defendant's Supplemental Brief at 24-26) and Docket 133-15 (Ex. 135B, Respondents' Answering

24  Brief at 29-31).  Accordingly, the entire voir dire transcript, including the additional instances of

25  prejudicial conduct, were factually exhausted in Mr. Sherman's first state post-conviction

26  proceeding.

27          Yet even if Mr. Sherman's citation to additional instances of improper judicial conduct

28  contained in the trial transcript could be considered "unexhausted," it must nonetheless be

42

considered by this Court in connection with his overall claim. <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993); <u>cf.</u> <u>Kesser v. Cambra</u>, 465 F.3d 351, 369 n.6 (9th Cir. 2006) (en banc). Certainly, if the trial transcript were favorable to the State, then surely the State would not complain about this Court considering the state record to show that Mr. Sherman's claim had no merit. On the contrary, this Court is obligated to consider the trial transcript regardless of which party benefits from it. <u>See</u> 28 U.S.C. § 2247 (trial transcripts "shall be admissible in evidence").[15] The problem (for the State) is that the trial transcript shows the exact opposite: A review of the transcript shows that the trial judge made numerous comments regarding the Bible that individually and collectively prejudiced Mr. Sherman. <u>See</u> Docket No. 103 (Second Amended Petition at 237-40). Therefore, even if the State was right, and certain instances of the trial judge's misconduct are unexhausted, this Court is still obligated to consider the trial transcript, which comprises the state record, in connection with Mr. Sherman's claim. <u>Cf.</u> 28 U.S.C. § 2247; Rule 5(c) of the Rules Governing Section 2254 Cases (requiring the State to submit the state record for the Court's consideration).

The State also claims that some of the theories of relief presented in this claim – namely, the constitutional rights to equal protection, trial by jury, confrontation of witnesses, and a reliable sentence – were never presented or addressed by the Nevada Supreme Court. <u>See id.</u> However, each of these theories falls under the constitutional amendments the State acknowledges were applied by the Nevada Supreme Court. Specifically, the federal constitutional right to a reliable sentence falls under the penumbra of guarantees contained in the Eighth Amendment, as the Nevada Supreme Court recognizes, <u>see, e.g.</u>, <u>Valdez v. State</u>, 124 Nev. __, __, 196 P.3d 465, 484 (2008) (Gibbons, J., dissenting), while the Sixth Amendment, by its explicit text, encompasses the right to confront witnesses and trial by jury, <u>see</u> U.S. Const. amend. VI, and the Fourteenth Amendment encompasses the constitutional rights to equal protection, <u>see</u> U.S. Const. amend. XIV, § 1. Accordingly, each of these theories of relief were exhausted before the Nevada Supreme Court.

Further, this sub-claim was fully exhausted on direct appeal, and therefore not procedurally

---

[15]If the State's argument was correct, then Mr. Sherman could successfully prevent this Court from reviewing the trial transcript (if the transcript was unfavorable to his position) in connection with his claim of ineffective assistance of trial counsel by arguing that the trial transcript was "unexhausted."

1    defaulted, under Nev. Rev. Stat. § 177.055(2), which requires the Nevada Supreme Court to review

2    each death sentence and consider, inter alia, whether "the sentence of death was imposed under the

3    influence of passion, prejudice or any arbitrary factor," including whether the conduct of the

4    underlying trial included error which amounts to a violation of the Eighth Amendment. See, e.g.,

5    Collman v. State, 116 Nev. 687, 726, 7 P.3d 426, 451 (2000) (applying Tison v. Arizona, 481 U.S.

6    137 (1987), to determine whether lack of intent to kill prohibited the death penalty, while

7    acknowledging "[petitioner] did not raise this issue on appeal"); Hollaway v. State, 116 Nev. 732,

8    742, 6 P.3d 987, 994 (2000) (citing Spaziano v. Florida, 468 U.S. 447 (1984), for the proposition that

9    "this court must carefully review every death sentence to minimize the risk that the [death] penalty

10   is imposed in error or in an arbitrary or capricious manner"); Bridges v. State, 116 Nev. 752, 767,

11   6 P.3d 1000, 1011 (2000) (recognizing that mandatory review statute includes consideration of

12   prosecutorial argument that misstates the law, because such argument may "result[] in the arbitrary

13   imposition of the death penalty"); Chambers v. State, 113 Nev. 974, 983-85, 944 P.2d 805, 811-12

14   (1997) (death penalty excessive under principles announced in Woodson v. North Carolina, 428 U.S.

15   280 (1976)); Haynes v. State, 103 Nev. 309, 319-20, 739 P.2d 497, 503-04 (1987) (same); Jones v.

16   State, 101 Nev. 573, 582-83, 707 P.2d 1128, 1134-35 (1985) (citing Caldwell v. Mississippi, 472

17   U.S. 320, 343 (1985) (O'Connor, J., concurring), for the proposition that misleading prosecutorial

18   argument may create an unacceptable risk of arbitrary or capricious infliction of the death penalty).

19          In its motion to dismiss, the State argues that Nevada's mandatory review statute does not

20   on its face require the Nevada Supreme Court to address potential violations of federal constitutional

21   law.  See MTD at 33 (citing Sechrest v. Ignacio, 943 F. Supp. 1245, 1249-50 (D. Nev. 1996)).  The

22   State's argument, however, ignores controlling Ninth Circuit  precedent as set forth in Beam v.

23   Paskett, 3 F.3d 1301 (9th Cir. 1993), overruled on other grounds, Lambright v. Stewart, 191 F.3d

24   1181 (9th Cir. 1999); Hoffman v. Arave, 236 F.3d 523 (9th Cir. 2001); and Comer v. Schriro, 463

25   F.3d 934 (9th Cir. 2006), in which the Ninth Circuit has found federal constitutional claims

26   exhausted on direct appeal pursuant to a State's mandatory review statute.  In Beam, for example,

27   the Ninth Circuit found that Idaho's mandatory review statute, which requires the Idaho Supreme

28   Court to determine "[w]hether the sentence of death was imposed under the influence of passion,

44

1   prejudice, or any other arbitrary factor" and "[w]hether the evidence supports the jury's or judge's

2   finding of a statutory aggravating circumstance from among those enumerated," see Idaho Code §

3   19-2827(c), "necessarily" resulted in a merits review of the petitioner's Eighth Amendment claim

4   that his sentence was based on an arbitrary factor.  3 F.3d at 1305-07.

5          On its face and in its application by the Nevada Supreme Court, the Nevada statute is

6   indistinguishable from the Idaho statute.  Like Idaho, the Nevada statute requires the Nevada

7   Supreme Court to determine "[w]hether the evidence supports the finding of an aggravating

8   circumstance or circumstances[ and w]hether the sentence of death was imposed under the influence

9   of passion, prejudice or any arbitrary factor," and further requires, unlike the Idaho statute, to

10  determine "[w]hether the sentence of death is excessive, considering both the crime and the

11  defendant."  See NRS § 177.055(2)(c-e).  The court in Beam further relied on the fact that, under

12  Idaho's mandatory review statute, "the state court must consider possible errors in sentencing that

13  are not raised by the defendant."  Id. (citing State v. Osborn, 102 Idaho 405, 411, 631 P.2d 187, 193

14  (Idaho 1981)).  Again, the Nevada Supreme Court has an identical duty.  See, e.g., Geary v. State,

15  110 Nev. 261, 268-69, 871 P.2d 927, 932 (1994) ("We are required in all cases to review carefully

16  the imposition of death, even where applicable points on appeal are not raised by defense counsel.").

17         The Ninth Circuit cited to Nev. Rev. Stat. § 177.055 when distinguishing between states that

18  have mandatory review statutes similar to Idaho's "in which the state supreme court is required to

19  examine the record on its own initiative in order to determine whether certain specified types of

20  errors occurred during sentencing," and those that do not.  Beam, 3 F.3d at 1306.  Nevada case law

21  makes clear that Nevada's mandatory review statute falls into the former category – in addition to

22  the cases set forth above, the Nevada Supreme Court has addressed perceived errors of constitutional

23  law based on its understanding of its obligations under the mandatory review statute in a wide variety

24  of factual contexts. See, e.g., Archanian v. State, 122 Nev. 1019, 1039-40, 145 P.3d 1008, 1022-23

25  (2006) (striking aggravating circumstance sua sponte on basis of prior case law finding continued

26  application of the aggravating circumstance impermissible under state and federal constitutions);

27  Thomas v. State, 122 Nev. 1361, 1375, 148 P.3d 727, 737 (2006) (considering impact of victim

28  impact testimony); Blake v. State, 121 Nev. 779, 797, 121 P.3d 567, 579 (2005) (considering impact

45

1   of improper prosecutorial misconduct); Butler v. State, 120 Nev. 879, 900, 102 P.3d 71, 85 (2004)

2   (considering effect of improper prosecutorial argument and "any other error" in determining whether

3   sentence was imposed under the influence of passion, prejudice or any arbitrary factor); Kaczmarek

4   v. State, 120 Nev. 314, 340-41, 91 P.3d 16, 34-35 (2004) (victim impact evidence); Hollaway, 116

5   Nev. at 742-43, 6 P.3d at 994-95 (remanding for new penalty hearing where court determined, under

6   mandatory review statute, that instruction and argument prevented the jury from considering and

7   giving effect to mitigating evidence in violation of United States Supreme Court precedent and

8   where the jury instructions on the use of "other matter" evidence "undermine[d] the constitutional

9   narrowing process which the enumeration and weighing of the specific aggravators is designed to

10  implement"); Jones v. State, 113 Nev. 454, 473-74, 937 P.2d 55, 68 (1997) ("Although Jones does

11  not address this issue on appeal, NRS 177.055(2) requires this court to examine the record and

12  determine whether the evidence supports the finding of the aggravating circumstances.").[16]

13       The State's continued reliance on Sechrest, a district court case, is misplaced in face of the

14  controlling authority set forth in Beam.  While the Sechrest court attempted to address Beam by

15  suggesting that the "entire discussion in Beam of the 'exhaustion' effect of the state mandatory

16  review statute is obiter dicta," because the Ninth Circuit found the petitioner's claim "fairly

17  presented" on other grounds, see 943 F. Supp. at 1249, this basis for ignoring Beam's mandate was

18  foreclosed by the Ninth Circuit's subsequent decision in Hoffman v. Arave, 236 F.3d 523 (9th Cir.

19  2001), in which the Ninth Circuit reaffirmed Beam and squarely held that because "the Idaho death

20  penalty statute requires mandatory review of the entire record for sentencing errors . . . [a]ll

21  sentencing errors are treated as implicitly raised, removing the bar of procedural default." See

22  Hoffman, 236 F.3d at 536.  More recently, in Comer v. Schriro, 463 F.3d 934 (9th Cir. 2006), the

23

24  [16]The Nevada Supreme Court's long-standing practice of considering myriad federal constitutional
    errors as part of its mandatory review is consistent with the legislative history of the statute.  Therein,
25  former Deputy Attorney General Gino D. Mancetti represented that Nev. Rev. Stat. § 177.055 was
    essential to ensuring the constitutionality of the Nevada death penalty statute under federal law. See,
26  e.g., Hearing on S.B. 220 Before the S. Comm. on the Judiciary, 59th Cong. 1 (Nev. Feb. 23, 1977),
    at 2 ("In researching the most recent rules promulgated by the Supreme Court on this, it is clear that
27  they are going to require some clear directions for the jury; some limited number of aggravating
    circumstances. . . . One of the keys the U. S. Supreme Court uses in upholding these cases is a
28  statewide appellate review; the ability of the state Supreme Court to review all of its district courts
    using the same standard and trying to give the same application statewide.").

1    Ninth Circuit extended its holding in Beam to apply to the Arizona mandatory review statute, again

2    reaffirming that "where a state court is required to review the record for federal constitutional error,

3    the state court's determination that there was no error constitutes sufficient state consideration of a

4    constitutional claim, which impliedly exhausts that claim in a way that is not independent of federal

5    law." Id. at 953. Finally, the author of the Sechrest opinion has subsequently recognized that "on

6    . . . direct appeal, the Nevada Supreme Court [is] automatically charged with reviewing the record

7    to determine, among other things, '[w]hether the evidence supports the finding of an aggravating

8    circumstance or circumstances.'" Rogers v. McDaniel, Case No. 02-CV-0342-ECR-RAM, 2011 U.S.

