**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DONALD SHERMAN,                            )
                                           )
        Petitioner,                     )          2:02-CV-1349-LRH-VCF
                                           )
vs.                                        )
                                           )          **ORDER**
RENEE BAKER, *et al.*,                     )
                                           )
        Respondents.                    )
                                           )
_____/

      In this habeas corpus case under 28 U.S.C. § 2254, the respondents have filed a motion to dismiss (ECF No. 124) the second amended petition for writ of habeas corpus (ECF No. 103) filed by Donald Sherman, a Nevada prisoner sentenced to death.  As the basis for their motion, respondents contend that all the claims in the petition are time barred by 28 U.S.C. § 2244(d). Alternatively, respondents argue that several claims are unexhausted and several others are procedurally barred.  Sherman has opposed the motion and, in relation thereto, has filed motions for an evidentiary hearing (ECF No. 157) and for leave to conduct discovery (ECF No. 158).  The court's decision on all three motions is set forth below.

      I.  *Procedural History*

      On February 5, 1997, Sherman was convicted by a jury of first-degree murder, robbery, and burglary, in the Eighth Judicial District Court, Clark County, Nevada.  After a penalty hearing, the jury imposed a sentence of death, finding the following aggravating circumstances: (1) Sherman had

1   been convicted of another murder, (2) Sherman was under a sentence of imprisonment when he

2   committed the murder, (3) the murder was committed during the course of a burglary, and (4) the

3   murder was committed during the course of a robbery.  A judgment of conviction was entered on

4   April 21, 1997.  Sherman appealed.

5   On October 27, 1998, Sherman's conviction and sentence were affirmed on direct appeal by

6   the Nevada Supreme Court.  *Sherman v. State*, 114 Nev. 998, 965 P.2d 903 (1998).  The Nevada

7   Supreme Court denied rehearing on December 29, 1998.  On March 6, 1999, Sherman filed a

8   petition for writ of certiorari with the United States Supreme Court.  On May 17, 1999, the Supreme

9   Court denied that petition.

10  On June 7, 1999, Sherman filed a proper person petition for writ of habeas corpus with the

11  Eighth Judicial District Court.  Approximately a year after being appointed counsel, Sherman filed,

12  on June 27, 2000, a supplemental petition for writ of habeas corpus.  On December 12, 2000, the

13  district court denied the petition.  Sherman appealed.  The Nevada Supreme Court affirmed the

14  denial of relief in an unpublished order on July 9, 2002, and issued its remittitur on August 5, 2002.

15  On October 11, 2002, this court received Sherman's initial petition for writ of habeas corpus,

16  which was filed *in propria persona*.  The court conditionally appointed the Federal Public Defender

17  (FPD) to represent Sherman on October 21, 2002, but the need to resolve potential conflicts of

18  interest delayed permanent appointment until April 10, 2003.

19  On November 2, 2005, Sherman filed an amended petition for writ of habeas corpus.  Shortly

20  thereafter, on December 12, 2005, he filed a petition for writ of habeas corpus (post-conviction) in

21  the Eighth Judicial District Court for Nevada.  On January 3, 2006, the respondents filed a motion to

22  dismiss the federal petition on the ground that it asserted claims not exhausted in state court.

23  Sherman opposed that motion, and sought a stay of the action so that he could exhaust his

24  unexhausted claims.  On May 22, 2006, this court denied respondents' motion to dismiss and granted

25  Sherman's motion for a stay.

26  The state district court dismissed the state petition on the ground that it was filed by the FPD,

2

1   and not by counsel appointed in Sherman's prior state post-conviction proceedings.  Sherman

2   successfully appealed that decision; and, on January 9, 2007, the Nevada Supreme Court remanded

3   the case for further proceedings.

4           On October 22, 2007, the state district court entered an order dismissing Sherman's petition

5   without an evidentiary hearing.  Sherman appealed.  On May 17, 2010, the Nevada Supreme Court

6   struck two of the aggravating circumstances against Sherman (the burglary and robbery

7   circumstances), but affirmed the denial of relief.  A petition for rehearing was denied and remittitur

8   was issued on August 16, 2010.  On October 8, 2010, this court vacated the stay and reopened the

9   proceedings.  On November 8, 2010, Sherman filed his second amended petition for writ of habeas

10  corpus, which is the subject of the motion to dismiss addressed herein.

11          II.  *Motion to Dismiss*

12                  A.  Timeliness

13          The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year

14  filing period for § 2254 habeas petitions in federal court.  28 U.S.C. § 2244(d)(1).  The one-year

15  period begins to run from the latest of four possible triggering dates, with the most common being

16  the date on which the petitioner's state court conviction became final (by either the conclusion of

17  direct appellate review or the expiration of time for seeking such review).  *Id.*  Statutory tolling of

18  the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other

19  collateral review is pending.  28 U.S.C. § 2244(d)(2).  Respondents argue that all the claims in

20  Sherman's second amended petition are untimely because, even though his initial petition was timely

21  filed in September of 2002, his second amended petition was filed well beyond the one-year statutory

22  period and none of its claims "relate back" to the initial petition.

23          The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a

24  habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition

25  and, therefore, be considered timely under 28 U.S.C. § 2244(d).  In *Mayle*, the Court held that the

26  Ninth Circuit's formulation of the relation-back standard under Federal Rule of Civil Procedure

3

15(c)(2) (now Rule 15(c)(1)(B)),[1] which allowed an amendment to a habeas petition to "relate back" to the date of the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," was too broad. *Id*. at 656-57. The Court held that an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Id*. at 663-64. The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief. *Id*. at 661.

Although this court did not receive Sherman's initial petition until October 11, 2002, the respondents concede that, for statute of limitations purposes, it was filed on September 11, 2002. ECF No. 170, p. 3.[2] Using 28 U.S.C. § 2244(d)(1)(A) as the relevant triggering date, 309 days of the one-year filing period remained at that point.[3] The problem for Sherman, however, is that none of the three claims in his initial petition was supported by a "core of operative facts" to which a subsequent claim could "relate back."[4] By the time Sherman filed his amended petition in November of 2005, the statutory period based on § 2244(d)(1)(A) had long since elapsed. Accordingly, his second amended petition was filed even further beyond the statutory deadline.

Sherman advances numerous arguments as to why this court should not determine that the

---

[1]     Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

[2]     Citations to page numbers for electronically filed documents are based on the ECF pagination.

[3]     Applying 28 U.S.C. § 2244(d)(1)(A), the limitations period began to run on May 17, 1999, the day the United States Supreme Court denied Sherman's petition for writ of certiorari. The period was tolled, however, from June 7, 1999, until August 5, 2002, while Sherman's first state post-conviction proceeding remained pending.

[4]     Two claims alleged merely that he had been denied due process and effective assistance of counsel at trial and in the penalty phase, respectively. ECF No. 1. Neither included any factual allegations whatsoever. *Id*. The third claim alleged that his right to equal protection of the law had been violated because the state court did not provide an evidentiary hearing in post-conviction proceeding. *Id*. The petition was filed without any exhibits or attachments.