9    Dist. LEXIS 74029, at *70 (D. Nev. July 8, 2011) (quoting Nev. Rev. Stat. 177.055(2)(c); second

10   alteration in original). On that basis, the federal court reviewed the merits the petitioner's claim of

11   ineffective assistance of counsel for failing to challenge certain evidence presented in aggravation,

12   and "based upon the transcript of the penalty phase of the trial and the exhibits introduced in the

13   penalty phase of the trial," granted relief. Id. at *89-*90. Accordingly, whatever weight might have

14   been accorded Sechrest at the time it was issued in 1996 is gone due to binding Circuit authority.

15   In turn, Claim Two(Y), which focuses on evidence of prejudicial comments made by the trial court,

16   which were apparent on the face of the record, was fully exhausted on direct appeal.

17          In the alternative, Mr. Sherman is excused from any procedural default of this claim because

18   appellate counsel forwent a meritorious claim against the known wishes of the client. David

19   Schieck, who represented Mr. Sherman at trial and on direct appeal, confirmed that Mr. Sherman

20   specifically communicated to him that Mr. Sherman wanted to raise the issue on direct appeal.

21   Docket No. 67 (Ex. 7.18, Declaration of David Schieck ("Schieck Decl.") ¶ 20); see also Docket No.

22   133-1 (Ex. 123, 11/17/00 HT at 34-35 (Mr. Sherman stating that he sent letters to counsel to appeal

23   the issue of the judge's prejudicial comments)). Mr. Schieck further revealed to undersigned counsel

24   that the only reason he did not raise the issue of the trial court's comments on direct appeal was his

25   belief that the issue was not preserved for appeal due to his failure to object to those comments while

26   acting as trial counsel. Schieck Decl. ¶ 20. Mr. Schieck's belief that his failure to object to the trial

27   court's comments at trial prevented the Nevada Supreme Court from considering the claim on direct

28   appeal was wrong as a matter of clearly established state law, see Parodi v. Washoe Med. Ctr., 111

47

Nev. 365, 367-69, 892 P.2d 588 (1995) (remanding for new trial based on judicial misconduct during voir dire to which appellants did not object to at trial), in effect conceding ineffective assistance of appellate counsel. Appellate counsel's refusal to raise a meritorious claim on Mr. Sherman's behalf constituted a breach of the agency relationship between attorney and client, thereby making it unreasonable to now impose a procedural bar against Mr. Sherman. See, e.g., Manning v. Foster, 224 F.3d 1129, 1134-35 (9th Cir. 2000) (recognizing that an attorney's failure to act, caused by his own self-interest, was considered an external factor which could not be imputed to a petitioner); see also Coleman v. Thompson, 501 U.S. 722, 752-54 (1991) (relying on "well-settled principles of agency law" to determine whether attorney error was attributable to client); cf. Holland v. Florida, 130 S. Ct. 2549, 2568 (2010) (Alito, J., concurring in part and concurring in the judgment) ("Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word.").

### iii.   Remaining Portions of Claim Two

The State presents no specific argument regarding the remainder of Claim Two, in which Mr. Sherman alleged numerous errors and omissions by trial counsel that, individually and collectively, deprived Mr. Sherman of his federal constitutional right to effective assistance of trial counsel, instead electing to rely on the Nevada Supreme Court's implicit determination that this claim was procedurally defaulted when raised in Mr. Sherman's second-state court petition. See MTD at 21. However, the Nevada Supreme Court's finding of a purported procedural default with respect to this claim, fails for the following reasons:

First, the Ninth Circuit, following Supreme Court precedent, has repeatedly recognized that a "state procedural rule is not adequate to bar federal review if that 'state procedural rule frustrates the exercise of a federal right.'" Martinez v. Schriro, 623 F.3d 731, 742 (9th Cir. 2010) (quoting Hoffman v. Arave, 236 F.3d 523, 531 (9th Cir. 2001), cert. granted, 180 L.Ed. 2d 244 (U.S. 2011); see also Staub v. City of Baxley, 355 U.S. 313, 319-20 (1958); Reece v. Georgia, 350 U.S. 85, 88-90 (1955). As set forth in the following paragraphs, the Nevada Supreme Court's procedural ruling in this case, which failed to vindicate Mr. Sherman's state constitutional right to effective assistance of post-conviction counsel, see Crump v. Warden, 113 Nev. 293, 303, 934 P.2d 247, 253 (1997), and

1   implicitly determined that the bulk of Mr. Sherman's federal claims were precluded because of the

2   failure of his first post-conviction counsel to raise them, whether or not he performed effectively –

3   was not adequate to prohibit federal review – because it frustrated the protection of two related

4   federal rights: (a) Mr. Sherman's right to effective assistance of first post-conviction counsel

5   specifically with respect to any ineffective-assistance-of-trial-counsel claim, and (b) Mr. Sherman's

6   underlying right to effective assistance of trial counsel.

7          In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court stated the general rule

8   that "there is no right to counsel in state collateral proceedings," but recognized there may be an

9   exception to this rule when "state collateral review is the first place a prisoner can present a

10  challenge to his conviction." Id. at 755.  Mr. Sherman submits that the facts of his case trigger such

11  an exception under the guidance afforded by the Supreme Court in Douglas v. California, 372 U.S.

12  353 (1963), and Halbert v. Michigan, 545 U.S. 605 (2005).

13         The defendant in Halbert, after being convicted on a plea of nolo contendere, requested that

14  counsel be appointed to represent him in applying for leave to appeal, but the Michigan courts denied

15  that request. 545 U.S. at 609.  The Supreme Court, however, held that the due process and equal

16  protection guarantees of the Fourteenth Amendment required "the appointment of counsel for

17  [Michigan] defendants, convicted on their pleas, who [sought] access to first-tier review" – even

18  though such review was discretionary, rather than of right. Id. at 610.  This holding was based on the

19  Court's conclusion that Douglas provided "the controlling instruction." 545 U.S. at 616-17.  This

20  conclusion in turn was based on two factors: (i) "in determining how to dispose of an application for

21  leave to appeal, Michigan's intermediate appellate court looks to the merits of the claims made in

22  the application"; and (ii) "indigent defendants pursuing first-tier review [i.e., their first available

23  opportunity for review] in the Court of Appeals are generally ill equipped to represent themselves,"

24  in part because they have no prior briefing by counsel of relevant issues to present to the reviewing

25  court. Id. at 617, 618-22.

26         The   holdings   and   rationale   in   Halbert   and   Douglas   clearly   apply   to   the

27  ineffective-assistance-of-trial-counsel claim in this case. With respect to that claim, the "first tier"

28  of review that was available to Mr. Sherman was a state post-conviction relief petition –  because

1   he was not permitted to raise the claim on direct appeal under Nevada law.  See, e.g., Jezdik v. State,

2   121 Nev. 129, 132 & n.5, 110 P.3d 1058, 1060 & n.5 (2005) (reaffirming rule from Feazell v. State,

3   111 Nev. 1446, 1449, 906 P.2d 727, 729 (1995), that claims of ineffective assistance of counsel

4   "may not be raised on direct appeal, unless there has already been an evidentiary hearing").  Indeed,

5   in this case the Nevada Supreme Court expressly found that Mr. Sherman's "[c]laims of ineffective

6   assistance of [trial and appellate] counsel are properly presented in a timely, first post-conviction

7   petition for a writ of habeas corpus because such claims are generally not appropriate for review on

8   direct appeal."  Docket No. 133-19 (Ex. 139, Order of Affirmance at 1).

9        Moreover, the two additional Halbert factors discussed in the preceding paragraph are also

10  satisfied here: (i) In deciding how to dispose of ineffective-assistance-of-trial-counsel claims raised

11  in a first post-conviction proceeding, a Nevada district court "looks to the merits of the claims"; and

12  (ii) defendants pursuing first-tier review of ineffective-assistance-of-trial counsel claims have

13  received no prior assistance of counsel, and otherwise are especially "ill-equipped to represent

14  themselves," with regard to such claims.  Accordingly, Nevada defendants, including Mr. Sherman,

15  have a federal constitutional right to appointed counsel under Douglas and Halbert.  That also means

16  that such petitioners are also entitled to constitutionally effective assistance of counsel on such first-

17  tier review. See Strickland v. Washington, 466 U.S. 668, 684-86 (1984) ("[T]he right to counsel is

18  the right to effective assistance of counsel.").

19       The preceding analysis shows that Mr. Sherman's first recourse to vindicate his federal

20  constitutional right to effective assistance of counsel was to file a state-court petition for relief.  See

21  Jezdik, 121 Nev. at 132 & n.5, 110 P.3d at 1060 & n.2 (2005).  Like the defendants in Douglas and

22  Halbert, Mr. Sherman was ill-equipped to litigate an effective-assistance-of-trial-counsel claim

23  without the assistance of post-conviction counsel – and such assistance is of little use if it is not

24  effective.  The State of Nevada already has recognized as much, by making the appointment of

25  counsel in post-conviction proceedings mandatory in capital cases, and further requiring the effective

26  assistance of such post-conviction counsel. Crump, 113 Nev. at 303, 934 P.2d at 253.  Thus, the

27  Nevada Supreme Court's rejection of Mr. Sherman's present claim of ineffective assistance of trial

28  counsel as procedurally barred because it was raised in an allegedly untimely successive petition

1   frustrated the protection of Mr. Sherman's federal right to effective assistance of trial counsel; and

2   it did so by denying Mr. Sherman's federal right to effective assistance of first-tier-review counsel

3   under Douglas and Halbert.

4       Even if the procedural grounds for the Nevada Supreme Court's decision denying Mr.

5   Sherman review of his claims on the merits had been adequate and independent, there is cause and

6   prejudice to excuse any procedural default because Mr. Sherman can show that his first post-

7   conviction counsel was unconstitutionally ineffective. See Coleman, 501 U.S. at 753-54 ("Attorney

8   error that constitutes ineffective assistance of counsel is cause."). By any measure, the performance

9   of Mr. Sherman's first post-conviction counsel was abysmal – although appointed counsel requested

10  and received funds for the services of an investigator, the supplemental brief in support of the

11  petition did not refer to any material outside the record on direct appeal. See Docket Nos. 132-13 &

12  132-14 (Ex. 116A-B). As set forth in the preceding paragraphs, Mr. Sherman did have a federal right

13  to effective assistance of post-conviction counsel, specifically with respect to his ineffective-

14  assistance-of-trial-counsel claim; accordingly, under Coleman a violation of that right constitutes

15  cause and prejudice for any procedural default of Mr. Sherman's federal claims as a result of his first

16  post-conviction proceedings.[17]

17      Second, as with Claim One, Mr. Sherman can establish cause and prejudice to excuse the

18  alleged procedural default because "the factual or legal basis for a claim was not reasonably available

19  to counsel" at the time of the alleged procedural default. Coleman v. Thompson, 501 U.S. 722, 753

20

21  [17]Mr. Sherman recognizes that the Ninth Circuit considered and rejected a similar argument to that
    presented here in Martinez, see 623 F.3d at 739-43, but its conclusion has been called into question

22  by the Supreme Court's subsequent grant of certiorari in that case, see Case No. 10-1001 (U.S.), and
    in Maples v. Thomas, Case No. 10-0063 (U.S.), as well as the High Court's continuing review of

23  petitions raising similar issues, see, e.g., Smith v. Bell, Case No. 10-8629 (U.S.); Cook v. Arizona,
    Case No. 10-9742 (U.S.) (granting stay of execution pending disposition of petition for writ of

24  certiorari); Foster v. Texas, Case No. 11-6427 (U.S.) (same). At the very least, in light of the federal
    district courts' long-recognized power to stay proceedings before it in the interest of "economy and

25  time for itself, for counsel, and for litigants," see Landis v. North American Co., 299 U.S. 248, 254
    (1936), this Court should not take action against Mr. Sherman's interests on the grounds that the

26  claims raised in his Second Amended Petition are procedurally defaulted until this fundamental issue
    is decided by the Supreme Court. See, e.g., Bechtel Corp. v. Local 215 Laborers' Int'l Union of

27  North America, 544 F.2d 1207, 1215 (3rd Cir. 1976) (recognizing that "a court may hold one lawsuit
    in abeyance to abide the outcome of another which may substantially affect it or be dispositive of

28  the issues"); cf. Lawrence v. Florida, 549 U.S. 327, 335 (2007) ("[A] district court concerned about
    duplicative work can stay the habeas application until this Court resolves the case.").