1   claims in his second amended petition are untimely filed.  As an initial matter, he contends that the

2   focus of the court's analysis should be on the first amended petition, not the second, because the first

3   amended petition was never dismissed and it is a "mirror image" of the second amended petition.

4   The court agrees.  Although the two petitions are not identical, the factual and legal bases for the

5   claims contained in each pleading are, with perhaps only a few minor exceptions, essentially the

6   same.  Thus, to the extent that the first amended petition is timely, the second amended petition is

7   timely as well.

8       As to the timeliness of the amended petition, Sherman does not dispute that none of the

9   claims in the petition "relate back" to the initial petition.  Instead, he insists that he is entitled to

10   equitable tolling of the statute of limitations.  Alternatively, he argues that the amended petition is

11   timely under AEDPA because he filed it within one year of triggering dates applicable under

12   subsections (B) and (D) of § 2244(d)(1).  In addition, he contends that the dismissal of his petition

13   on timeliness grounds would violate his statutory right to counsel under 35 U.S.C. § 3599(a)(2).

14       The Supreme Court has held that, in appropriate cases, equitable tolling is applicable to the

15   statute of limitations imposed by § 2244(d).  *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).

16   Under *Holland*, a habeas petitioner is entitled to equitable tolling only if he can show "(1) that he has

17   been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way

18   and prevented timely filing."  *Id*. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))

19   (internal quotation marks omitted).  The application of equitable tolling is "highly fact-dependent."

20   *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).; *Whalem/Hunt v. Early*, 233

21   F.3d 1146, 1148 (9th Cir. 2000); *see also Holland*, 130 S.Ct. at 2565 ("often fact-intensive").  "[T]he

22   threshold necessary to trigger equitable tolling ... is very high, lest the exceptions swallow the rule."

23   *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292

24   F.3d 1063, 1066 (9th Cir.2002), and *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

25   On the other hand, the Court in *Holland* recognized that the "exercise of a court's equity powers . . .

26   must be made on a case-by-case basis," and that "flexibility" is sometimes necessary in order to

1 "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute

2 legal rules." *Holland*, 130 S.Ct. at 2563.

3       With respect to the first prong of the *Holland* test, the court sees little, if any, indication that

4 Sherman has not been diligent in pursuing his rights in this matter.  When he filed his initial petition

5 herein, only 56 days of the one year filing period had elapsed.  The record shows that his counsel,

6 once appointed, aggressively investigated Sherman's case, pursuing both informal and formal

7 discovery.  Upon completing discovery, Sherman filed his amended petition in a timely manner.

8       As to the second prong of the *Holland* test, Sherman advances several "extraordinary

9 circumstances" that, according to him, warrant the imposition of equitable tolling.  These include the

10 six-month delay in appointing the FPD as counsel, his reliance on the court's scheduling orders, his

11 reliance on prevailing Ninth Circuit precedent prior to the *Mayle* decision, time spent resolving

12 discovery matters, and the State's acquiescence in the late filing.  With the possible exception of the

13 time necessary to confirm the FPD as counsel, none of these circumstances, in isolation, provide a

14 compelling ground for equitable tolling.  Even so, Sherman's untimely filing was brought about by a

15 combination of unique circumstances that, when considered together, justify equitable relief.

16       At the time Sherman filed his initial petition, Rule 4 of the Rules Governing Habeas Corpus

17 Cases Under Section 2254 provided, in part, as follows:

18           The original petition shall be presented promptly to a judge of the district
       court in accordance with the procedure of the court for the assignment of its business.
19     The petition shall be examined promptly by the judge to whom it is assigned. If it
       plainly appears from the face of the petition and any exhibits annexed to it that the
20     petitioner is not entitled to relief in the district court, the judge shall make an order for
       its summary dismissal and cause the petitioner to be notified. . . .
21

22 As noted above, Sherman's initial petition consisted of only three claims, none of which were

23 supported by operative facts.  Under Rule 4, the court should have summarily dismissed the petition

24 and notified Sherman of such.  *See Mayle*, 545 U.S. at 656 ("Under Habeas Corpus Rule 4, if 'it

25 plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court,'

26 the court must summarily dismiss the petition without ordering a responsive pleading.").

1    Instead, the case proceeded forward and once counsel was formally appointed (following the

2    aforementioned delay), the court entered a scheduling order on April 10, 2003, that allowed thirty

3    days for the counsel to meet with the petitioner and 60 days to gather the record, confer with prior

4    counsel for the petitioner, and meet with counsel for the respondents about discovery.  ECF No. 12.

5    Then, on July 14, 2003, the court entered a second scheduling order that allowed the parties several

6    months to review the record and conduct discovery, if authorized.  ECF No. 15. That order also set

7    April 23, 2004, as the initial deadline for Sherman's amended petition.  *Id*.

8    An order that simply sets forth a filing date for an amended petition comes with no assurance

9    that new claims for relief in that petition will relate back to the initial petition for timeliness

10   purposes.  Thus, such an order does not generally serve as a basis for equitable tolling.  *See Ford v.*

11   *Pliler*, 590 F.3d 782, 786 (9th Cir. 2009) (confirming that instructions from the court will not provide

12   grounds for equitable tolling absent a showing that they "affirmatively misled" the petitioner).  Here,

13   however, Sherman was arguably misled when the court allowed this action to proceed forward,

14   rather than dismiss it under Rule 4.

15   Presumably, if Sherman had been notified of his defective petition as required by Rule 4, he

16   would have filed a corrected petition, before the limitations period expired, that contained at least

17   some factually-supported claims to which later claims could relate back.  In addition, the court's first

18   two scheduling orders, while not prohibiting Sherman from filing an earlier amended petition,

19   certainly encouraged his counsel to spend a considerable amount of time engaging in pre-amendment

20   activities, such as record review, investigation, and authorized discovery.  The confluence of these

21   two circumstances, along with the undue hardship that would result from the "hard and fast

22   adherence" to the statute of limitations, are sufficiently extraordinary to equitably toll the limitations

23   period from the date Sherman's initial petition was filed (September 11, 2002) to the deadline for