1   (1991) (internal quotation marks omitted).  Claim Two includes allegations based on materials

2   wrongfully withheld by the State from each of Mr. Sherman's counsel, in violation of <u>Brady</u>.  <u>See,</u>

3   <u>e.g.</u>, Second Amended Petition at 94, 138-59.  The State's withholding of these materials constitutes

4   cause to overcome any alleged procedural default.  <u>See, e.g.</u>, <u>Banks v. Dretke</u>, 540 U.S. 668, 691-98

5   (2004); <u>Strickler v. Greene</u>, 527 U.S. 263, 283-90 (1999); <u>cf.</u> <u>Hasan v. Galaza</u>, 254 F.3d 1150, 1153

6   (9th Cir. 2001) (finding claim of ineffective assistance of counsel timely where petitioner could not

7   have discovered through the exercise of reasonable diligence evidence that he was prejudiced by trial

8   counsel's deficient performance).

9                                  **iv.    Claim Three**

10          The State asserts that Claim Three, which alleges that the State failed to disclose exculpatory

11   and impeachment evidence in violation of its obligations under the state and federal constitutions,

12   is unexhausted, <u>see</u> MTD at 14, and suggests, without specific argument, that it is also procedurally

13   defaulted, <u>see</u> <u>id.</u> at 20-21 (claiming that the Nevada Supreme Court did not consider on the merits

14   any of the claims in his state exhaustion petition).

15          The State's exhaustion argument turns on Mr. Sherman's alleged failure in his state-court

16   petition to identify which portion of Claim Two, regarding Mr. Sherman's claim of ineffective

17   assistance of counsel, he intended to incorporate by reference into Claim Three.  <u>See</u> <u>id.</u> at 14.  This

18   argument elevates form over substance – the State does not dispute that in every other respect the

19   factual allegations contained in the state-court petition in support of his <u>Brady</u> claim are

20   substantively identical to those contained in his Second Amended Petition, as are the related

21   allegations contained in his ineffective assistance of counsel claim.  The State also apparently agrees,

22   as it must, that the legal theories underlying Claim Three are the same in each of the petitions.

23   Finally, the State says nothing about the free-standing cumulative error claim raised in Mr.

24   Sherman's opening brief, which exhausts his claims despite any technical deficiencies regarding

25   incorporation by reference in Claim Three.  Docket No. 139-19 (Ex. 196C, Appellant's Opening

26   Brief at 58).  As such, there can be no disagreement that <u>all</u> the facts and <u>all</u> the law were before the

27   state court, plainly satisfying the exhaustion requirement.

28          To the extent the State feigns confusion over which additional allegations Mr. Sherman

1    intended to incorporate into Claim Three of the state-court petition, its position is belied by the very

2    next paragraph in its brief, where it readily connects the dots between Mr. Sherman's allegations in

3    Claim Three regarding the State's non-disclosure of benefits received by Michael Placencia, with

4    similar allegations contained in Claim Two, see MTD at 14, and by the Nevada Supreme Court's

5    opinion denying Mr. Sherman relief, in which it addressed Mr. Sherman's allegations regarding Mr.

6    Placencia on the merits before deciding that Mr. Sherman had not established sufficient prejudice

7    to overcome the supposed procedural default, see Docket No. 140-11 (Ex. 205, Order of Affirmance

8    at 4).   Further, even assuming confusion over the intent of the incorporation by reference, this

9    supposedly new incorporation of facts and theories into Mr. Sherman's Second Amended Petition

10   still does not render the claim unexhausted.   The facts pleaded in each of the two claims allege the

11   same facts regarding the State's non-disclosure of benefits received by Mr. Placencia, in support of

12   two separate legal theories of relief, and therefore do not "fundamentally alter the legal claim already

13   considered by the state courts." Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999) (internal

14   quotation marks omitted).

15        Finally, to the extent the State purports to assert that Claim Three is procedurally defaulted,

16   this argument necessarily fails because the Nevada Supreme Court's denial of this claim was not

17   "independent" of federal law, because its analysis of "cause and prejudice" necessarily dovetails with

18   the merits of the claim. See, e.g., Cooper v. Neven, 641 F.3d 322, 332-33 (9th Cir. 2011).  As the

19   Nevada Supreme Court has explained, its cause and prejudice analysis "parallel[s] two of the three

20   Brady violation components.  If [a petitioner] proves that the state withheld evidence, that will

21   constitute cause for not presenting his claim earlier.  If he proves that the withheld evidence was

22   material under Brady, that will establish actual prejudice." Mazzan v. Warden, 116 Nev. 48, 67, 993

23   P.2d 25, 37 (2000) (citing Strickler v. Greene, 527 U.S. 263, 283 (1999)); see also Cooper, 641 F.3d

24   at 322-23 (quoting identical analysis in unpublished opinion from petitioner's state proceeding).

25

26        In this case, the Nevada Supreme Court's analysis was no different, holding with respect to

27   various pieces of withheld evidence that either that it was "not material in that its absence did not

28   cause prejudice," Docket No. 140-11 (Order of Affirmance at 3), or that "[a]though the State

1   improperly withheld information . . . , the disclosure of that information would not have altered the

2   outcome of the penalty hearing," id. at 4, or that "[e]ven assuming any improper withholding of

3   evidence in this regard, Sherman failed to demonstrate prejudice . . . ," id. at 5.  In so holding, the

4   Nevada Supreme Court found or assumed the State improperly withheld evidence, which satisfied

5   the "cause" requirement, but also found that the withheld evidence was insufficient to establish

6   "prejudice."  Under Nevada law, these conclusions necessarily flowed from its understanding of

7   federal law, specifically Brady, and are not sufficient to bar federal review of his claim now.  The

8   State's motion does not attempt to identify any other procedural ruling that is separate and

9   independent of the Nevada Supreme Court's disposition of the claim on the merits.

10          **v.    Claim Four**

11          In its motion, the State concedes that Claim Four, regarding the systematic exclusion of

12   minorities from the grand jury which indicted Mr. Sherman, is exhausted, but goes on to suggest that

13   the claim was procedurally defaulted.  See MTD at 20-21 (claiming that the Nevada Supreme Court

14   did not consider on the merits any of the claims in his state exhaustion petition). However, the

15   specific materials cited in support of this claim – proof that the discriminatory process used to select

16   members of the grand jury at the time of Mr. Sherman's indictment included the involvement of the

17   District Attorney's Office in screening potential grand jurors, see Docket No. 103 (Second Amended

18   Petition at 235-36) – were not discoverable through the exercise of reasonable diligence until after

19   Mr. Sherman's trial, see Docket 115-16 (Exs. 9.2-9.4), thereby establishing cause to overcome any

20   alleged procedural default, see Amadeo v. Zant, 486 U.S. 214, 222 (1988) (recognizing that if State's

21   concealment of evidence regarding irregularities in grand jury selection process "was the reason for

22   the failure of petitioner's lawyers to raise the jury challenge in the trial court, then petitioner

23   established ample cause to excuse his procedural default").[18]

24          **vi.    Claim Five**

25          The State argues that Claim Five, regarding prejudicial comments made by the trial court to

26  _____

27   [18]At a minimum, Mr. Sherman is entitled to discovery and an evidentiary hearing on whether he can
     establish cause and prejudice on this claim.  See Amadeo, 486 U.S. at 219-20 (noting with approval
     the lower court's decision to order an evidentiary hearing where the court "found the record

28   insufficiently developed for proper review on the question of cause").

the jury venire, was not exhausted on either direct appeal or in Mr. Sherman's first state habeas proceeding, and to the extent it was not previously exhausted, it is procedurally defaulted. See MTD at 26-27. However, as the State concedes, this claim was raised in Mr. Sherman's first state habeas proceeding, in which counsel directly quoted the same trial court comments regarding the Book of Judges set forth in Mr. Sherman's Second Amended Petition and cited the same controlling Ninth Circuit authority mandating reversal of Mr. Sherman's conviction, Sandoval v. Calderon, 241 F.3d 765 (9th Cir. 2000), as presently asserted by undersigned counsel. See Docket 133-11 (Ex. 132B, Appellant's Opening Brief at 32-37); compare Docket No. 103 (Second Amended Petition at 237-40). Further, contrary to the State's suggestion otherwise, both pleadings also allege that trial counsel rendered ineffective assistance of counsel by failing to object to the trial court's comments and appellate counsel rendered ineffective assistance in failing to raise the claim on direct appeal. See Appellant's Opening Brief at 37; Second Amended Petition at 239. In the first state habeas proceeding, the Nevada Supreme Court rejected both the underlying claim and the corollary claims of ineffective assistance of trial and appellate counsel on the ground that, while the trial court's comments were improper under Calderon, Mr. Sherman did not establish sufficient prejudice. Docket No. 133-19 (Ex. 139, Order of Affirmance at 7-9). The federal constitutional issue was thus squarely addressed, entitling Mr. Sherman to review by this Court. That undersigned counsel added a second instance in which the trial judge injected his personal views on religion into the jury selection process and otherwise cited instances in which the trial judge badgered venirepersons who expressed concerns about the death penalty, does not "fundamentally alter the nature of the legal claim already considered by the state courts," and does not render the claim unexhausted. Vasquez v. Hillery, 474 U.S. 254, 260 (1986); see also Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999) ("additional facts" supporting existence of unconstitutional actions "that differed in number, but not in kind" did not render claim unexhausted, citing Miller v. Estelle, 677 F.2d 1080, 1083 (5th Cir. 1983)); Winston v. Kelly, 592 F.3d 535, 550 (4th Cir. 2010) (evidence that "supports factual allegations for which there is at least some support in the state record" can be considered on federal review).

Moreover, as discussed with respect to Claim Two(Y) above, this claim was factually

1    exhausted in Mr. Sherman's first state post-conviction proceedings when the Nevada Supreme Court

2    undertook to review the entire voir dire transcript in assessing whether Mr. Sherman was prejudiced

3    from the constitutional error, and this Court is likewise obligated to consider the voir dire transcript

4    in addressing this claim.

5            Further, the State asserts that Mr. Sherman's claim that the trial court's conduct during voir

6    dire violated his constitutional rights to equal protection and a reliable sentence are unexhausted,

7    while acknowledging that Mr. Sherman raised this claim under the Eighth and Fourteenth

8    Amendments in his prior state court proceedings. The federal constitutional right to a reliable

9    sentence, however, falls under the penumbra of guarantees contained in the Eighth Amendment, as

10   the Nevada Supreme Court understands, see, e.g., Valdez v. State, 124 Nev. __, __, 196 P.3d 465,

11   484 (2008) (Gibbons, J., dissenting), while the Fourteenth Amendment, by its explicit text,

12   encompasses the constitutional right to equal protection, see U.S. Const. Amend. XIV, § 1.

13   Accordingly, these theories of relief were exhausted before the Nevada Supreme Court.

14           Finally, as discussed with respect to Claim Two(Y) above, this claim was exhausted on direct

15   appeal, and is therefore not procedurally defaulted, under Nev. Rev. Stat. § 177.055(2), which

16   requires the Nevada Supreme Court to review each death sentence and consider, inter alia, whether

17   "the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor,"

18   including whether the conduct of the underlying trial included error which amounts to a violation

19   of the Eighth Amendment. See, e.g., Thomas v. State, 122 Nev. 1361, 1375, 148 P.3d 727, 737

20   (2006) (considering impact of victim impact testimony); Kaczmarek v. State, 120 Nev. 314, 340-41,

21   91 P.3d 16, 34-35 (2004) (victim impact evidence); Bridges v. State, 116 Nev. 752, 767, 6 P.3d

22   1000, 1011 (2000) (recognizing that mandatory review statute includes consideration of prosecutorial

23   argument that misstates the law, because such argument may "result[] in the arbitrary imposition of

24   the death penalty"); Jones v. State, 101 Nev. 573, 582-83, 707 P.2d 1128, 1134-35 (1985) (citing

25   Caldwell v. Mississippi, 472 U.S. 320, 343 (1985) (O'Connor, J., concurring), for the proposition

26   that misleading prosecutorial argument may create an unacceptable risk of arbitrary or capricious

27   infliction of the death penalty).; Hollaway v. State, 116 Nev. 732, 742-43, 6 P.3d 987, 994-95 (2000)

28   (remanding for new penalty hearing where court determined, under mandatory review statute, that

1    instruction and argument prevented the jury from considering and giving effect to mitigating

2    evidence in violation of United States Supreme Court precedent and where the jury instructions on

3    the use of "other matter" evidence "undermine[d] the constitutional narrowing process which the

4    enumeration and weighing of the specific aggravators is designed to implement");

5         Also as with Claim Two(Y), Mr. Sherman is excused from any procedural default of this

6    claim because appellate counsel forwent a meritorious claim against the known wishes of Mr.