24   Sherman's amended petition in the second scheduling order (April 23, 2004).

25   As for Sherman's argument that he reasonably relied on prevailing precedent in assuming

26   that his amended claims would relate back to his initial petition, the Ninth Circuit did not define the

scope of relation back under Rule 15(c), as applied to habeas cases, until its decision in *Felix v. Mayle*, 379 F.3d 612 (9ᵗʰ Cir. 2004), the case subsequently overturned by the Supreme Court in *Mayle v. Felix*.  In the nearly two years between Sherman's initial petition and the Ninth Circuit's decision in *Felix*, there was no controlling case law in effect that would have mandated a finding that claims in an amended petition would relate back to the initial petition based merely on the fact that the claims arose from the same trial, conviction, or sentence.[5]  In addition, most other circuits at the time took a narrow view in permitting habeas petition amendments to relate back under Rule 15(c) (*see United States v. Hicks*, 283 F.3d 380, 388-389 (D.C. Cir. 2002) (relevant transaction must be defined more narrowly than the trial and conviction); *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-505 (10ᵗʰ Cir. 2000) (same); *Davenport v. United States*, 217 F.3d 1341, 1344-1346 (11ᵗʰ Cir. 2000) (same); *United States v. Pittman*, 209 F.3d 314, 317-318 (4ᵗʰ Cir. 2000) (same); *United States v. Duffus*, 174 F.3d 333, 337 (3ʳᵈ Cir. 1999) (same); *United States v. Craycraft*, 167 F.3d 451, 457 (8ᵗʰ Cir. 1999) (same)), with only one circuit reading Rule 15(c) in the manner adopted by the Ninth Circuit in *Felix v. Mayle* (*see Ellzey v. United States*, 324 F.3d 521, 525-27 (7ᵗʰ Cir. 2003) (if original petition is timely filed, amendments referring to the same trial conviction may relate back)).

With the issuance of *Felix*, however, Sherman was justified in expecting that all the claims in his forthcoming amended petition would relate back to his initial petition.  In this regard, the court is persuaded by Sherman's argument based on *Harris v. Carter*, 515 F.3d 1051 (9ᵗʰ Cir. 2008), a case in which the Ninth Circuit awarded equitable tolling based the petitioner's good faith reliance on circuit precedent that was subsequently overturned.  Though the circumstances in *Harris* are more compelling than those presented here, Sherman, like Harris, was misled by a Ninth Circuit holding

---

[5]     Sherman claims that, before *Felix*, he relied on the Ninth Circuit's "liberal construction" of Rule 15(c) in run-of-the-mill civil cases, which supposedly prevailed at the time he filed his initial petition.  Sherman cites only one case – *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730 (9ᵗʰ Cir. 1988) – to support his premise that the Ninth Circuit was generous in allowing claims to relate back under Rule 15(c).  The relevant holding in *Kern Oil*, however, is that new claims based on a *different legal theory* relate back as long as they arise from the same "conduct, transaction, or occurrence" as the claim in the original complaint.  *Id.* at 736.  Rather than calling for a capacious reading of "conduct, transaction, or occurrence," *Kern Oil* represents a typical construction of Rule 15(c), from which the Supreme Court did not depart in *Mayle*.  *See Mayle*, 545 U.S. at 664.

1   "into believing that he had ample time to file his federal habeas petition, whereas in reality time was

2   running out."  *Harris*, 515 F.3d at 1056.

3        There is little question that, until the Supreme Court decided *Mayle* on June 23, 2005, both

4   parties to this action were proceeding based on the assumption that the claims in Sherman's amended

5   petition, when filed, would not be subject to dismissal under § 2244(d).  Indeed, though the

6   respondents fault Sherman for not filing his first amended petition until five months after *Mayle* was

7   decided (ECF No. 170, p. 26), they failed to raise a *Mayle*-based argument in moving to dismiss that

8   petition, which indicates that they were similarly entrenched in the pre-*Mayle* mind set.  Accordingly

9   the court concludes that Sherman is entitled to equitable tolling for the time period between the date

10  on which the Ninth Circuit issued its decision in *Felix* (August 9, 2004) and the date on which the

11  Supreme Court issued its decision in *Mayle* (June 23, 2005).

12        In summary, the court concludes that this is one of the rare cases in which equitable tolling is

13  necessary in order "to soften the harsh impact of technical rules which might otherwise prevent a

14  good faith litigant from having a day in court."and to "prevent the unjust technical forfeiture of [a]

15  cause[] of action."  Harris, 515 F.3d at 1055. (quoting *Jones v. Blanas*, 393 F.3d 918, 928 (9th

16  Cir.2004).  With Sherman granted equitable tolling for the periods between September 11, 2002, and

17  April 23, 2004, and between August 9, 2004, and June 23, 2005, all the claims contained in his

18  second amended petition are timely filed and shall not be dismissed under § 2244(d).  Having so

19  concluded, the court need not address Sherman's arguments that his petition is timely under

20  subsections (B) and (D) of § 2244(d)(1) or that the dismissal of his petition on timeliness grounds

21  would violate his statutory right to counsel under 35 U.S.C. § 3599(a)(2).[6]

22        B. Exhaustion

23        Exhaustion of state remedies is a prerequisite to a federal court's consideration of a petition

24

25        [6]   Respondents argue for the first time in their reply that, even if the first amended petition
26  was timely filed, the factual allegations supporting Claims Six and Eighteen in the second amended
    petition are sufficiently different that they do not relate back to the prior pleading. ECF No. 170, p. 24-
    25.  Having compared the respective claims, the court finds no merit to this argument.

for a writ of habeas corpus.  28 U.S.C. §2254(b).  To exhaust a ground for relief, a petitioner must fairly present that ground for relief to the state's highest court, and must give that court the opportunity to address and resolve it.  *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).  The "fair presentation" requirement is satisfied when the claim has been presented to the highest state court by describing the operative facts and the legal theory upon which the federal claim is based.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982), *cert. denied*, 463 U.S. 1212 (1983).

To fairly present a federal claim to the state court, the petitioner must alert the court to the fact that he asserts a claim under the United States Constitution.  *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing *Duncan*, 513 U.S. at 365-66), *cert. denied*, 529 U.S. 1009 (2000).  The mere similarity of claims of state and federal error is insufficient to establish exhaustion.  *Hiivala*, 195 F.3d at 1106, (citing *Duncan*, 513 U.S. at 366); *see also Lyons v. Crawford*, 232 F.3d 666, 668-69 (9th Cir. 2000), *as modified by*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne,* 223 F.3d 982, 987 (9th Cir. 2000).  The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims."  *Lyons*, 232 F.3d at 670.  This is accomplished either by referencing a specific provisions of the federal constitution or by citing to either a federal or state case involving the legal standard for a federal constitutional violation.  *See id.*; *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  "[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion."  *Hiivala*, 195 F.3d at 1106, (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)); *see also Shumway*, 223 F.3d at 987.

In their motion to dismiss, respondents contend that Sherman has failed to exhaust state court remedies for the following claims: Three, Six, Eleven, Fifteen, Seventeen, and Eighteen.  Having considered the opposing arguments and reviewed the relevant portions of the record, the court concludes as follows.

*Claim Three* – In Claim Three, Sherman alleges that his conviction and sentence violate his

1  constitutional rights because the State failed to disclose exculpatory and impeachment evidence.

2  Respondents argue that this claim is unexhausted because Sherman incorporated a portion of another

3  claim, which he did not do in his state court petition.  The court agrees with Sherman that

4  respondents' argument places form over substance.  Claim Three is exhausted.