7    Sherman. See Docket No. 67 (Ex. 7.18, Declaration of David Schieck (October 25, 2005) ¶ 20); see

8    also Docket No. 133-1 (Ex. 123, 11/17/00 HT at 34-35 (Mr. Sherman stating that he sent letters to

9    counsel to appeal the issue of the judge's prejudicial comments)).  Appellate counsel's refusal to

10   raise a meritorious claim on his behalf constituted a breach of the agency relationship between

11   attorney and client, thereby making it unreasonable to now impose a procedural bar against Mr.

12   Sherman.  See, e.g., Manning v. Foster, 224 F.3d 1129, 1134-35 (9th Cir. 2000) (recognizing that

13   an attorney's failure to act, caused by his own self-interest, was considered an external factor which

14   could not be imputed to a petitioner); see also Coleman v. Thompson, 501 U.S. 722, 752-54 (1991)

15   (relying on "well-settled principles of agency law" to determine whether attorney error was

16   attributable to client).

17        Finally, as explained in detail in the discussion in Claim Two(Y), Mr. Sherman's claim of

18   judicial bias cannot be procedurally barred because state law does not allow a party to waive a claim

19   of actual bias by the trial court.  See Section III.D.2, supra.

20                    **vii.    Claim Six**

21        The State argues that Claim Six, regarding the unconstitutional use of a stun belt on Mr.

22   Sherman during his trial, is unexhausted because it contains allegations not found in the state-court

23   exhaustion petition, see MTD at 14-15, and suggests that the claim was procedurally defaulted, see

24   id. at 20-21 (claiming that the Nevada Supreme Court did not consider on the merits any of the

25   claims in his state exhaustion petition).  With respect to its exhaustion argument, the State's apparent

26   focus on minor variations between the claim as presented to the state and federal courts is, again,

27   contrary to law, which holds that additional or different facts which do not "fundamentally alter the

28   nature of the legal claim already considered by the state courts," does not render a claim

1   unexhausted.  Vasquez v. Hillery, 474 U.S. 254, 260 (1986); see also Weaver v. Thompson, 197 F.3d

2   359, 364 (9th Cir. 1999) ("additional facts" supporting existence of unconstitutional actions "that

3   differed in number, but not in kind" did not render claim unexhausted, citing Miller v. Estelle, 677

4   F.2d 1080, 1083 (5th Cir. 1983)); Winston v. Kelly, 592 F.3d 535, 550 (4th Cir. 2010) (evidence that

5   "supports factual allegations for which there is at least some support in the state record" can be

6   considered on federal review).  Accordingly, Claim Six is exhausted.[19]

7                           **viii.    Claim Seven**

8           The State asserts that Mr. Sherman never "federalized" the portion of Claim Seven regarding

9   the State's introduction of prior bad act evidence, rendering the claim unexhausted.  See MTD at 27-

10  28.  However, in support of this claim on direct appeal, Mr. Sherman relied heavily on Walker v.

11  Fogliani, 83 Nev. 154, 425 P.2d 794 (1967), see Docket No. 131-7 (Ex. 92A, Appellant's Opening

12  Brief at 31), a case plainly deciding the issue as a matter of federal constitutional law.

13          In Walker, the Nevada Supreme Court cited Chapman v. California, 386 U.S. 18 (1967), as

14  setting forth the appropriate prejudice standard and in support of its conclusion that the numerous

15  errors complained of "amount to a denial of a fair trial."  Chapman, of course, applies to an alleged

16  denial of federal constitutional rights.  Further, the Nevada Supreme Court decided Walker following

17  remand by the Ninth Circuit ordering it to review various claims of error under federal constitutional

18  standards, see United States ex rel. Walker v. Fogliani, 343 F.2d 43, 48 (9th Cir. 1965) ("[I]t is urged

19  that an accumulation of errors in the state trial proceedings resulted in a trial so substantially unfair

20  as to violate federal requirements of due process. . . .  We remand the cause . . . to afford appellant

21  a reasonable opportunity . . . to apply to the Nevada courts for their reexamination of the . . .

22  deprivation of constitutional rights.").  Accordingly, it is apparent that the Nevada Supreme Court's

23  conclusion that "[r]eference to past criminal history is reversible error," reached by reference to

24  numerous opinions of the United States Supreme Court, see Walker, 83 Nev. at 157, 425 P.2d at 795,

25  is based on federal constitutional principles.

26          In his reply brief, appellate counsel further identified the federal constitutional basis for his

27  ─────────────────

28  [19]This claim is also not procedurally defaulted for the reasons set forth in Section III.D.18, infra.

claim, twice referring to the court's admission of prior bad act evidence and the prosecutor's argument thereon as denying him a right to fair trial and due process of law.  See Docket No. 131-14 (Ex. 97, Appellant's Reply Brief at 10, 12).  By itself, Mr. Sherman's prior reference to Walker in support of this claim on direct appeal was sufficient to appraise the Nevada Supreme Court of the federal nature of his claim, rendering the claim exhausted.  See, e.g., Taylor v. Cain, 545 F.3d 327, 333 (5th Cir. 2008) (claim sufficiently exhausted even though state petition "did not label his claim as a federal constitutional one" where the petitioner cited a passage from a state supreme court case which in turn cited a case finding a violation of the state and federal constitutions); Tart v. Washington, 949 F.2d 490, 494 (1st Cir. 1991) ("Generally, citation to a state decision whose holding is prominently predicated on federal precedent is sufficient.").  Mr. Sherman's further references to "due process" and a "fair trial" cement that conclusion.  See, e.g., Turner v. Louisiana, 379 U.S. 466, 470 n.7 (1965); Beam v. Paskett, 3 F.3d 1301, 1305 (9th Cir. 1993) (state court challenge of penalty statute as "unconstitutionally arbitrary" necessarily called to mind Eighth Amendment prohibition of arbitrary aggravating circumstances).

On the other hand, the State concedes that the portion of Claim Seven dealing with the admission of improper victim impact testimony is exhausted as to its legal basis, but argues that it is factually unexhausted.  MTD at 28.  However, Mr. Sherman's presentation of the same claim in his Second Amended Petition, with the addition of some factual allegations which do not "fundamentally alter the nature of the legal claim already considered by the state courts," does not now render his claim unexhausted.  Vasquez, 474 U.S. at 260; Weaver, 197 F.3d at 364; Winston, 592 F.3d at 550.  Further, the Nevada Supreme Court has considered the impact of improper victim impact testimony as part of its mandatory review of death cases under Nev. Rev. Stat. § 177.055(2).  See Thomas v. State, 122 Nev. 1361, 1375, 148 P.3d 727, 737 (2006); Kaczmarek v. State, 120 Nev. 314, 340-41, 91 P.3d 16, 34-35 (2004). Accordingly, Claim Seven was fully exhausted in all respects on direct appeal.

### ix.    Claim Eight

The State asserts that Claims Eight(A) and Eight(B), regarding the State's failure to disclose material exculpatory and impeachment evidence on direct appeal, including facts undermining the

State's theory regarding Mr. Sherman's alleged involvement in a prior Idaho murder, is unexhausted because it was not raised on direct appeal.  This argument fails for the same reasons set forth in Section III.D.4, supra, regarding Mr. Sherman's Brady claim – Mr. Sherman could not raise this claim on direct appeal because at that time, as now, the State was withholding the relevant documents in the face of its constitutional disclosure obligations.  The same holds for much of Claims Eight(D) and Eight(E), in which Mr. Sherman alleged that the State committed misconduct by eliciting and arguing testimony in support of its revenge theory and regarding Mr. Sherman's prior murder conviction and purported attempt to escape prison, while it held in its actual or constructive possession materials that would have undercut its position.  Mr. Sherman presented facts in support of this claim to the state court in his exhaustion petition as they became available through the exercise of reasonable diligence.  As such, he has established cause to excuse any procedural default and is entitled to a review on the merits.

Further with respect to Claim Eight(D), Mr. Sherman raised a similar claim on direct appeal, focusing on the prosecution's description of Mr. Sherman as a "creep" during the guilt phase and on additional improper argument during the penalty phase.  See Docket Nos. 131-7, 131-8 (Ex. 92A-B, Appellant's Opening Brief at 32-33, 58-60).  In its subsequent opinion, the Nevada Supreme agreed that this argument constituted prosecutorial misconduct and proceeded to conduct "a thorough review of the record" before determining, erroneously, that the guilt-phase misconduct did not prejudice Mr. Sherman. See Sherman v. State, 114 Nev. 998, 1010-11, 1015-16, 965 P.2d 903, 912, 914-15 (1998).  In his amended federal petitions and in his state exhaustion petition, Mr. Sherman expanded on these allegations, citing numerous additional instances in which the prosecutor appealed to passion and prejudice – each of which are apparent on the face of the record "thoroughly reviewed" by the Nevada Supreme Court, thereby exhausting the claim.  Further, the allegations made on direct appeal were sufficient to put the State on notice of the claim in the amended petition because they rely on the same core of operative facts, namely, multiple instances of prosecutorial

1  misconduct in argument.[20]

2       This claim was further exhausted on direct appeal under Nev. Rev. Stat. § 177.055(2), which

3  requires the Nevada Supreme Court to review each death sentence and consider, inter alia, whether

4  "the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor,"

5  including prosecutorial misconduct in argument, see, e.g., Blake v. State, 121 Nev. 779, 797, 121

6  P.3d 567, 579 (2005); Butler v. State, 120 Nev. 879, 900, 102 P.3d 71, 85 (2004) (considering effect

7  of improper prosecutorial argument under NRS 177.055 and determining those errors, combined

8  with others, deprived appellant of a fair hearing); Hollaway v. State, 116 Nev. 732, 742-43, 6 P.3d

9  987, 994-95 (2000); Bridges v. State, 116 Nev. 752, 767, 6 P.3d 1000, 1011 (2000) (recognizing that

10  mandatory review statute includes consideration of prosecutorial argument that misstates the law,

11  because such argument may "result[] in the arbitrary imposition of the death penalty").

12         **x.**    **Claim Nine**

13       In its motion, the State concedes that Claim Nine, regarding the trial court's failure to

14  properly instruct the jury concerning the elements of the capital offense, is exhausted, but goes on

15  to suggest that the claim was procedurally defaulted.  See MTD at 20-21 (claiming that the Nevada

16  Supreme Court did not consider on the merits any of the claims in his state exhaustion petition).  Mr.

17  Sherman presented this claim regarding the faulty instructions, which relate to the use of the

18  constitutionally deficient instructions on premeditation and deliberation and implied malice, on

19  direct appeal, see Docket No. 131-7 (Ex. 92B, Appellant's Opening Brief at 35-43), which the

20  Nevada Supreme Court rejected, see Sherman v. State, 114 Nev. 998, 1017 n.5, 965 P.2d 903, 916

21  _____

22  [20]Further, the State argues that Mr. Sherman is required to exhaust his claim that the numerous
instances of prosecutorial misconduct cumulatively require relief. He is under no obligation, because

23  the law requires both the Nevada Supreme Court, and this Court, to consider the cumulative impact
of each instance of prosecutorial misconduct. See., e.g., Berger v. United States, 295 U.S. 78, 84-89

24  (1935); Kyles v. Whitley, 514 U.S. 419, 440 (1995) (impact of material wrongfully withheld by the
State must be considered cumulatively, not item-by-item); Fields v. Woodford, 309 F.3d 1095, 1109

25  (9th Cir. 2002) (considering cumulative impact of numerous instances of alleged prosecutorial
misconduct). Having presented a valid claim of prosecutorial misconduct to the Nevada Supreme

26  Court, Mr. Sherman is not further required to exhaust a claim that the state court misapplied federal
constitutional law in resolving it. If that were the case, no claim of federal constitutional error would

27  ever be ripe for federal review. As a point of fact, however, Mr. Sherman informed the Nevada
Supreme Court that its order affirming denial of relief from his state-court exhaustion petition plainly

28  misapplied controlling federal law by failing to consider the cumulative impact of non-disclosed
material. See Docket No. 140-12 (Motion for Reconsideration at 4-6).