5          *Claim Six* – In Claim Six, Sherman alleges that his conviction and sentence violate his

6  constitutional rights because he was forced to wear a stun belt during the guilt and penalty phases of

7  his trial.  Respondents argue that the claim contains additional factual allegations that were not

8  included in Sherman's presentation to the state court.  Be that as it may, the additional information

9  does not "fundamentally alter" the claim presented to the state court.  Thus, the claim is exhausted.

10  *See Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006), *overruled on other grounds*, 550 U.S.

11  465 (2007) (citing *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)).  Respondents other arguments that

12  Sherman failed to exhaust Claim Six are also unavailing.

13          *Claim Eleven* – In Claim Eleven, Sherman alleges that his conviction and sentence violate his

14  constitutional rights because the Nevada Supreme Court re-weighed aggravating and mitigating

15  circumstances after invalidating two statutory aggravating circumstances, and failed to perform

16  constitutionally adequate harmless error analysis.  Respondents argue that this claim is unexhausted

17  because, although Sherman presented a similar claim to the Nevada Supreme Court, the focus of that

18  claim was the state *district* court's harmless error analysis, not the analysis conducted by the state

19  supreme court.

20          As Sherman points out, however, the court of appeals in *Valerio v. Crawford*, 306 F3d 742

21  (9th Cir. 2002), granted relief on similar grounds even though the petitioner in that case had never

22  raised a separate claim in the Nevada Supreme Court challenging its harmless error analysis.

23  Requiring Sherman to return to the state supreme court with the claim set forth in Claim Eleven

24  would place an undue burden on his opportunity to seek federal habeas review.  Moreover, as a

25  procedural matter, it is not clear how Sherman would present such a claim to the Nevada Supreme

26  Court.  *See* 28 U.S. C. § 2254(b)(1)(B)(I) (excusing exhaustion where "there is an absence of

1   available State corrective process").  As such, this court deems Claim Eleven exhausted.

2   Respondents other arguments as to the exhaustion of Claim Eleven are similarly without merit.

3        *Claim Fifteen* – In Claim Fifteen, Sherman alleges that his conviction and sentence violate

4   his constitutional rights because his trial, sentencing, review on direct appeal, and post-conviction

5   proceedings were conducted before state judicial officers whose tenure in office was dependent on

6   popular election, rather than good behavior.  He fairly presented the same claim to the state court in

7   his second state post-conviction proceeding.  ECF No. 134-12, p. 8-9; ECF No. 139-20, p. 28.

8   Claim Fifteen is exhausted.

9        *Claim Seventeen* – In Claim Seventeen, Sherman alleges that his conviction and sentence

10   violate his constitutional rights due to the cumulative effect of the errors that occurred throughout his

11   criminal proceeding.  This claim was fairly presented to the Nevada Supreme Court in Sherman's

12   second state post-conviction proceedings.  ECF No. 139-20, p. 10.  Thus, the claim is exhausted.

13        *Claim Eighteen* – In Claim Eighteen, Sherman alleges that Nevada's death sentence by

14   means of lethal injection violates the constitutional prohibition against cruel and unusual

15   punishments.  This claim was fairly presented to the Nevada Supreme Court in Sherman's second

16   state post-conviction proceedings.  ECF No. 139-20, p. 29-30.  Thus, the claim is exhausted.

17                    C.  Procedural Default

18        A federal court will not review a claim for habeas corpus relief if the decision of the state

19   court denying the claim rested on a state law ground that is independent of the federal question and

20   adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The Court

21   in *Coleman* stated the effect of a procedural default as follows:

22             In all cases in which a state prisoner has defaulted his federal claims in
          state court pursuant to an independent and adequate state procedural

23             rule, federal habeas review of the claims is barred unless the prisoner
          can demonstrate cause for the default and actual prejudice as a result of

24             the alleged violation of federal law, or demonstrate that failure to
          consider the claims will result in a fundamental miscarriage of justice.

25

26   *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

1    A state procedural bar is "independent" if the state court explicitly invokes the procedural

2    rule as a separate basis for its decision.  *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995).

3    A state court's decision is not "independent" if the application of a state's default rule depends on a

4    consideration of federal law.  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).  Also, if the

5    state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit

6    has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio*

7    *v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir.

8    2003).

9    A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established

10   at the time of the petitioner's purported default."  *Calderon v. United States Dist. Court (Bean)*, 96

11   F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted).  In *Bennett v.*

12   *Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test

13   for analyzing adequacy.  Under *Bennett*, the State carries the initial burden of adequately pleading

14   "the existence of an independent and adequate state procedural ground as an affirmative defense."

15   *Id*. at 586.  The burden then shifts to the petitioner "to place that defense in issue," which the

16   petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the

17   state procedure, including citation to authority demonstrating inconsistent application of the rule."

18   *Id.*  Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of

19   the state bar rests with the State, which must demonstrate "that the state procedural rule has been

20   regularly and consistently applied in habeas actions."  *Id.*

21   In affirming the lower court's denial of relief in Sherman's second state post-conviction

22   proceeding, the Nevada Supreme Court stated:

23           . . . Because he filed his petition approximately six years after this court's
         remittitur issued on his direct appeal, the petition was untimely under NRS 34.726.

24       The petition was also successive and therefore procedurally barred pursuant to NRS
         34.810(l)(b)(2).  And because the State specifically pleaded laches, the petition was

25       subject to dismissal under NRS 34.800. . . .

26   ECF No. 140-12, p. 3.

13

1    Under Nev. Rev. Stat. § 34.726(1), a petition is untimely if filed later than one year after the

2    entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one

3    year after the Nevada Supreme Court issues its remittitur.  Under Nev. Rev. Stat. § 34.810(1)(b), a

4    state petition for post-conviction relief must be dismissed if the court determines that the issues

5    raised in the petition could have been raised in an earlier proceeding, but were not.  Nev. Rev. Stat. §

6    34.800 is a statutory laches rule imposing a rebuttable presumption that prejudice to the State

7    sufficient to warrant dismissal exists if a petition is filed more than five years after the conclusion of

8    direct appeal.

9    By asserting that the Nevada Supreme Court's application of these rules to Sherman's second

10   state petition constitutes an independent and adequate state procedural ground for denying relief,

11   respondents meet their initial pleading burden under *Bennett*.  Sherman challenges the adequacy of

12   these rules by arguing that his right, under Nevada law, to effective assistance post-conviction

13   counsel in his first state post-conviction proceeding entitles him to vindicate that right in a second

14   state post-conviction proceeding.  He claims that the Nevada Supreme Court in his second post-

15   conviction proceeding recognized that his prior post-conviction counsel had been ineffective, but

16   dismissed his petition nonetheless.  Thus, according to Sherman, the Nevada Supreme Court's

17   deprivation of his right to effective assistance of post-conviction counsel undermines the adequacy of

18   the procedural rules applied by the state court in his case.