1   n.5 (1998).  By itself, Mr. Sherman's presentation of this claim to the Nevada Supreme Court on

2   direct appeal renders it exhausted and not procedurally barred.

3          Nevertheless, Mr. Sherman re-raised this claim in his state-court exhaustion petition filed in

4   2005.  See Docket No. 134-10 (Ex. 141J, Petition for Writ of Habeas Corpus (Post-Conviction) at

5   320-24)).  On September 11, 2007, one month after the state district court orally denied Mr.

6   Sherman's petition, the Ninth Circuit acknowledged that the substance of Mr. Sherman's claim was

7   meritorious and that the Nevada Supreme Court's failure to require that the jury be instructed on

8   each element of the offense was contrary to clearly established law.  See Polk v. Sandoval, 503 F.3d

9   903, 910-11 (9th Cir. 2007).  Mr. Sherman drew the Nevada Supreme Court's attention to that case

10  at his very next opportunity.  Docket No. 139-19 (Ex. 196C, Appellant's Opening Brief at 72-73).

11  Polk constitutes an intervening change in the law that shows that the claim previously raised by Mr.

12  Sherman has merit.

13         Consequently, any purported default ruling in Mr. Sherman's case was not adequate to bar

14  federal review of this claim.  As a matter of clearly established state law, Mr. Sherman could show

15  good cause to overcome any purported state procedural default rule when a decision by a federal

16  court holds that a prior ruling of the state court was in error.  See Lozada v. State, 110 Nev. 349,

17  357-58, 871 P.2d 944, 949 (1994), modified by Evans v. State, 117 Nev. 609, 643-44, 28 P.3d 498,

18  521 (2001).  As applied to claims challenging the Kazalyn instruction, the Nevada Supreme Court

19  has held, in unpublished cases, that petitioners have one year from the date of the Ninth Circuit's

20  decision in Polk to file a timely claim: "Because it is the substantive holdings of Polk and Byford

21  that appellant seeks to apply in this case, it is those cases that provide the marker for filing timely

22  claims."  Doleman v. State, Case No. 56399, 2011 WL 221912, at *1 (Nev. Jan. 13, 2011).[21]  For

23

24  [21]Accord Green v. Palmer, Case No. 55786, 2010 WL 5239191, at *1 (Nev. Dec. 10, 2010); Herrera
    v. State, Case Nos. 55708, 55996, 2010 WL 4537128, at *1 (Nev. Nov. 8, 2010); Jones v. State,
25  Case No. 55832, 2010 WL 3860441, at *1 n.4 (Nev. Sep. 29, 2010); Guerrero v. State, Case Nos.
    53441, 53839, 53943, 2010 WL 3554312, at *2 (Nev. Sep. 10, 2010); Klein v. State, Case No.
26  54438, 2010 WL 3502815, at *1 (Nev. July 15, 2010); Jamison v. State, Case No. 55088, 2010 WL
    3488529, at *1 (Nev. June 10, 2010); Ducksworth v. State, Case No. 55445, 2010 WL 3315877, at
27  *1 (Nev. June 9, 2010); Tinch v. State, Case No. 54562, 2010 WL 3502705, at *1 (Nev. June 9,
    2010); Carpino v. State, Case No. 54500, 2010 WL 3502752, at *1 (Nev. June 9, 2010); Burriola
28  v. State, Case No. 55364, 2010 WL 3492123, at *2 (Nev. May 7, 2010).

petitioners who filed claims challenging the premeditation instruction more than one year after the decision in <u>Polk</u>, the Nevada Supreme Court has held that those petitioners could not establish good cause for the delay. However, for those petitioners who filed their claims within one year of the <u>Polk</u> decision (<u>i.e.</u>, those who filed on or before September 11, 2008), the court adjudicated those claims on the merits to determine whether the petitioners could demonstrate prejudice.[22]

Under these cases, Mr. Sherman was entitled to a merits review from the state court on this claim, having pleaded it on direct appeal and again in his state-court petition filed in 2005, even without the benefit of the <u>Polk</u> decision. He then specifically cited to <u>Polk</u> in support of this claim at the earliest opportunity, in the opening brief challenging the denial of his state-court petition which was well within the one-year window set by the Nevada Supreme Court to have related claims heard on the merits. Nevertheless, the Nevada Supreme Court purported to find all claims in the petition, including Mr. Sherman's claim under <u>Polk</u>, procedurally barred, albeit without even mentioning <u>Polk</u> or identifying this claim in its order. <u>See generally</u> Docket No. 133-19 (Ex. 139, Order of Affirmance). Under these circumstances – where the Nevada Supreme Court has held that habeas petitioner can demonstrate good cause to overcome the default rules if there is an intervening decision from the federal court, where in eleven cases it has expressly recognized that petitioners could file timely claims challenging the <u>Kazalyn</u> instruction under <u>Polk</u> if filed within one year of the federal decision, and where it has reviewed the claim on the merits in five cases filed within that one year – any purported default ruling in Mr. Sherman's case is not adequate to bar federal review of his claim.

### xi.    Claim Eleven

The State asserts that Claim Eleven is unexhausted, <u>see</u> MTD at 15-17, and is also

---

[22]<u>See Winfrey v. State</u>, Case No. 55070, 2011 WL 222250, at *1 (Nev. Jan. 13, 2011) (petition filed on September 10, 2008); <u>Nellums v. State</u>, Case No. 53407, 2011 WL 486606, at *1 (Nev. Feb. 9, 2011) (petition filed on May 2, 2008; claim rejected on the merits on the ground that the petitioner received an instruction under Byford); <u>Witter v. State</u>, Case No. 52964, 2010 WL 4673531, at *1-*2 (Nev. Nov. 17, 2010) (petition filed on April 28, 2008; claim rejected on the merits on the grounds of lack of prejudice and law of the case doctrine); <u>Gaston v. State</u>, Case No. 52768, 2009 WL 3711916, at *1-*2 (Nev. Nov. 3, 2009) (petition filed on August 29, 2008; rejecting claim because petitioner "did not receive the flawed instruction from <u>Kazalyn</u>"); <u>Berry v. State</u>, Case No. 52905, 2009 WL 3192937, at *1-*2 (Nev. Sep. 23, 2009) (petition filed September 17, 2008; claim rejected on the grounds that petitioner could not demonstrate prejudice).

1   procedurally barred unless Mr. Sherman "can show that these claims were previously unexhausted

2   [sic] on direct appeal or in the first state habeas petition," see id. at 21; see also id. at 29-30.  The

3   State's position is meritless.  Mr. Sherman did, in fact, exhaust this claim in his first state-court

4   petition, see Docket No. 132-14 (Ex. 116B, Supplemental Brief at 37-38), and the Nevada Supreme

5   Court plainly found "good cause" for Mr. Sherman to raise this claim anew in his second state-court

6   petition on the basis of an intervening change in law.  See Docket No. 140-11 (Ex. 205, Order of

7   Affirmance at 6-7).  The court then proceeded to entertain the claim on the merits, affirming the

8   district court's ruling striking of two statutory aggravating circumstances before erroneously

9   determining that the jury's consideration of the unconstitutional circumstances was harmless.  See

10  id. at 7-9.  Accordingly, this claim is neither unexhausted nor procedurally defaulted.

11      The State argues that this claim is unexhausted because Mr. Sherman's "focus in the second-

12  amended petition was the Nevada Supreme Court's errors in failing to conduct a proper federal

13  harmless error analysis," while conceding that Mr. Sherman "raised similar federal legal theories in

14  both the state and federal petitions . . . , and alleged in both courts improper consideration of the

15  aggravating and mitigating circumstances."  See MTD at 17.  This argument is misplaced.  As noted

16  above, the Nevada Supreme Court considered Mr. Sherman's challenge to the two invalid

17  aggravating circumstances on the merits, affirmed the state district court's striking of them, and then

18  purported to re-weigh Mr. Sherman's death sentence by stepping into the shoes of an appellate

19  sentencer.  Mr. Sherman's obligation to exhaust his constitutional claims was discharged at the point

20  that he properly raised his challenge to the underlying aggravating circumstances.  The State's

21  motion fails to cite any authority for its apparent belief that Mr. Sherman was further obligated to

22  provide an instructional guide to the court on how to apply harmless error, and there is no such

23  authority.

24      Controlling Circuit authority holds that Mr. Sherman is under no obligation to lodge a

25  separate complaint against the manner in which the Nevada Supreme Court chooses to address an

26  invalid aggravating circumstance.  In Valerio v. Crawford, 306 F.3d 742, 758-61 (9th Cir. 2002), the

27  court granted penalty phase relief to the petitioner on the grounds that the jury relied upon an invalid

28  aggravating circumstance of depravity of mind.  In its decision, the court held that the Nevada

1   Supreme Court's disposition of the petitioner's claim was in error because the court engaged in

2   appellate fact-finding, and did not provide close appellate scrutiny of the effect of the invalid

3   aggravating circumstance. See id. If the State's argument was right, the arguments upon which the

4   court relied upon in Valerio would have been considered "unexhausted" because the petitioner in

5   that case never protested the manner in which the Nevada Supreme Court addressed the issue of

6   harmless error after narrowing the aggravating circumstance. Valerio shows that Mr. Sherman need

7   only exhaust his underlying constitutional claim. There is no separate requirement that he exhaust

8   the manner in which the court handled his claim in order to demonstrate in federal court that the state

9   court was incorrect.

10      In the alternative, Mr. Sherman's claim that the Nevada Supreme Court violated his federal

11  constitutional rights by performing an entirely new sentencing proceeding after invalidating two of

12  the aggravating circumstances found against him is not procedurally defaulted because the instant

13  proceeding marks the first opportunity to raise this claim. Before this time, the claim was not ripe

14  – simply put, Mr. Sherman was in no position to challenge the Nevada Supreme Court's analysis of

15  the effect of the invalid aggravating circumstances until the court undertook to perform that analysis.

16  Mr. Sherman then proceeded to challenge the court's analysis at the first and only opportunity he had

17  to do so – in his motion for reconsideration of the denial of the petition. See Docket No. 140-12 (Ex.

18  206, Motion for Reconsideration at 7).

19      Finally, Mr. Sherman was under no obligation to complain about the manner in which the

20  Nevada Supreme Court adjudicated his constitutional claim because the state courts do not provide

21  a forum in which to litigate the claim. E.g., Brecheen v. Reynolds, 41 F.3d 1343, 1363-1364 and

22  n. 16 (10th Cir. 1994) (state rule requiring ineffective assistance of counsel claims to be raised on

23  direct appeal inadequate to bar federal review, because impracticable to litigate ineffective assistance

24  claim without development of facts outside appellate record); Ciak v. United States, 59 F.3d 296,

25  303-304 (2nd Cir. 1995); see Hoffman v. Arave, 236 F.3d 523, 531-535 (9th Cir. 2001); cf. 28

26  U.S.C. § 2254(b)(1)(B)(ii). In Nevada, the state courts do not provide a forum to litigate a claim that

27  the Nevada Supreme Court performed constitutionally inadequate appellate review at any time. In

28  Thomas v. State, 120 Nev. 37, 83 P.3d 818, 827 (2004), a capital habeas petitioner, in a timely first

1    habeas corpus proceeding, raised a claim that the Nevada Supreme Court did not perform adequate

2    appellate review, including statutorily mandated review, in the direct appeal of his case.  On appeal

3    from the denial of habeas relief, the Nevada Supreme Court held that this claim was "procedurally

4    barred," and that the petitioner "offer[ed] no cause for failing to raise this claim earlier. . . . "  Id. at

5    827.  The only proceeding "earlier" than the habeas proceeding was the direct appeal itself; and the

6    Nevada Supreme Court did not explain how the petitioner could have raised the claim, or alleged

7    "specific supporting facts," id., in the direct appeal, before the Nevada Supreme Court conducted

8    the review that was the subject of the challenge.  Mr. Sherman's challenge to the manner in which

9    the Nevada Supreme Court adjudicated his constitutional claim therefore does not need to be raised

10   in state court because the state does not provide a forum in which to review those claims.