19   Although this is an interesting legal argument, it does not meet Sherman's burden of

20   "asserting specific factual allegations that demonstrate the inadequacy of the state procedure,

21   *including citation to authority demonstrating inconsistent application of the rule*."  *Bennett*, 322

22   F.3d at 356 (emphasis added).  In that regard, Sherman offers a smattering of cases[7] that, according

23   to him, "show that the Nevada Supreme Court has *sua sponte* raised issues in first post-conviction

24   proceedings in order to ensure that post-conviction counsel perform[ed] effectively."  ECF No. 155,

25

26        [7]      The cases cited are *Middleton v. Warden*, 120 Nev. 664, 98 P.3d 694  (2004); *Rippo v.
     State*, 122 Nev. 1086, 146 P.3d 279 (2006); and *Feazell v. State*, Nev. Sup. Ct. No. 37789, Order
     Affirming in Part and Vacating in Part (November 14, 2002), ECF No. #156-3, p. 24.

p. 89.  Of these cases, only the opinion in *Feazell* references at least one of the procedural bars at

issue (i.e., Nev. Rev. Stat. 34.810(1)(b)).  ECF No. 156, p. 28.  Even assuming it serves an example

of the inconsistent application of the rule, the case shows, at most, that the Nevada Supreme Court,

in some instances, may exercise its discretion to bypass an applicable procedural bar, which does not

necessarily render a rule inadequate to support a state decision.  *See Walker v. Martin*, 131 S.Ct.

1120, 1130 (2011) (explaining that a rule is not automatically inadequate "upon a showing of

seeming inconsistencies" and that state court must be allowed discretion "to avoid the harsh results

that sometimes attend consistent application of an unyielding rule").

Likewise, the court is not persuaded that the Nevada Supreme Court's application of its

procedural rules violates the federal equal protection and due process clauses, or that the application

of the rules to a claim of ineffective assistance of post-conviction counsel is unavoidably intertwined

with the merits of an underlying claim of ineffective assistance of trial counsel.

Because the state procedural rules applied to Sherman's second state petition are adequate

under the *Bennett* analysis, any claim that had yet to be presented to the Nevada courts when

Sherman filed his second state post-conviction petition is procedurally defaulted for the purposes of

federal court review unless Sherman can show cause for the default and actual prejudice as a result

of the alleged violation of federal law.[8]  The respondents argue that Sherman admitted to the state

court in his second post-conviction proceeding that several of his claims had yet to be exhausted.

Respondents further argue that the remainder of the claims in his second amended federal petition

were also unexhausted at that point, notwithstanding Sherman's failure to admit as much.  Thus,

according to the respondents, all of Sherman's claims (except for Claim Nine[9]) are procedurally

defaulted.  Having considered the opposing arguments and reviewed the relevant portions of the

---

[8]      Alternatively, Sherman may avoid a procedural default if he can show that the state
court's disposition of a particular claim was not independent of federal law.

[9]      Respondents concede that, although Sherman indicated otherwise to the state court, Claim
Nine was, in fact, exhausted in Sherman's direct appeal to the Nevada Supreme Court.  ECF No. #170-1,
p. 3.

1   record, the court concludes as follows:

2       *Claim One* – In Claim One, Sherman alleges that his conviction and sentence violate his

3   constitutional rights due to the trial court's order *in limine* preventing the defense from presenting

4   evidence of Dianne Bauer's (Sherman's ex-girlfriend's) culpability in the capital offense.  Although

5   Claim One contains numerous factual allegations not presented to the state courts, the claim was

6   exhausted on direct appeal to the Nevada Supreme Court.  ECF No. 131-8, p. 31-37, ECF No. 131-

7   15, p. 8-14; *see Landrigan*, *supra*.  Thus, this court is not procedurally barred from reviewing the

8   claim.

9       *Claim Two* – In Claim Two, Sherman alleges numerous errors and omissions by trial counsel

10  that, according to him, deprived him of his federal constitutional right to effective assistance of trial

11  counsel.  He does not dispute that he did not raise this claim, except for Claim Two(Y), until his

12  second state post-conviction proceeding.  He gives two reasons, however, as to why the court is not

13  barred from reviewing the claim.

14      First, Sherman contends that the Nevada's procedural rules are not adequate, as applied to

15  Claim Two, because they frustrate his federal rights, specifically, his right to effective assistance of

16  post-conviction counsel with respect to any ineffective assistance of trial counsel claim and his

17  underlying right to effective assistance of trial counsel.  Alternatively, he contends that his post-

18  conviction counsel's ineffectiveness establishes cause and prejudice that excuses his procedural

19  default.

20      In a recent decision, the Supreme Court refrained  from holding that a petitioner has a

21  *constitutional* right to effective counsel in collateral proceedings that provide the first occasion to

22  raise a claim of ineffective assistance at trial.  *Martinez v. Ryan*, 2012 WL 912950, *5 (U.S. March

23  20, 2012).  The Court did hold, however, that "[i]nadequate assistance of counsel at initial-review

24  collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective

25  assistance at trial."  *Id*.  Because *Martinez* was issued subsequent to the briefing of the motion to

26  dismiss, the parties shall be given an opportunity to submit points and authorities as to the case's

16

1    impact, if any, on the procedural viability of Claim Two.

2            Second, Sherman argues that he can establish cause and prejudice to excuse his default

3    because the State wrongfully withheld materials necessary to present the claim.  As support for this

4    argument, Sherman relies on *Banks v. Dretke*, 540 U.S. 668 (2004), a case in which the Supreme

5    Court applied the "cause and prejudice" standard established in *Keeney v. Tamayo-Reyes*, 504 U.S.

6    1, 11 (1992), to determine whether a petitioner was entitled to an evidentiary hearing on his *Brady*[10]

7    claim in federal court.  As part of that analysis, the Court held that "a petitioner shows 'cause' when

8    the reason for his failure to develop facts in state-court proceedings was the State's suppression of the

9    relevant evidence."  *Banks*, 540 U.S. at 691.

10           The Court suggested, however, that the mere withholding or non-disclosure of evidence does

11   not suffice to establish cause in this context.  Instead, the petitioner needs to show that the State

12   actively concealed the evidence and misrepresented its compliance with *Brady*.  *See id.* at 693 ("In

13   short, because the State persisted in hiding [the witness's] informant status and misleadingly

14   represented that it had complied in full with its *Brady* disclosure obligations, Banks had cause for

15   failing to investigate, in state post conviction proceedings, [the witness's] connections to [the

16   police].").