11                    **xii.    Claim Twelve**

12          In its motion, the State concedes that Claim Twelve, regarding the trial court's failure to

13   instruct the jury regarding its constitutional obligation to find that the statutory aggravating

14   circumstances outweighed the mitigating circumstances beyond a reasonable doubt in order to find

15   Mr. Sherman eligible for the death penalty, is exhausted, but goes on to suggest that the claim was

16   procedurally defaulted.  See MTD at 20-21 (claiming that the Nevada Supreme Court did not

17   consider on the merits any of the claims in his state exhaustion petition).

18          Mr. Sherman, however, can show cause to overcome any state procedural default of his claim

19   based upon intervening changes in the law.  After Mr. Sherman's first state-court petition was denied

20   in 2002, the United States Supreme Court held in Blakely v. Washington, 542 U.S. 296 (2004), that

21   any fact not found in the guilt phase jury instructions and verdict which operates to increase the

22   penalty imposed above the statutory maximum must be submitted to the jury and proven beyond a

23   reasonable doubt. Id. at 301-04. Pursuant to Blakely, Mr. Sherman promptly raised the present claim

24   in state and federal court – i.e., that his death sentence was invalid because his jury was not

25   instructed that it had to find each element of death eligibility, specifically that aggravating

26   circumstances must outweigh mitigation, see Johnson v. State, 118 Nev. 787, 802-03, 59 P.3d 450,

27   460-61 (2002), beyond a reasonable doubt.  An intervening change in the law is considered sufficient

28   as a matter of state and federal law to demonstrate cause and prejudice to excuse any procedural

1   default.  See Smith v. Texas, 550 U.S. 297, 308 (2007) ("[T]he procedural bar for raising an issue

2   already resolved in direct review did not apply where an intervening legal decision renders a

3   previously rejected claim meritorious." (internal quotation marks omitted)); Reed v. Ross, 468 U.S.

4   1, 13-16 (1984).  Mr. Sherman can therefore demonstrate cause to excuse any purported procedural

5   default.

6          In the alternative, the procedural default bar imposed in state court is not adequate to bar this

7   Court's consideration of Claim Twelve.  As recognized by the Nevada Supreme Court in this case,

8   an intervening change in the law establishes cause as a matter of state law.  See Docket No. 140-11

9   (Ex. 205, Order of Affirmance at 6-7 (citing Bejarano v. State, 122 Nev. 1066, 1072, 146 P.3d 265,

10  270 (2006)); see also, e.g., St. Pierre v. State, 96 Nev. 887, 892, 620 P.2d 1240, 1243 (1980); Bean

11  v. State, 86 Nev. 80, 85-86, 465 P.2d 133, 136-37 (1970).  The court subsequently found cause to

12  excuse any procedural default of Mr. Sherman's challenge to two invalid aggravating circumstances

13  based on the intervening McConnell decision.  Order of Affirmance at 7.  However, the court

14  arbitrarily did not consider Mr. Sheman's claim based upon Blakely as establishing cause when there

15  was there was no discernable difference between the procedural posture of the two claims.  In short,

16  the Nevada Supreme Court chose to find good cause as to Mr. Sherman's McConnell claim but

17  chose not to find good cause as to his Blakely claim.  A procedural default rule that permits a state

18  court to choose to address or not to address two claims that are in an identical procedural posture is

19  not an adequate procedural default rule.  Mr. Sherman can therefore demonstrate that the state

20  procedural default rule applied to Claim Twelve is not adequate to bar federal habeas review of his

21  claim.

22          xiii.    Claim Thirteen

23          In its motion, the State argues that Claim Thirteen(B), regarding the unconstitutional "anti-

24  sympathy" instruction given to Mr. Sherman's jury, is unexhausted because it presents new theories

25  of relief based on this instruction, and that any new theories related to this instruction presented in

26  his state-court exhaustion petition are procedurally barred.  See MTD at 31.  As the State

27  acknowledges, however, this claim is fully exhausted and not procedurally defaulted as a violation

28

1    of Mr. Sherman's rights under the Eighth and Fourteenth Amendments.  See id.[23]

2         This claim was further exhausted on direct appeal under Nev. Rev. Stat. § 177.055(2), which

3    requires the Nevada Supreme Court "to carefully review every death sentence to minimize the risk

4    that the penalty is imposed in error or in an arbitrary and capricious manner."  Hollaway v. State, 116

5    Nev. 732, 742-43, 6 P.3d 987, 994-95 (2000) (remanding for new penalty hearing where court

6    determined, under mandatory review statute, that instruction and argument prevented the jury from

7    considering and giving effect to mitigating evidence in violation of United States Supreme Court

8    precedent).

9         With respect to the remainder of Claim Thirteen, the State does not argue that the claim is

10   unexhausted, but goes on to suggest that the claim was procedurally defaulted.  See MTD at 20-21

11   (claiming that the Nevada Supreme Court did not consider on the merits any of the claims in his state

12   exhaustion petition).  This argument plainly fails.  Claim Thirteen(A) alleges that Mr. Sherman's

13   constitutional rights were violated by the use of an "other matter" jury instruction during the penalty

14   phase that failed to properly inform the jury about how to consider non-statutory aggravating

15   circumstances.  See Docket No. 103 (Second Amended Petition at 292-93).  This claim was

16   previously exhausted on direct appeal under Nev. Rev. Stat. § 177.055(2), which requires the Nevada

17   Supreme Court "to carefully review every death sentence to minimize the risk that the penalty is

18   imposed in error or in an arbitrary and capricious manner," including, as in Hollaway, whether the

19   jury instructions on the use of "other matter" evidence "undermine[d] the constitutional narrowing

20   process which the enumeration and weighing of the specific aggravators is designed to implement."

21   116 Nev. at 746, 6 P.3d at 997.

22

23

_____

24   [23]This sub-claim was raised on direct appeal and in Mr. Sherman's state-court exhaustion petition.
     See Docket No. 131-8 (Ex. 92B, Appellant's Opening Brief at 44-46); Sherman v. State, 114 Nev.
25   998, 1011, 965 P.2d 903, 912 (1998); Docket No. 139-19 (Ex. 196C, Appellant's Opening Brief at
     74-75).  Mr. Sherman notes that the Nevada Supreme Court's repeated refusal to entertain this claim
26   is in conflict with not only Morgan v. Illinois, 504 U.S. 719 (1992), as set forth in Mr. Sherman's
     prior briefs, but also with the United States Supreme Court's more recent decision in Cullen v.
27   Pinholster, 131 S. Ct. 1388 (2011), in which Justice Thomas, writing for a majority of the court,
     credited trial counsel's purported strategy of trying to evoke sympathy for the petitioner's family as
28   a basis for denying relief.  See id. at 1404.

xiv.   **Claim Fourteen**

In its motion, the State concedes that Claim Fourteen is exhausted, but goes on to suggest that the claim was procedurally defaulted.  See MTD at 20-21 (claiming that the Nevada Supreme Court did not consider on the merits any of the claims in his state exhaustion petition).  On appeal from the denial from his state-court exhaustion petition, the Nevada Supreme Court reached out and addressed the merits of this claim in the same section of its opinion where it addressed his McConnell claim on the merits, while also stating that the claim was procedurally defaulted.  Its analysis of this claim reads in full:

> We reject Sherman's challenge to the prior murder aggravator as violative of the United States Supreme Court's prohibition against the execution of juveniles as announced in Roper v. Simmons, 543 U.S. 551 (2005), because he committed the prior murder while he was a juvenile.  We do not read Roper so broadly.  Moreover, Sherman's claim is procedurally barred as it was appropriate on direct appeal.  See NRS 34.810(1)(b)(2).

Docket No. 140-11 (Order of Affirmance at 7 n.5 (emphasis added)).  Such analysis – in which the Nevada Supreme Court considered the merits of Mr. Sherman's argument, rejected it without elaborating on the basis of its disagreement, and then proceeded to apply a procedural default to the claim – is not sufficient to establish that the alleged procedural default is independent of federal law, because it simply begs the question of what understanding of Roper led the Nevada Supreme Court to believe that such claim needed to be brought on direct appeal, if at all.  Indeed, because the Nevada Supreme Court routinely considers the continuing viability of statutory aggravating circumstances in post-conviction petitions when confronted with intervening changes in the law, see, e.g., Leslie v. Warden, 118 Nev. 773, 780-81, 59 P.3d 440, 445-46 (2002); State v. Bennett, 119 Nev. 589, 598, 81 P.3d 1, 7 (2003), its suggestion that this claim should have been raised on direct appeal appears to reflect nothing other than its disagreement about the validity of Mr. Sherman's claim.  The Nevada Supreme Court's prejudice ruling was therefore intertwined with federal law and not independent of federal law.

Moreover, as suggested in the preceding paragraph, Mr. Sherman can show cause to overcome any state procedural default of his claim based upon intervening changes in the law.  After Mr. Sherman's first state-court petition was denied in 2002, the United States Supreme Court

decided <u>Roper v. Simmons</u>, 543 U.S. 551 (2005), a case which, by necessary implication, commands that Mr. Sherman's statutory aggravating circumstance of his prior murder conviction could not render him death-eligible because it arose from conduct that occurred when he was a juvenile, <u>see</u> Docket No. 103 (Second Amended Petition at 296-99). Shortly thereafter, Mr. Sherman filed his state-court exhaustion petition arguing <u>Roper</u> as a basis for relief and as cause for not earlier raising the claim. <u>See</u> Docket No. 134-11 (Ex. 141K, Petition for Writ of Habeas Corpus (Post-Conviction) at 337-39)); Docket No. 140-7 (Ex. 201B, Appellant's Opening Brief at 18-19). An intervening change in the law is considered sufficient as a matter of state and federal law to demonstrate cause and prejudice to excuse any procedural default. <u>See</u> <u>Smith v. Texas</u>, 550 U.S. 297, 308 (2007) ("[T]he procedural bar for raising an issue already resolved in direct review did not apply where an intervening legal decision renders a previously rejected claim meritorious." (internal quotation marks omitted)); <u>Reed v. Ross</u>, 468 U.S. 1, 13-16 (1984). Mr. Sherman can therefore demonstrate cause to excuse any procedural default of Claim Fourteen as presented in his state-court exhaustion petition.

In the alternative, the procedural default bar imposed in state court is not adequate to bar this Court's consideration of this claim, because it arbitrarily chose not to find "cause" based on an intervening change in law, <u>Roper</u>, even as it did so based on the <u>McConnell</u> decision. A procedural default rule that permits a state court to choose to address or not to address two claims that are in an identical procedural posture is not an adequate procedural default rule. Mr. Sherman can therefore demonstrate that the state procedural default rule applied to Claim Fourteen is not adequate to bar federal habeas review of his claim.

Finally, the procedural default rule that was imposed under NRS 34.810 is inadequate under controlling Ninth Circuit authority. <u>See</u> <u>McKenna v. McDaniel</u>, 65 F.3d 1483, 1488-89 (9th Cir. 1995), <u>Petrocelli v. Angelone</u>, 248 F.3d 877, 886-87 (9th Cir. 2001). Therefore, even if the State was correct, the specific default rule applied to this claim is not adequate to bar federal review of the claim.

/ / /

1

**xv.    Claim Sixteen**

2        The State argues that Mr. Sherman's claim of ineffective assistance of direct appeal counsel

3   is both unexhausted and procedurally defaulted.  See MTD at 31-32.  This claim, however, was

4   raised in his first state post-conviction proceedings with respect to each of the claims contained

5   therein not previously raised on direct appeal, see Docket No. 132-13 (Ex. 116A, Supplemental Brief

6   in Support of Defendant's Writ of Habeas Corpus (Post-Conviction) at 17; Docket No. 133-10 (Ex.