17           As respondents point out, Claims Two(P) and Two(Q) are the only sub-claims that appear to

18   depend on allegations of wrongfully withheld information.  With Claim Two(P), Sherman claims

19   counsel was ineffective in failing to rebut the State's presentation of an escape and solicitation to

20   commit murder that was introduced against him at the penalty hearing.  More specifically, Sherman

21   alleges that trial counsel were ineffective in failing to discover information that could be used "to

22   impeach the state's witnesses with evidence of undisclosed benefits, felony convictions, convictions

23   relating to dishonesty and false statements, and prior informant work for the police."  ECF No. 103,

24   p. 138.  With Claim Two(Q), he claims that counsel was ineffective "in failing to conduct adequate

25   pre-trial discovery of information relating to his prior murder conviction in Idaho and in failing to

26
_____

          [10]     *Brady v. Maryland*, 373 U.S. 83 (1963).

                                                      17

1   present that evidence to the jury to rebut the state's evidentiary presentation." *Id.*, p. 142.

2         Even assuming the State did not fully comply with its disclosure obligations under *Brady*,

3   Sherman has not set forth allegations sufficient to show the type of prosecutorial misconduct

4   required to show cause under *Banks*.  Moreover, the showing required under *Banks* is logically

5   inconsistent with Sherman's underlying ineffective assistance of counsel claims.  In other words, if

6   Sherman was prevented from complying with state procedural rules because the prosecutor

7   intentionally concealed evidence and misled the defense about it, then Sherman will be unable to

8   show that his counsel performed below the standard set forth in *Strickland v. Washington*, 466 U.S.

9   668 (1984), by failing to discover that evidence.  *See Banks*, 540 U.S. at 696 (rejecting the argument

10  that the "'the prosecution can lie and conceal and the prisoner still has the burden to ... discover the

11  evidence'").  Accordingly, Sherman has not shown cause and prejudice to excuse the default of

12  Claim Two based on the State's alleged withholding of evidence.

13        As for Claim Two(Y), wherein he alleges that he received ineffective assistance of counsel

14  because his trial counsel failed to object to several improper comments made by the court during voir

15  dire, Sherman contends that he exhausted this claim in his first state post-conviction proceeding.  In

16  that proceeding, Sherman identified only the court's comments regarding the Bible, specifically the

17  Book of Judges, as the factual basis for his ineffective assistance claim.  ECF No. 133-11, p. 25-27.

18  The Nevada Supreme Court addressed the claim on the merits, applying the relevant federal law

19  standards.  ECF No. 133-20, p. 8-10.

20        In  Claim Two(Y), Sherman supports his ineffective assistance of counsel claim with several

21  additional instances of alleged judicial misconduct during voir dire to which counsel failed to object.

22  Even so, these additional allegations do not "fundamentally alter" the claim presented to the state

23  court, as they fit within the rule under *Vasquez* that a petitioner may supplement his claim with the

24  presentation of additional instances of the same alleged violation.  2 Randy Hertz & James S.

25  Liebman, Federal Habeas Corpus Practice and Procedure § 23.3c, at 1088-89 (5th ed. 2005)

26  (footnotes omitted); *see also Landrigan*, *supra*.  Because Sherman exhausted state court remedies for

18

the claim prior to his second state post-conviction proceeding, Claim Two(Y) is not procedurally defaulted.

*Claim Three* – Sherman concedes that this claim was not exhausted until his second state post-conviction proceeding, but he argues that the claim is not procedurally barred because the Nevada Supreme Court's cause and prejudice analysis of the claim was not independent of federal law.  For support, he cites to *Cooper v. Neven*, 641 F.3d 322 (9th Cir. 2011), a case in which the court held that the Nevada Supreme Court's decision did not rest on an independent state ground because "in the context of *Brady* claims, the merits of the claim dovetail exactly with the cause-and-prejudice analysis."  641 F.3d at 333 (footnote added).

This court agrees that the Nevada Supreme Court engaged in a similar cause and prejudice analysis in this case.  ECF No. 140-12, p. 4-6.  As such, this court is not barred from reviewing Claim Three.

*Claim Four* – In Claim Four, Sherman alleges that he was indicted by an unconstitutionally impaneled grand jury.  Sherman argues that his claim is not procedurally defaulted because the materials used to support this claim "were not discoverable until after Mr. Sherman's trial."  ECF No. 155, p. 66.

Generally, to establish cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The vague justification Sherman offers does not meet this standard.  Thus, this court is barred by the doctrine of procedural default from reviewing Claim Four.

*Claim Five* – In Claim Five, Sherman claims that his conviction and sentence are unconstitutional due to comments made by the trial court to the jury venire.  Most of the factual allegations advanced in support of the claim are based on the same occurrences as those underlying Claim Two(Y).  And, here again, Sherman identified only the court's comments regarding the Bible as the factual basis for the claim in his first state post-conviction proceeding.  ECF No. 133-12, p. 2-

7.  But, for the same reason discussed above in relation to Claim Two(Y), that was sufficient for Sherman to exhaust state court remedies for the claim.  Thus, Claim Five is not procedurally defaulted.

*Claim Six* – Sherman does not dispute that this claim was not exhausted until his second state post-conviction proceeding.  In addition, he has not demonstrated cause for his state court default.  Thus, this court is barred by the doctrine of procedural default from reviewing Claim Six.

*Claim Seven* – In Claim Seven, Sherman alleges that he was deprived of his constitutional rights when the State introduced unreliable evidence of unadjudicated prior bad acts and victim impact testimony from prior offenses during the guilt and penalty phases of his trial.  While fragments of Claim Seven were presented to the Nevada Supreme Court on direct appeal, the operative facts and the legal theory upon which the federal claim is based were not fairly presented until Sherman's second state post-conviction proceeding.  Sherman has not demonstrated cause for his state court default.  Thus, this court is barred by the doctrine of procedural default from reviewing Claim Seven.

*Claim Eight* – In Claim Eight, Sherman alleges that his conviction and death sentence are unconstitutional due to several instances of prosecutorial misconduct.  This claim was not presented to the Nevada Supreme Court until Sherman's second state post-conviction proceeding.[11]  With respect to Claims Eight(A), (B), (D), and (E), he contends that he can show cause for the default because the State withheld relevant material that it was constitutionally-obligated to disclose.

Claim Eight(A) and (B)) are based on allegations also found under Claim Three regarding the State's alleged failure to disclose material exculpatory and impeachment evidence.  As noted above, the court has concluded that Claim Three shall be reviewed on the merits.

Only a small portion of Claim Eight(D), wherein Sherman alleges prosecutorial misconduct in relation to various arguments made by the State at trial, is dependent upon information that

---

[11]     While Sherman suggests that Claim Eight(D) was exhausted in his direct appeal, that sub-claim bears little factual resemblance to the portions of his direct appeal brief he references in support of this argument.  ECF No. #131-8, p. 43; ECF No. #131-9, p. 2-3, 27-29.

1   Sherman claims to have been wrongfully withheld.  As for Claim Eight(E), wherein he alleges

2   several instances of prosecutorial misconduct in relation to the questioning of witnesses, Sherman

3   has not set forth allegations sufficient to show the type of prosecutorial misconduct required to show

4   cause and prejudice under *Banks*.  See discussion of cause in relation to Claim Two, above.