7   132A, Appellant's Opening Brief at 21-22, 25), which were then addressed on the merits by the

8   Nevada Supreme Court, see generally Docket No. 133-19 (Ex. 139, Order of Affirmance).

9   Accordingly, this claim is both exhausted and not procedurally defaulted to the extent those theories

10  were previously presented in earlier state post-conviction proceedings.

11       In addition, it is clear that Mr. Sherman's claim was exhausted in the second state post-

12  conviction proceeding.  Docket No. 139-19 (Ex. 196C, Appellant's Opening Brief at 58).  The

13  State's motion does not dispute the fact that Mr. Sherman's claim of ineffective assistance of direct

14  appeal counsel was exhausted when it was presented to the Nevada Supreme Court during this

15  proceeding.

16

**xvi.    Claim Seventeen**

17       The State argues that Mr. Sherman's claim of cumulative error is unexhausted, see MTD  at

18  18-19, and suggests, without specific argument, that it is also procedurally defaulted, see id. at 20-21

19  (claiming that the Nevada Supreme Court did not consider on the merits any of the claims in his state

20  exhaustion petition).  However, to the extent that individual claims within Mr. Sherman's Second

21  Amended Petition are properly before the Court for a decision on the merits, it follows that this

22  Court must provide a cumulative assessment of those claims to determine whether there was a

23  substantial and injurious effect on the verdict.  See Brecht v. Abrahamson, 507 U.S. 619 (1993).  The

24  State's motion also does not dispute that Mr. Sherman's claim of cumulative error is exhausted due

25  to its presentation in the second post-conviction proceeding.     Docket No. 139-19 (Ex. 196C,

26  Appellant's Opening Brief at 58).

27       In addition, Mr. Sherman's claim of cumulative error is not procedurally defaulted because

28  much of the evidence to substantiate that claim was suppressed by the state.  Cf. Banks v. Dretke,

540 U.S. 668, 695-98 (2004).  Specifically, due to the State's failure to disclose material exculpatory

and impeachment evidence, Mr. Sherman was not able to receive an earlier review of his claim of

cumulative error, including penalty phase prejudice from cumulative error.  Controlling federal law

requires that this Court consider the cumulative effect of constitutional error when the State fails to

disclose material exculpatory and impeachment evidence, see, e.g., Kyles v. Whitley, 514 U.S. 419,

434-35 (1995), which includes an assessment of how reasonably effective trial counsel would have

performed, see, e.g., Coss v. Lackawanna County Dist. Att'y, 204 F.3d 453, 463-64 (8th Cir. 2000)

(prejudice determination must include assessment of entire record, including what effective defense

counsel would have done in absence of constitutional violation), rev'd on other grounds, 532 U.S.

394 (2001); Johnson v. Baldwin, 114 F.3d 835, 840 (9th Cir. 1996); see also State v. Haberstroh, 119

Nev. 173, 69 P.3d 676, 684 (2003) (considering mitigation evidence that trial counsel failed to

investigate and present in considering harmless error after invalidation of aggravating circumstance).

Mr. Sherman was not able to show prejudice from his constitutional claims until he was able to

discover the wealth of long-suppressed evidence set forth in Claim Three of his amended petition.

Therefore, Mr. Sherman's claim of cumulative error is not procedurally defaulted.

### xvii.   Claim Eighteen

The State asserts that Claim Eighteen, alleging that Nevada's lethal injection protocol is

unconstitutional, is unexhausted, see id. at 19 (claiming that the Nevada Supreme Court did not

consider on the merits any of the claims in his state exhaustion petition), and suggests, without

specific argument, that it is also procedurally defaulted, see id. at 20-21 (claiming that the Nevada

Supreme Court did not consider on the merits any of the claims in his state exhaustion petition).  The

State apparently takes issue with the fact that Mr. Sherman first referenced the Nevada lethal

injection protocols in his appeal from the denial of his state-court exhaustion petition, and then

proceeded to further "pick[] apart" those protocols in his Second Amended Petition and add

additional examples of botched executions employing similar procedures to those found in Nevada.

MTD at 19.

The State's argument fails to acknowledge that at the time Mr. Sherman filed his state

exhaustion petition in December 2005, the State was suppressing the protocols, requiring him to

1   instead plead the existence of secret procedures unknown to him. See Docket No. 52 (First Amended

2   Petition at 320-23).  Mr. Sherman did not gain access to the protocols until April 2006, when the

3   Nevada Department of Corrections provided a copy of the protocol to a member of the media.  By

4   then, the state district court had already dismissed his petition on technical grounds. See Docket No.

5   136-2 (Ex. 147).  Following a remand from the Nevada Supreme Court, Mr. Sherman filed an

6   addendum to his state-court petition attaching the newly obtained protocols (alleging good cause to

7   do so based on the State's suppression of them), see Docket No. 137-1 (Ex. 171, Addendum at 2),

8   and further argued the unconstitutional aspects of the protocols in his subsequent appeal, see Docket

9   No. 139-19 (Ex. 196C, Opening Brief at 77-78).  Accordingly, Mr. Sherman "fairly presented" his

10  constitutional challenge to Nevada legal injection protocol to the state courts below.  See Weaver

11  v. Thompson, 197 F.3d 359, 365 (9th Cir. 1999).  The State's further argument – that Mr. Sherman's

12  inclusion of further recent examples of botched executions under death penalty procedures similar

13  to Nevada's somehow "fundamentally alter[s]" the claim, see Vasquez v. Hillery, 474 U.S. 254, 260

14  (1986) – is frivolous.

15       In any event, this claim is neither untimely nor procedurally barred because the factual

16  allegations supporting Mr. Sherman's claim have been suppressed by the State, and it was the State's

17  suppression of the facts that prevented Mr. Sherman from raising his claim earlier in state court.  His

18  claim is therefore timely and he can show cause and prejudice to overcome any purported state

19  procedural default.  As set forth above, Mr. Sherman alleged additional facts supporting his

20  challenge to Nevada's death penalty protocol at the earliest moment to both the state district court

21  and the Nevada Supreme Court.  Mr. Sherman can show cause to excuse any purported state

22  procedural default of his claim that execution by lethal injection constitutes cruel and unusual

23  punishment because the State suppressed the information to support that claim.  See, e.g., Banks v.

24  Dretke, 540 U.S. 668, 695-98 (2004).  In the past, the Nevada Department of Corrections has refused

25  all requests for disclosure of its execution protocol, see, e.g., Ex. 10 (Letter from Glen Whorton to

26  Robert Bruce Cowhey (Aug. 29, 1997)), and Mr. Sherman was able to obtain a copy only indirectly,

27  through a member of the media, long after he filed his state exhaustion petition.  He then promptly

28  submitted the newly obtained information to the state courts for their consideration.  Only then was

1   Mr. Sherman able to show that execution by lethal injection in Nevada constitutes cruel and unusual

2   punishment based on its protocol, rendering his claim timely and not defaulted.

3          Finally, even if the State was correct, Mr. Sherman is excused from exhausting his claim

4   challenging the lethal injection procedure because the state courts do not provide a forum in which

5   to litigate it. Cf. 28 U.S.C. 2254(b)(1)(B)(ii). In McConnell v. State, 125 Nev. __, __, 212 P.3d 307,

6   310-11 (2009), the Nevada Supreme Court held that a challenge to the state's lethal injection

7   protocol and procedure is not cognizable in state court. In its decision, the court clearly held that Mr.

8   Sherman's only remedy on this claim lies in federal as opposed to state court:

9          Our decision today does not leave [the petitioner] without a remedy. For example,
           the Supreme Court's decision in Hill makes clear, a challenge to the lethal injection
10         protocol may be brought in an action under 42 U.S.C. § 1983.

11   McConnell, 212 P.3d at 311 n.5. Moreover, even if he had a forum in state court in which to litigate

12   his claim, the Nevada Supreme Court has held that a challenge to the protocol is not ripe until

13   execution is imminent as the protocols and procedures may change. See id. at 33 (noting that "the

14   Director would be free to use some other protocol to carry out the death sentence"). Consequently,

15   even if the State was correct that Mr. Sherman's claim was unexhausted, that fact would not prevent

16   this Court from adjudicating the claim because the state courts do not provide a forum in which to

17   litigate it, and, even if they did, such a claim would not be ripe as Mr. Sherman's execution is not

18   imminent.

19          **e.      None of the Claims in Mr. Sherman's Second Amended Petition Are
                      Procedurally Barred Because the Purported Defaults Are Not Clearly
20                    Established, Independent of Federal Law, or Adequate to Bar Federal Review.**

21          In its motion, the State argues that each of the claims presented in Mr. Sherman's second

22   state petition were found procedurally barred by the state courts under Nev. Rev. Stat. §§ 34.726,

23   34.810, and 34.800. See MTD at 21. In order to bar federal review, however, a procedural state rule

24   "must be clear, consistently applied, and well-established at the time of the petitioner's purported

25   default." Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir. 1994). The sufficiency of the rule(s) must

26   also judged in terms of their application in the specific case before the Court. See, e.g., Cooper v.

27   Neven, 641 F.3d 322, 332 (9th Cir. 2011) (requiring a "case-by-case inquiry" to determine whether

28   a state court decision is based on independent grounds); Maass, 28 F.3d at 1008 ("[T]he procedural

1   default doctrine is a specific application of the general adequate and independent state grounds

2   doctrine."). Controlling Circuit authority holds that the burden of proving the adequacy of default

3   rulings is on the State. See Bennett v. Mueller, 322 F.3d 573, 585-586 (9th Cir. 2003).

4          As explained below, Nev. Rev. Stats. §§ 34.726, 34.800, and 34.810 were not independent

5   of federal law or adequate to bar federal review when Mr. Sherman filed his exhaustion petition on

6   December 12, 2005. At the outset, Mr. Sherman acknowledges that controlling Ninth Circuit

7   authority has held that the statutory laches bar of Nev. Rev. Stat. § 34.800, and the timeliness bar of

8   Nev. Rev. Stat. § 34.726, are generally adequate to bar federal review, even in capital cases. See

9   Ybarra v. McDaniel, __ F.3d __, __, 2011 WL 3890741, at *3-4 (9th Cir. Sept. 6, 2011) (holding

10  that Nev. Rev. Stat. §§ 34.800 and 34.726 are adequate to bar federal habeas review as applied to

11  state petitions filed in 1992, citing Moran v. McDaniel, 80 F.3d 1261, 1270 (9th Cir. 1996)).[24] Both

12  Ybarra and Moran concerned state petitions that were filed in 1992. However, starting on January

13  1, 1993, the Nevada legislature enacted Nev. Rev. Stat. § 34.820(1)(a), which provides for the

14  mandatory appointment of counsel in a first state post-conviction petition. The Nevada Supreme

15  Court has recognized that the right to the mandatory appointment of counsel carries with it the right

16  to the effective assistance of counsel, and further that a capital petitioner may vindicate this right in

17  a second state petition. See Crump v. Warden, 113 Nev. 293, 302-05, 934 P.2d 247, 252-54 (1997);

18  accord Middleton v. Warden, 120 Nev. 664, 665-69, 98 P.3d 694, 695-98 (2004). Mr. Sherman's

19  post-conviction counsel was appointed under Nev. Rev. Stat. § 34.820(1)(a), on July 13, 1999, and

20  he was therefore entitled to vindicate his right to the effective assistance of counsel in a second state

21  petition.

22

23  [24]Mr. Sherman notes that Nev. Rev. Stat. § 34.726 has been found to be inadequate and not clearly
    established as applied in specific circumstances by the Ninth Circuit, e.g., Collier v. Bayer, 408 F.3d
24  1279, 1285-86 (9th Cir. 2005), even though it has generally been found adequate. Specifically, one
    court in this district has already expressly found that Nev. Rev. Stat. § 34.726 was inadequate as
25  applied to a successive capital habeas petition. In Jones v. McDaniel, the court recognized that the
    petitioner "'assert[ed] specific factual allegations that demonstrate the inadequacy of the state
26  procedure, including citation to authority demonstrating inconsistent application of the rule,'"
    sufficient to trigger the State's burden to demonstrate their adequacy. See Ex. 8 (Jones v. McDaniel,
27  Case No. 96-CV-0633-ECR, Order Granting in Part and Denying in Part (filed September 25, 2006)
    at 13 (quoting Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003); alteration in original). The
28  court concluded that "the state has failed to meets its burden of showing that either § 34.726 or §
    34.810 is an adequate bar to federal review of any [of the petitioner's] habeas claims." Id. at 18.