5         As an alternative reason why Claim Eight should not be determined to be procedurally

6   defaulted, Sherman argues that the claim was exhausted on direct appeal via the Nevada Supreme

7   Court's mandatory review under Nev. Rev. Stat. § 177.055(2), which requires the state supreme

8   court to consider, among other things, "whether the sentence of death was imposed under the

9   influence of passion, prejudice or any arbitrary factor."  Nev. Rev. Stat. § 177.055(2)(d).

10         In order to find any claims exhausted by virtue of the Nevada Supreme Court's review under

11   Nev. Rev. Stat. § 177.055, this court must be satisfied that such review encompassed the specific

12   factual and a federal law grounds advanced by the petitioner in his federal petition.  *See Comer v.*

13   *Schriro*,  463 F.3d 934, 954-56 (9th Cir. 2006) (examining whether petitioner's federal habeas claims

14   were impliedly exhausted under the Arizona Supreme Court's independent review process).

15         In allowing implied exhaustion in *Comer*, the court of appeals noted that, pursuant to

16   Arizona's statutes and case law, the Arizona Supreme Court "examines the entire record, particularly

17   the sentencing hearing, to determine if any procedural errors occurred or other arbitrary factors

18   influenced the sentencing court's decision to impose the death sentence," and that the court "is

19   clearly conscious of its duty to respect the dictates of the Eighth and Fourteenth Amendments and to

20   ensure that the death penalty is not imposed in an arbitrary and capricious fashion."  *Id*. at 955.  In

21   addition, the court of appeals held that only claims that are "clearly encompassed within Arizona's

22   independent review" and  "readily apparent from the record" will be deemed impliedly exhausted.

23   *Id*. at 956.

24         Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court to

25   apply federal law standards in conducting its review under Nev. Rev. Stat. § 177.055.  *Sechrest v.*

26   *Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996).  Moreover, Sherman has not shown that the claim

1    set forth as Claim Eight is "clearly encompassed" within the scope of Nev. Rev. Stat. § 177.055 or

2    that it is "readily apparent" in the record reviewed by the Nevada Supreme Court.  To the contrary,

3    he argues that much of the prosecutorial misconduct alleged in Claim Eight was concealed by the

4    State's non-disclosure of material evidence.

5         Because Sherman has not shown that his procedural default of Claim Eight is excused by

6    cause and prejudice or that it was exhausted on direct appeal by virtue of Nev. Rev. Stat. § 177.055,

7    this court shall not consider the claim on the merits.

8         *Claim Ten* – In Claim Ten, Sherman alleges that his conviction and death sentence are

9    unconstitutional because the reasonable doubt instruction given during both the trial and sentencing

10   phase of his trial improperly minimized the State's burden of proof.  Sherman does not dispute that

11   this claim was not exhausted until his second state post-conviction proceeding.  In addition, he has

12   not demonstrated cause for his state court default.  Thus, Claim Ten is procedurally defaulted.

13        *Claim Eleven* – As discussed above, the gravamen of this claim is the harmless error analysis

14   conducted by the Nevada Supreme Court in Sherman's second state post-conviction proceedings.

15   Because the claim could not have been raised prior to that proceeding, it is not procedurally

16   defaulted.

17        *Claim Twelve* – In Claim Twelve, Sherman alleges that his death sentence is unconstitutional

18   because the penalty jury was not instructed that it was required to find all the elements of capital

19   eligibility beyond a reasonable doubt.  Sherman argues that he can demonstrate good cause to excuse

20   his procedural default because the claim is premised on *Blakely v. Washington*, 542 U.S. 296 (2004),

21   which was not decided until after his first state post-conviction petition had been denied.

22        Even assuming *Blakely* was an intervening change in the law that provided good cause for

23   failing to raise the claim earlier, Sherman cannot show that he suffered actual prejudice as

24   a result of the alleged violation of federal law.  *See United States v. Frady*, 456 U.S. 152, 170 (1982)

25   (holding that to show "actual prejudice," petitioner must show that the errors at trial "worked to his

26   *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions") (emphasis in original).  Simply put, *Blakely* is not applicable to Sherman's death

sentence because his conviction was final before *Blakely* was decided.  *See Schardt v. Payne*,

414 F.3d 1025, 1027 (9th Cir. 2005) (holding that *Blakely* does not apply retroactively to convictions

that became final prior to its publication).  Accordingly, this court is procedurally barred from

considering Claim Twelve.

*Claim Thirteen* – In Claim Thirteen, Sherman claims that his death sentence is

unconstitutional because of the trial court's failure to properly instruct the jury during the sentencing

hearing.  The claim focuses on three instructions – the other matter instruction (Claim Thirteen(A)),

the anti-sympathy instruction (Claim Thirteen(B)), and the commutation instruction (Claim

Thirteen(C)).

Sherman presented a federal claim based on the anti-sympathy instruction in his direct appeal

to the Nevada Supreme Court.  ECF No. 131-9, p. 13-15.  Thus, Claim Thirteen(B) is not subject to

procedural default.  Claims Thirteen(A) and (C), on the other hand, were not presented to the Nevada

Supreme Court until his second state post-conviction proceeding.  As such, the court is procedurally

barred from reviewing those claims.[12]

*Claim Fourteen* – In Claim Fourteen, Sherman alleges that his sentence is unconstitutional

because the State used, as a statutory aggravating circumstance, a prior murder conviction for a

murder committed by Sherman before the age of eighteen.  Sherman argues that this claim was not

procedurally defaulted because, even though it was not raised until his second state post-conviction

proceeding, the Nevada Supreme Court addressed it on the merits.  This court agrees and, therefore,

is not barred from considering the claim.  See ECF No. 140-12, p. 7.

*Claim Fifteen* – As noted above, Claim Fifteen was exhausted in Sherman's second state

post-conviction proceeding.   Sherman makes no argument that the claim was exhausted prior to that

proceeding.  In addition, he has not demonstrated cause for his state court default.  Thus, this court is

---

[12]     Sherman also argues that Claim Thirteen was exhausted on direct appeal by way of Nev. Rev. Stat. § 177.055.  This argument is without merit for the reasons discussed above in relation to Claim Eight.

1    barred by the doctrine of procedural default from reviewing Claim Fifteen.

2         *Claim Sixteen* – In Claim Sixteen, Sherman alleges that his conviction and sentence are

3    unconstitutional because he was not afforded effective assistance of counsel on appeal.  This claim

4    was not presented to the Nevada Supreme Court until Sherman's second state post-conviction

5    proceeding.  As such, the court is procedurally barred from reviewing the claim.