1          Mr. Sherman submits that none of procedural default rules asserted by the State were clearly

2   established, independent of federal law, or adequate to bar federal review as applied to his second

3   state post-conviction petition where he received appointment of counsel under Nev. Rev. Stat. §

4   34.820(1)(a), in the first state post-conviction proceeding.  Specifically, in his prior post-conviction

5   appeal, the Nevada Supreme Court failed to apply Crump or even to acknowledge that Mr. Sherman

6   had the right to the effective assistance of counsel.  Instead of acknowledging Mr. Sherman's right

7   to effective counsel, the court relied upon the ineffectiveness of the very same counsel to hold that

8   his petition was procedurally barred.  According to the court, Mr. Sherman did not show "why the

9   information provided in [any of the affidavits] could not have been discovered earlier, and the

10  individuals who provided affidavits were known to the defense at the time of trial, with most

11  testifying at trial."  Docket No. 140-11 (Ex. 205, Order of Affirmance at 6).  However, it was always

12  Mr. Sherman's position that the evidence supporting his claims could have been discovered earlier

13  if post-conviction would have performed effectively.  Other than making findings which confirmed

14  that post-conviction counsel was ineffective, the Nevada Supreme Court's opinion entirely deprived

15  Mr. Sherman of his state law right to effective counsel.  Mr. Sherman acknowledges that this Court's

16  function is not to interpret state law or vindicate any denial thereof.  However, the deprivation of

17  state law is relevant to show that there are no clearly established or adequate procedural default bars

18  that apply to Mr. Sherman's second state petition.  See Greenway v. Schriro, __ F.3d __, 2011 WL

19  3195310, at *7 (9th Cir. July 28, 2011) (deprivation of opportunity to amend petition based on claim

20  of ineffective assistance of post-conviction counsel demonstrates that state procedural rulings not

21  adequate to bar federal review).  The Nevada Supreme Court's failure to provide Mr. Sherman with

22  his state right to effective assistance of post-conviction counsel demonstrates that the default rules

23  are not adequate to bar federal habeas review.

24          Mr. Sherman can further show that there is no clearly established default rule that is

25  independent of federal law as applied to a second state petition that is filed to vindicate his right to

26  effective post-conviction counsel.  See Ford v. Georgia, 498 U.S. 411, 423-24 (1992).  Specifically,

27  the application of a default ruling with respect to a claim of ineffective assistance of post-conviction

28  counsel is intertwined with the merits of the underlying claim of ineffective assistance of trial

counsel.  For example, in <u>Greene v. State</u>, Case No. C124806, the capital petitioner filed a second state petition on February 28, 2008, to vindicate his right to the effective assistance of post-conviction counsel.  In its order denying the petition, the district court relied upon (1) trial counsel's strategic decisions, and (2) the absence of prejudice from trial counsel's performance to hold that post-conviction counsel was not ineffective.  Ex. 11 (Findings of Fact, Conclusions of Law and Order at 2).  In another case, <u>Rhyne v. McDaniel</u>, Case No. CV-HC-08-673, a capital petitioner filed a second petition for writ of habeas corpus on August 20, 2008, alleging ineffective assistance of post-conviction counsel.  In its decision granting the petition, the district court relied upon trial counsel's ineffective assistance to hold that it deprived the petitioner of the effective assistance of his post-conviction counsel.  Ex. 12 (Order Granting Writ of Habeas Corpus at 3).  These dispositions show that there are no clearly established procedural default bars that are independent of the underlying claim of ineffective assistance of trial counsel as applied to second state petitions where counsel was appointed pursuant to Nev. Rev. Stat. § 34.820(1)(a) in the first post-conviction proceeding.

Mr. Sherman can further show that the Nevada Supreme Court has <u>sua sponte</u> raised issues in first post-conviction proceedings in order to ensure that post-conviction counsel performs effectively.  In <u>Middleton v. Warden</u>, 120 Nev. 664, 665-69, 98 P.3d 694, 695-98 (2004), the Nevada Supreme Court removed post-conviction counsel for unprofessional errors and remanded the case for a new habeas proceeding, holding that the petitioner "must be afforded his statutory right to litigate his post-conviction claims with the assistance of competent and diligent counsel."  <u>Id.</u> at 669, 98 P.3d at 697-98.  In <u>Rippo v. State</u>, Nev. Sup. Ct. No. 44297, the Nevada Supreme Court <u>sua sponte</u> instructed post-conviction counsel to argue a claim based on an invalid penalty phase instruction approximately two months before oral argument, Ex. 13 (Order Directing Oral Argument at 2), and then addressed that claim on the merits in its decision, <u>see Rippo v. State</u>, 122 Nev. 1086, 1094-95, 146 P.3d 279, 285 (2006).  In <u>Feazell v. State</u>, Nev. Sup. Ct. No. 37789, Order Affirming in Part and Vacating in Part (November 14, 2002), the Nevada Supreme Court <u>sua sponte</u> raised a claim regarding an invalid aggravating circumstance when post-conviction counsel "did not raise the issue of duplicative aggravators in his opening brief," but reached the merits of the claim "given the

particular circumstances of this case." Ex. 14 (Order at 5).  Specifically, the Nevada Supreme Court

chose to address the claim and found good cause to overcome the state procedural default rules based

on post-conviction counsel's ineffectiveness, which the court chose to address on the first post-

conviction appeal rather than having the petitioner file a second petition to litigate the claim of

ineffectiveness:

> absent a showing of good cause and prejudice, the claim regarding duplicative aggravating circumstances would be procedurally barred: Feazell's conviction was the result of a trial, and thus the issue could have been raised in the instant habeas petition.  However, good cause exists to excuse the procedural bar because Feazell has the right to effective counsel in this proceeding, and as we explain, Feazell's post-conviction counsel was ineffective in failing to raise this issue in the instant petition.  Counsel was ineffective and prejudice resulted because this claim has merit; the aggravators are duplicative, rendering the "receiving money aggravator invalid. <u>No purpose is served by requiring Feazell to submit this claim in a successive petition in which he also demonstrates good cause and prejudice.</u>

<u>Id.</u> at 5-6 (emphasis added, footnotes omitted).  In footnotes, the court noted that its decision was

controlled by <u>Crump</u> and the mandatory appointment statute found in Nev. Rev. Stat. § 34.820(1)(a).

<u>See id.</u>  Once again, these dispositions show that the Nevada Supreme Court will raise issues <u>sua</u>

<u>sponte</u> issues on its own initiative to vindicate the right to the effective assistance of post-conviction

counsel, and that it will also entertain claims of ineffectiveness in a second state petition.

Finally, the State's treatment of its default rules in not simply an issue of state law.  The lack

of notice provided by the state's inconsistent application of its rules, and the vagueness and

uncertainty of those rules, also violates the federal constitutional right to due process of law.  <u>See,</u>

<u>e.g.</u>, <u>Lankford v. Idaho</u>, 500 U.S. 110, 126 n.2 (1991); <u>Castillo-Manzanarez v. INS</u>, 65 F.3d 793, 795

(9th Cir. 1995) (instructions for filing immigration appeal unclear, and violated due process by

failing to provide notice that appeal could be dismissed based on insufficient specificity); <u>see also</u>

<u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991).  Similarly, the arbitrarily disparate treatment of

similarly situated litigants that results from inconsistent application of default rules violates the

constitutional guarantee of equal protection of the laws.  <u>Village of Willowbrook v. Olech</u>, 528 U.S.

562, 564 (2000)(per curiam); <u>Myers v. Ylst</u>, 897 F.2d 417, 421 (9th Cir. 1990) (once a state court

"has established a rule it must apply it with an even hand") <u>Johnson v. Arizona</u>, 462 F.2d 1352, 1354

(9th Cir. 1972) ("justice must be even-handed"); <u>see also</u> <u>Wasko v. Vasquez</u>, 820 F.2d 1090, 1091

1    n.2 (9th Cir. 1987) (liberty interest in accurate application of state sentencing laws reviewable under

2    due process clause in federal habeas corpus proceeding, citing, inter alia, Hicks v. Oklahoma, 447

3    U.S. 343, 346 (1986)).[25]

4         Under the case law of this Circuit, the burden of proof now rests with the state to prove that

5    its procedural rules are firmly established and rest on an independent an adequate state law ground.

6    Pursuant to Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003), the burden of proof shifts to the state

7    when Mr. Sherman pleads with particularity that the state courts have not clearly established and

8    consistently applied their procedural rules.  Id. at 585-86; accord Powell v. Lambert, 357 F.3d 871,

9    875 (9th Cir. 2004); Collier v. Bayer, 408 F.3d 1279, 1284 & n.6 (9th Cir. 2005).  Mr. Sherman has

10   met his burden by providing case dispositions from the state courts where similarly situated habeas

11   petitioners raised constitutional claims that were not held procedurally barred.  Now the burden shifts

12   back to the state.  To meet its burden, the state must prove that the state courts "became consistent

13   in barring claims," Dennis v. Brown, 361 F. Supp. 2d 1124, 1133 (N.D. Cal. 2005), at the time of

14   the alleged default, and certainly before the filing of Mr. Sherman's petition in December of 2005.

15   Mr. Sherman respectfully submits that the state cannot meet its burden of proof on this point.  The

16   dispositions Mr. Sherman has provided to the court show that the Nevada Supreme Court did not

17   apply a clearly established, independent, or adequate default ruling in his case.  Therefore, none of

18   Mr. Sherman's constitutional claims in his amended petition are procedurally defaulted.

19   **4.    CONCLUSION**

20        For the foregoing reasons, Mr. Sherman respectfully requests that this Court deny the State's

21   motion to dismiss his Second Amended Petition.  In the alternative, Mr. Sherman requests  that this

22   Court hold the State's motion in abeyance and grant him leave to conduct discovery and an

23

24   [25] In Village of Willowbrook v. Olech, the Supreme Court made it clear that a single individual could
     make a claim of arbitrarily disparate treatment as a "class of one." 528 U.S. at 564, see Myers v.
25   Ylst, 897 F.3d at 421.  This authority invalidates any contention that inconsistent application of
     default rules resulting in disparate treatment of similarly situated litigants – here, the difference in
     treatment being literally a matter of life and death – is permissible because a minority of capital
26   petitioners is affected. Cf. Moran, 80 F.3d at 1270.  Given the relatively small number of capital
     cases in Nevada (which constitutes the relevant group for this analysis, e.g, Valerio, 306 F.3d at 776-
27   78), it cannot be concluded in any event that the rules are consistently applied in a "vast majority of
     cases," Moran, 80 F.3d at 1270, in light of the number of inconsistent dispositions petitioner has
28   cited.

evidentiary hearing to demonstrate, <u>inter alia</u>, his entitlement to equitable tolling under the AEDPA, the timeliness of his petition under Section 2244(d)(1)(D) of the AEDPA, and to show that the procedural barriers raised by the State cannot bar this Court's consideration of his constitutional claims.

DATED this 4th day of October, 2011.

RENE L. VALLADARES
Federal Public Defender

*/s/ David Anthony*
DAVID ANTHONY
Assistant Federal Public Defender

*/s/ Albert Sieber*
ALBERT L. SIEBER
Assistant Federal Public Defender

Attorneys for Petitioner

## CERTIFICATE OF ELECTRONIC SERVICE

In accordance with Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure, the undersigned hereby certifies that on the 4th day of October, 2011, a true and correct copy of the foregoing OPPOSITION TO MOTION TO DISMISS SECOND-AMENDED PETITION FOR A WRIT OF HABEAS CORPUS was electronically filed, and addressed to counsel as follows:

Heather Procter
Deputy Attorney General
hprocter@ag.nv.gov


        /s/ *Katrina Manzi*
An employee of the Federal Public Defender

81