6         *Claim Seventeen* –  As with other claims, a claim for cumulative error is not exhausted unless

7    it has been fairly presented to the state supreme court.  *See Solis v. Garcia*, 219, F.3d 922, 930 (9th

8    Cir.2000) (district court properly found that petitioner did not exhaust his state court appeals on the

9    claim of cumulative error before filing his habeas petition in federal court). The cumulative error

10   claim set forth under Claim Seventeen was not properly raised in either Sherman's direct appeal or

11   his first state post-conviction proceeding.  Accordingly, the claim is procedurally defaulted.

12        *Claim Eighteen* – As noted above, this claim was exhausted in Sherman's second state post-

13   conviction proceeding.  Sherman argues that the State's suppression of execution protocols provides

14   cause sufficient to excuse procedural default of the claim.  The court notes, however, that Sherman's

15   initial petition in his second state post-conviction proceeding, which included a constitutional

16   challenge to lethal injection, was filed prior to the date on which Sherman claims that he first had

17   access to the protocols.  ECF No. 134-12, p. 16-34.  Thus, Sherman was not prevented, by the lack of

18   protocols, from raising Claim Eighteen (albeit without some additional factual allegations) in an

19   earlier proceeding.  Likewise, he was not excused from raising the claim earlier based on his

20   argument that constitutional challenges to lethal injection are not cognizable in state court.  Claim

21   Eighteen is procedurally defaulted.

22             D.  Cognizability

23        Respondents contend that, to the extent that they allege violations of the Nevada

24   Constitution, Claims Six, Nine, and Eighteen are not cognizable in a federal habeas action.  Claims

25   Six and Eighteen are procedurally defaulted.  As for Claim Nine, it goes without saying that federal

26   habeas relief is not available for violations of state law.  28 U.S.C. § 2254(a).  Thus, the court shall

1   consider only the federal law aspects of the claim.

2        III.  *Motion for Evidentiary Hearing*

3        Sherman asks for an evidentiary hearing to develop the factual record in relation to the

4   motion to dismiss.  Specifically, he claims that an evidentiary hearing will assist him in showing that

5   (1) he is entitled to equitable tolling, (2) his petition is timely under 28 U.S.C. § 2244(d)(1)(D), (3)

6   the procedural default of some of his claims should be excused due to cause and prejudice, and (4)

7   Nevada's procedural default rules are not clearly established, independent of federal law, and

8   adequate to bar federal habeas review.

9        Because he seeks a hearing on procedural issues, the restrictions imposed by 28 U.S.C. §

10  2254(e)(2) do not necessarily apply to Sherman's request.  Even so, he must allege facts which, if

11  true, would entitle him to relief, in order to be entitled to an evidentiary hearing.  *See, e.g., Mendoza*

12  *v. Carey*, 449 F.3d 1065, 1071 (9th Cir.2006) (holding that petitioner should have been granted a

13  hearing by the district court because he alleged facts that, if true, may warrant equitable tolling).

14       Because the court has concluded that Sherman's second amended petition is timely, an

15  evidentiary hearing is unnecessary with respect to the first two grounds advanced in support of his

16  motion.

17       With respect to the cause and prejudice ground, Sherman argues that he should have the

18  opportunity to show that the State's failure to disclose material exculpatory and impeachment

19  information caused any default of Claims One, Two, Three, Eight, and Seventeen.  As set forth

20  above, Claims One and Three are not barred by the doctrine of procedural default, so such a showing

21  is unnecessary for those claims.  Two of the sub-claims within Claim Eight for which Sherman

22  claims delay based on the State's alleged non-disclosure are subsumed by Claim Three (i.e., Claim

23  Eight(A) and (B)).  Neither Claim Eight(C) or (D) relies upon withheld information.

24       As discussed above, Sherman has not alleged facts establishing the type of prosecutorial

25  misconduct present in *Banks v. Dretke* – i.e., intentional concealment of evidence and

26  misrepresentation as to compliance with *Brady*.  Accordingly, he is not entitled to an evidentiary

hearing for the purpose of showing that the State's alleged suppression of evidence prevented him from raising Claim Two or Claim Eight(E) in his first post-conviction proceeding.  And, because Sherman has not shown the need for an evidentiary hearing on cause and prejudice in relation to his other claims, it stands to reason that an evidentiary hearing on Claim Seventeen, a cumulative error claim, is also unnecessary.

Sherman also identifies Claims Two(Y), Four, Five, and Eighteen as particular claims for which he can show cause and prejudice.  As set forth above, Claims Two(Y) and Five are not barred by the doctrine of procedural default, so such a showing is unnecessary for those claims.  As for Claims Four and Eighteen, Sherman makes no allegations that, even if true, would impact the court's conclusions above regarding lack of cause for the default of those claims.

To the extent that Sherman claims ineffective assistance of post-conviction counsel prevented him from presenting any of his claims in compliance with Nevada's procedural rules, the Court in *Martinez* made clear that post-conviction counsel's ineffectiveness can serve as cause only with respect to claims of ineffective assistance of counsel at trial.  *Martinez*, 2012 WL 912950, *10.[13]

As to the final ground for Sherman's motion – i..e., the adequacy and independence of the state procedural rules asserted by the State, Sherman gives no hint as to the type evidence he would present at hearing on this issue.

For the foregoing reasons, Sherman's motion for an evidentiary hearing shall be denied.

IV.  *Motion for Leave to Conduct Discovery*

Sherman moves for leave to conduct discovery in order to develop facts that he claims are relevant to the procedural bars asserted by the State.  For the same reasons set forth above in relation to his motion for an evidentiary hearing, the court shall deny the motion.[14]

---

[13]     Until supplemental briefing is concluded, the court reserves judgment as to whether Sherman should be granted an evidentiary hearing for the purpose of establishing that his counsel in his first post-conviction proceeding was ineffective for failing to raise the claims asserted under Claim Two.

[14]     Again, the  the court reserves judgment as to whether Sherman should be granted leave to conduct discovery for the purpose of establishing that his counsel in his first post-conviction proceeding was ineffective for failing to raise the claims asserted under Claim Two.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 124) is GRANTED in part and DENIED in part.  For the reasons set forth above, Claims Four, Six, Seven, Eight, Ten, Twelve, Thirteen(A and C), Fifteen, Sixteen, Seventeen, and Eighteen, are DISMISSED. The court reserves judgment as to whether Claim Two shall be dismissed.

**IT IS FURTHER ORDERED** that petitioner's motion for evidentiary hearing (ECF No. 157) and renewed motion for leave to conduct discovery (ECF No. 158) are DENIED.

**IT IS FURTHER ORDERED** that all pending motions for leave to file excess pages (ECF Nos. 123, 154, and 169) are GRANTED *nunc pro tunc* as of their respective filing dates.

**IT IS FURTHER ORDERED** that petitioner shall have **twenty (20) days** from the date this order is entered within which to file points and authorities as to the impact of *Martinez v. Ryan*, 2012 WL 912950 (U.S. March 20, 2012), on whether Claim Two shall be dismissed as procedurally defaulted.  The respondents shall thereafter have **twenty (20) days** within which to file a response.

DATED this 23rd day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE