1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                               **DISTRICT OF NEVADA**

8

9    DONALD SHERMAN,                    )

10              Petitioner,             )        2:02-CV-1349-LRH-VCF
                                        )
11   vs.                                )
                                        )        **ORDER**
12   RENEE BAKER, *et al.*,             )
                                        )
13              Respondents.            )
                                        )
14   _____ /

15          On March 23, 2012, this court entered on order granting, in part, respondents' motion to

16   dismiss.  ECF No. 179.  In doing so, the court concluded that the doctrine of procedural default

17   barred the review of several claims contained in Sherman's second amended federal petition.  *Id*. at

18   12-24.[1]  Rather than decide whether the ineffective assistance of trial counsel claims in Claim Two

19   of the petition are procedurally barred, the court ordered supplemental briefing regarding the

20   potential impact of the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

21   *Id*. at 16-17, 27.  The court further reserved judgment on Sherman's motion for evidentiary hearing

22   and motion for leave to conduct discovery as they pertain to Claim Two.  *Id*. at 26 n.13, 14.

23          Pursuant to the court's order, Sherman filed a supplemental opposition to respondents'

24   motion to dismiss.  ECF No. 183.  Respondents filed a supplemental reply.  ECF No. 187.  For the

25

26   _____

          [1]  Citations to page numbers in the record are based on CM/ECF pagination, which sometimes
     differs from the page number on the imaged document.

1   reasons that follow, the procedural default of Sherman's ineffective assistance of counsel claims are

2   not excused under *Martinez*.

3                                    ***Martinez* Standard**

4            The Court in *Martinez* held that, in collateral proceedings that provide the first occasion to

5   raise a claim of ineffective assistance at trial, ineffective assistance of post-conviction relief (PCR)

6   counsel in that proceeding may establish cause for a prisoner's procedural default of such a claim.

7   *Martinez*, 132 S. Ct. at 1315.  The Court stressed, however, that its holding was a "narrow

8   exception" to the rule in *Coleman v. Thompson*[2] that "an attorney's ignorance or inadvertence in a

9   postconviction proceeding does not qualify as cause to excuse a procedural default."  *Id*.  The Court

10  also took care to point out that the exception does not extend beyond claims that counsel was

11  ineffective at trial.  *See id*. at 1320.

12           The Ninth Circuit has noted that, "*Martinez* made clear that a reviewing court must determine

13  whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*,[3]

14  whether the petitioner's claim of ineffective assistance of trial counsel is substantial,[4] *and* whether

15  there is prejudice."  *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (citing *Martinez*, 132 S.

16  Ct. at 1321) (emphasis in original) (footnotes added).  Under *Strickland*, a petitioner must show that

17  his counsel's performance was both unreasonably deficient and that the defense was actually

18  prejudiced as a result of counsel's errors.  *Strickland*, 466 U.S. at 684.

19           There is a strong presumption that an attorney performed within the wide range of

20  professional competence, and the attorney's performance will be deemed to have been deficient only

21  if it fell below an objective standard of reasonableness measured under prevailing professional

22  norms.  *Id*. at 689, 694.  To prove prejudice, the petitioner must demonstrate that there is a

23  _____

24        [2]  501 U.S. 722 (1991).

25        [3]  *Strickland v. Washington*, 466 U.S. 668 (1984).

26        [4]   Under *Martinez*, the underlying ineffective assistance of trial counsel claim is "substantial" if
it has "some merit."  132 S. Ct. at 1318.

2

1  reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would

2  have been different. *Id*. at 694. "There are countless ways to provide effective assistance in any

3  given case. Even the best criminal defense attorneys would not defend a particular client in the same

4  way." *Id*. at 689. As a result, "[t]he question is whether an attorney's representation amounted to

5  incompetence under prevailing professional norms, not whether it deviated from best practices or

6  most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (internal quotations and

7  citation omitted).

8      The application of the *Strickland* test in this instance means that Sherman is required to show

9  that counsel's representation during his initial post-conviction proceeding was objectively

10  unreasonable, and that, but for their errors, there is a reasonable probability that Sherman would have

11  received relief on a claim of ineffective assistance of trial counsel in state court. *See Sexton*, 679

12  F.3d at 1157 (indicating that petitioner must establish both prongs of the *Strickland* test to show

13  ineffectiveness of PCR counsel).

14  **Discussion**

15      Sherman's counsel in his first post-conviction proceeding, Christopher Oram, raised ten

16  claims, including at least three ineffective assistance of counsel claims. ECF Nos. 132-14 and 132-

17  15. Even so, Sherman contends that Oram was ineffective for omitting the several other ineffective

18  assistance claims that are set forth under Claim Two in his pending federal petition.

19      Although Claim Two is subdivided into roughly thirty sections, Sherman identifies ten

20  ineffective assistance claims that, according to him, meet the *Martinez* cause and prejudice

21  requirements. ECF No. 183. This court previously determined that one of these claims, a claim that

22  trial counsel was ineffective in failing to object to certain comments made by the trial judge during

23  voir dire, is not procedurally defaulted. See ECF No. 179, p. 18-19.

24      Of the remaining nine claims, five of them were not plead as independent, factually-

25  //

26  //

supported ineffective assistance claims in Sherman's petition.[5]  Instead, Sherman merely included

brief paragraphs at the end of Claim Two purporting to add an ineffective assistance component to

constitutional claims contained elsewhere in the petition. ECF No. 103, p. 192-93.  In each case, the

incorporated claim is a claim that this court has determined to be procedurally defaulted.  Not only

are they insubstantial (i.e., without factual support), these five claims are beyond the purview of

*Martinez* in the sense that are claims based, in essence, on theories other than ineffective assistance

of trial counsel.

  As for the remaining four claims for which Sherman contends PCR counsel rendered

unreasonably deficient performance by failing to raise, the court concludes as follows.

     1. *Failure to advance defense theory and rebut State's theory*

  Sherman challenges various aspects of trial counsel's performance under a broad claim that

counsel was ineffective in investigating, presenting, and litigating issues related to their theory of

defense and in rebutting the State's theory of the case.  The victim in this case was Lester Bauer, the

father of Sherman's ex-girlfriend, Dianne Bauer.  Evidence presented at Sherman's trial established

that Bauer was killed in his home by several blows to the head with a hammer.

  The State's theory was that Sherman drove to Las Vegas (from Washington state) and killed

Bauer because Sherman was upset and angry over his breakup with Dianne.  The theory the defense

sought to advance at trial was that, when Sherman entered Bauer's house, he intended only to

confront Bauer about allegations of sexual molestation involving Dianne and her daughter, and that

only after he was inside the house did he lose his temper and kill Bauer, at least partially due to the

fact that he was under the influence of drugs.  Another component of this defense theory was that

Dianne, eager to collect an inheritance from her father, manipulated Sherman into the confrontation

by playing upon his hypersensitivity regarding child abuse.

---

   [5]  The five claims are that trial counsel was ineffective in failing to (1) adequately litigate the issue of whether Sherman should be required to wear a stun belt during his trial, (2) challenge the composition of the jury venire, (3) challenge a reasonable doubt instruction, (4) object to prosecutorial misconduct in the penalty phase, and (5) object to certain penalty phase instructions.

1   Sherman contends that trial counsel were ineffective in opposing a motion *in limine* by the

2   State that prevented him from presenting testimony that Dianne had told people, including Sherman,

3   that her father had molested her and that she was looking forward to his death so she could collect an

4   inheritance.  He also claims that counsel failed to adequately investigate certain witnesses who

5   possessed information that would support the defense's theory of the case, to use information at their

6   disposal to effectively cross-examine Dianne, and to obtain information relevant to the defense from

7   certain law enforcement agencies.

8   With regard to the motion *in limine*, Sherman faults counsel for not challenging it on

9   timeliness and other procedural grounds and for not developing a better record for the trial court's

10   consideration and for appellate and post-conviction review.  A review of the trial transcripts shows,

11   however, that trial counsel made an articulate argument against granting the motion and, as an offer

12   of proof, gave a detailed summary of the testimony they intended to elicit from various witnesses.

13   ECF No. 129-10, p. 8-30.  It is apparent that trial counsel vigorously litigated this issue and that their

14   performance could, by no means, be considered objectively unreasonable under prevailing

15   professional norms.

16   As for the remaining alleged shortcomings, this court is not convinced that they could have

17   had an appreciable impact on the outcome of Sherman's trial.  Other than a defense expert's opinion

18   as to the claim's veracity,[6] Sherman points to no evidence to support his claim that he traveled to Las

19   Vegas and confronted Lester Bauer merely to discuss sexual abuse allegations involving Dianne and

20   her daughter.  In addition, even if Sherman had been able to present additional evidence showing that

21   Dianne wanted her father dead and had manipulated Sherman into confronting him, the jury would

22

23   ───────────────

24   [6]   In the penalty phase of Sherman's trial, Dr. Stephen Pittel, a psychologist, testified for the
defense and, in the course of that testimony, recounted the circumstances of the crime as related to him
by Sherman. No. 130-7, p. 42-43.  According to that account, Sherman went to Bauer's house twice on

25   the day of the murder.  The first visit started as a "cordial conversation," but ended with Bauer kicking
Sherman out of the house when Sherman brought up the subject of child abuse.  Then, later that night,

26   in a rage fueled by alcohol and methamphetamine, Sherman returned to Bauer's house and killed him.

1   have, in all likelihood, still found Sherman guilty of first degree murder.[7]  So, even assuming

2   *arguendo* that trial counsel's performance was deficient, Sherman has not shown prejudice.

3          Oram was not ineffective in failing to present this claim in Sherman's initial collateral

4   proceeding.

5              2.  *Failure to move for new trial based on Dianne Bauer's false testimony*

6          Another claim identified by Sherman as one for which he can show cause and prejudice

7   under *Martinez* is his claim that trial counsel were ineffective in failing to investigate and present

8   evidence from a wrongful death suit as grounds for a new criminal trial.  In support of this claim,

9   Sherman alleges that trial counsel were aware that the Bauer family had sued the State of

10  Washington for its failure to properly supervise Sherman while he was on parole.  He further alleges

11  that evidence generated in relation to that proceeding – in particular, deposition testimony provided

12  by Dianne Bauer and her brother, Bruce Bauer – contradicted Dianne's testimony at Sherman's trial

13  and supported the defense's theory as to Dianne's relationship with her father and her motive to have

14  him killed.

15         In Nevada, the general standard for granting a new trial based on newly discovered evidence

16  is as follows:

17              (1) the evidence must be newly discovered; (2) it must be material to the
               defense; (3) it could not have been discovered and produced for trial even with the
18             exercise of reasonable diligence; (4) it must not be cumulative; (5) it must indicate
               that a different result is probable on retrial; (6) it must not simply be an attempt to
19             contradict or discredit a former witness; and (7) it must be the best evidence the case
               admits.

20

21  *Hennie v. State*, 968 P.2d 761, 764 (Nev. 1998).  Here, the purported new evidence relating to

22  Dianne Bauer is only marginally relevant and, even if accepted, does little to undermine Sherman's

23  culpability for the murder.  As such, a motion for new trial on the basis of that evidence stood little,

24  if any, chance of succeeding.  Where a motion "almost certainly would have failed, [a petitioner] has

25

26          [7]   In this regard, it is worth noting that the jury imposed the death penalty notwithstanding its
       finding that Sherman committed the murder while under the influence of extreme mental and emotional
       disturbance and under duress or under the domination of another person.

1  not demonstrated that he was prejudiced by counsel's refusal to make it." *Wilson v. Henry*, 185 F.3d

2  986, 991 (9th Cir. 1999).

3      Oram was not ineffective in failing to present this claim in Sherman's initial collateral

4  proceeding.

5              3. *Failure to investigate and present mitigation evidence*

6      Next, Sherman claims Oram was ineffective in failing to present a claim that trial counsel

7  were ineffective in failing to conduct an adequate mitigation investigation and present the results of

8  such an investigation through lay witnesses and an expert. Sherman identifies several lay witnesses

9  who, according to him, could have provided testimony about his troubled and chaotic childhood and

10  also could have demonstrated his diminished culpability due to the severe mental deterioration

11  caused by his relationship with Dianne and the physical abuse he suffered while incarcerated as a

12  very young man. Sherman also argues that trial counsel failed to hire a competent mental health

13  expert and to provide that expert with relevant mitigatory information.

14      At Sherman's penalty hearing, counsel called several of Sherman's relatives (including his

15  mother and stepfather) and acquaintances to testify on a various subjects. ECF No. 130-4, p. 33

16  through ECF No. 130-5, p. 56. Included in that testimony was information about Sherman's

17  childhood, his difficult transition to life outside prison after serving eleven years, and his turbulent

18  relationship with Dianne. These witnesses also testified about Dianne's feelings of animosity toward

19  her father, her interest in her father's money, and her ability to exert control over Sherman.

20      In addition, Sherman presented lengthy testimony from Dr. Pittel. ECF No. 130-6, p. 52

21  through ECF No. 130-9, p. 48. Dr. Pittel testified that, based on several factors, it was his opinion

22  that Sherman was heavily under the influence of amphetamines and alcohol when he committed the

23  crimes in this case. He also testified about Sherman's history of substance abuse and provided a

24  detailed overview of the effects of methamphetamine at the dosage that Sherman was consuming at

25  the time of the murder.

26  //

1    Dr. Pittel also discussed Sherman's dysfunctional family history and the physical, emotional,

2  and sexual abuse that Sherman endured while growing up.  In addition, he delved into the dynamics

3  of Sherman's relationship with Dianne and explained how, due to his background, Sherman was very

4  vulnerable to being manipulated by her.  He also testified that several witnesses had stated that

5  Dianne frequently talked about wanting her father dead and had spoke to Sherman, with other people

6  present, about killing her father.  His testimony also included information regarding Dianne's sexual

7  abuse allegations and his opinion about their impact on Sherman.

8    With his amended petition, Sherman included several declarations to support his claim that

9  the aforementioned lay witnesses could have provided testimony that would have probably resulted

10  in the jury returning a sentence less than death.  ECF Nos. 115-3 and 115-4.  Having reviewed these

11  declarations, the court is not convinced that the information they contain would have significantly

12  added to the mitigation case presented by Sherman's counsel.  Some of the witnesses cited by

13  Sherman did, in fact, testify at the penalty hearing.  In addition, much of the proffered information

14  overlaps or is similar to that presented in the penalty phase.  This is not an instance in which

15  dramatic or compelling events from Sherman's past were overlooked or omitted by trial counsel.  *Cf.*

16  *Wiggins v. Smith*, 539 U.S. 510, 513 (2003) ("Had it been able to place his excruciating life history

17  on the mitigating side of the scale, there is a reasonable probability that at least one juror would have

18  struck a different balance.").

19    As for counsel's alleged failure to hire a competent expert, Sherman argues that Pittel was

20  not a licensed psychologist and that he failed to gather sufficient information from collateral sources.

21  Sherman further argues that, had counsel provided their expert with a comprehensive social history,

22  counsel could have presented "the jury with compelling mitigating evidence such as that set forth in

23  the report by [current counsel's expert] Dr. Mark Cunningham." ECF No. 183, p. 37.  Here again,

24  however, Sherman has not shown prejudice.  Dr. Pittel was qualified as an expert at trial and it is

25  more likely than not that his testimony provided much of the basis for the jury finding three

26  mitigating factors in this case, especially the findings that Sherman committed the murder while

1   under the influence of extreme mental and emotional disturbance and under duress or under the

2   domination of another person (presumably Dianne).

3         The report prepared by Dr. Cunningham, a forensic psychologist specializing capital

4   sentencing, is a lengthy and scholarly analysis of what testimony and argument should have been

5   presented at Sherman's trial.  ECF No. 115-2.  Dr. Cunningham faults counsel for, among other

6   things, not presenting evidence related to adverse developmental factors experienced by Sherman,

7   such as trans-generational and genetic influences, dysfunctional family relationships and domestic

8   violence, substance abuse, confinement in adult prison as a teenager, and Sherman's pathological

9   relationship with Dianne.  While extremely detailed and lengthy, the report lacks compelling

10  findings or conclusions, beyond those already provided by Dr. Pittel's testimony, that would have,

11  with reasonable probability, impacted the jury's verdict.  In this court's view, the report amounts to

12  little more than Monday-morning quarterbacking and is relatively benign when compared to expert

13  opinions in cases where prejudice has been found.[8]

14        Consequently, Sherman has fallen well short of showing that trial counsel's performance in

15  investigating and presenting mitigation evidence fell below constitutional standards or resulted in

16  *Strickland*-level prejudice.  Oram was not ineffective in failing to present this claim in Sherman's

17  initial collateral proceeding.

18              4.  *Failure to rebut State's case in aggravation*

19        Finally, Sherman claims that Oram was ineffective in failing to present a claim that trial

20  counsel were ineffective in failing to adequately rebut the State's case in aggravation.  Specifically,

21  Sherman contends that trial counsel failed to uncover information regarding undisclosed benefits

22

23        [8]   *See, e.g., Rompilla v. Beard*, 545 U.S. 374, 392 (2005) (post-conviction experts found
24  petitioner "'suffers from organic brain damage, an extreme mental disturbance significantly impairing
    several of his cognitive functions'"); *Wiggins*, 539 U.S. at 518 ("'[D]etailed social service records [ ]
    recorded ... [petitioner's] borderline retardation.'"); *Williams v. Taylor*, 529 U.S. 362, 370 (2000)
25  (post-conviction testimony showed petitioner "was 'borderline mentally retarded,' had suffered repeated
    head injuries, and might have mental impairments organic in origin"); *Stankewitz v. Woodford*, 365 F.3d
26  706, 718 (9th Cir. 2004) (three post-conviction experts agreed petitioner "is brain-damaged" and one
    expert concluded he "is borderline retarded" and "suffers from significant brain dysfunction").

1    provided to three State's informant witnesses – Christine Kalter, Michael Placencia, and Stacey

2    Maher.  In addition, Sherman claims that effective counsel would have obtained mitigating evidence

3    from the Sandpoint (Idaho) Police Department related to Sherman's Idaho murder conviction, an

4    aggravating factor found by the jury.  He also claims that effective counsel would have rebutted

5    testimony from Rodney Miller, Dianne Bauer's ex-husband, that Sherman burglarized his home and

6    would have presented testimony from an institutionalization expert regarding the risk of Sherman

7    posing a future danger in the prison setting.

8            Kalter befriended Sherman while they were both incarcerated in the Clark County Detention

9    Center.  She testified in the penalty phase about Sherman's plan to use an optometry appointment as

10   a ruse to escape from jail.  ECF No. 130-3, p. 30-60; ECF No. 130-4, p. 1-6.  Placencia did not

11   testify at Sherman's trial, but he provided information about the escape plan, which included

12   solicitation to commit murder, to a sergeant with the Las Vegas police, Gayland Hammack, who

13   testified about that information in the penalty phase.  ECF No. 130-3, p. 7-30.  Maher, an employee

14   of an escort service in Las Vegas, testified in the guilt phase of the trial about her transactions with

15   Sherman in the days following the murder.  ECF No. 129-5, p. 44-61; ECF No. 129-6, p. 1-10.

16           Beyond Sherman's failure to provide convincing evidence that any of these witnesses

17   received undisclosed benefits in relation to their testimony, the testimony or information the

18   witnesses provided was corroborated by other evidence.  Sherman's written messages to Kalter and

19   Placencia and a recorded conversation between Sherman and Placencia supported the allegations

20   regarding Sherman's plan to escape from jail.  Credit card receipts and other physical evidence

21   corroborated Maher's testimony.  Consequently, this court discerns no prejudice resulting from trial

22   counsel's alleged failure to uncover information about undisclosed benefits supposedly provided to

23   the witnesses at issue.

24           With regard to the Idaho murder conviction, the State presented evidence in the penalty phase

25   that Sherman shot and killed a grocery store clerk in 1981 in the course of a burglary and attempted

26   robbery.  Sherman, who was seventeen years old when that murder was committed, faults trial

1  counsel for not presenting evidence from the Sandpoint Police Department that, according to

2  Sherman, shows that his accomplice, who was four years older than him, played a greater role in the

3  crime than portrayed by the State's witness (Andrew Anderson, a Sandpoint police detective) in the

4  penalty phase.  Specifically, Sherman claims that the evidence would have shown that the

5  accomplice was in the store at the time of the shooting (contrary to Anderson's testimony based on

6  the accomplice's statement that he was waiting outside) and that Anderson testified falsely that the

7  confidential informant who corroborated the information provided by the accomplice  was "a

8  business person in the community."[9]  ECF No. 183, p. 39.

9        These allegations notwithstanding, trial counsel made a substantial effort to rebut the State's

10  evidence related to the Idaho murder.  Counsel presented the testimony of Philip Robinson, the

11  prosecuting attorney who prosecuted the Idaho murder case.  ECF No. 130-6, p. 13-51.  Robinson's

12  testimony established that Sherman's accomplice and possibly the accomplice's father, both of

13  whom were more criminally sophisticated than Sherman, had come up with the plan for the crime

14  and provided Sherman with the murder weapon.  Robinson also testified that his office's

15  investigation showed that Sherman was likely in a state of panic when he fired the shots that killed

16  the clerk.  Moreover, Sherman's current allegations about the accomplice's greater role in the crimes

17  are belied by Sherman's own testimony at his sentencing hearing on the Idaho conviction.  ECF No.

18  58, p. 236-62.   Thus, here again, Sherman has not shown that counsel's performance fell below

19  constitutional standards or resulted in *Strickland*-level prejudice.

20        Rodney Miller testified in the penalty phase as to his belief that Sherman and Sherman's

21  brother, Matthew Stinton, burglarized his home a few weeks before the Bauer murder.[10]  ECF No.

22  130, p. 21-46.  Sherman claims that effective counsel would have rebutted Miller's testimony with

23  testimony from Erin Murphy and Tyna McNeill.  According to Sherman, Murphy, who temporarily

24  ─────────────

25        [9]    Sherman's second amended petition also alleges that available evidence shows that the
accomplice "was likely the actual shooter of the grocery clerk."  ECF No. 103, p. 145.

26        [10]   Although they were divorced at the time,  Miller and Dianne Bauer continued to share a home
together.

lived with him and Dianne, would have testified that she was the one who committed the burglary; and, McNeill, Stinton's girlfriend, would have testified that Dianne had sold items in a yard sale and later claimed that they had been stolen by Sherman.

There is no merit whatsoever to this claim. According to Miller's testimony, Miller found a pair of Sherman's sunglasses in his home after the burglary, Miller's neighbor saw two adult white males enter the home, and items taken in the burglary were in Sherman's possession when he was arrested. Even if taken as accurate, the proffered declaration from McNeill does not necessarily disprove that Sherman burglarized Miller's home. And, even if Murphy committed the burglary, it is unlikely that she would have admitted it to Sherman's trial counsel at the time, much less testify to it in open court. Also, in light of the other evidence in aggravation presented by the State, Miller's testimony about the burglary was relatively insignificant.

Likewise, Sherman's claim regarding trial counsel's failure to enlist the services of an institutionalization expert is also without merit. Here again, Sherman relies upon the report of Dr. Cunningham. According to that report, evidence could have been presented to the jury to show a very low probability that Sherman would commit future acts of violence while in prison.

In a memorandum apparently sent to Dr. Pittel about three weeks prior to trial, defense counsel (Nancy Lemcke) discussed the possibility of retaining an institutionalization expert to work on Sherman's case. ECF No. ECR No. 115, p. 2. However, she apparently did not follow through on that idea; and, in a declaration proffered in relation to Sherman's second amended petition (dated October 28, 2005), she states that she"could not recall whether [she] had a strategic justification for not investigating and presenting an institutionalization expert to rebut the state's future dangerousness presentation in the penalty phase." ECF No. 190, p. 12-13.

The issue of Sherman's future dangerousness was not an issue so pivotal that trial counsel performed unreasonably in failing to present the testimony of an institutionalization expert. *See Richter*, 131 S.Ct. at 789 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."). In

12

1    addition, the overall performance of Sherman's trial counsel "indicates active and capable

2    advocacy." *Id.* at 791.  Thus, an isolated error in judgment, "unless sufficiently egregious or

3    prejudicial," will not support a finding of ineffective assistance.  *Id.*

4          Oram was not ineffective in failing to present a claim based on trial counsel's alleged failure

5    to rebut the State's case in aggravation.

6          Because Sherman has not demonstrated "cause" – i.e., that his first post-conviction counsel

7    was ineffective – with respect to any of the ineffective assistance of trial claims at issue, the court

8    need not address the remaining two elements of the *Martinez* test.  *See Sexton*, 679 F.3d at 1157-58

9    ("Only if we determine that Sexton has demonstrated cause, would we proceed to determine if

10   Sexton has demonstrated prejudice . . . , and has also demonstrated a 'substantial claim of ineffective

11   assistance at trial.'")

12   **Request for Discovery and Evidentiary Hearing**

13         Sherman contends that "there is a clear need for discovery and an evidentiary hearing at this

14   juncture." ECF No. 183, p. 46.  He claims that an evidentiary hearing is appropriate on the issue of

15   whether first post-conviction counsel was ineffective in failing to investigate and plead the

16   ineffective assistance claims discussed above, as well as whether the underlying claims of ineffective

17   assistance of trial counsel have some merit.  With regard to discovery, he wants to try to obtain

18   additional information from law enforcement agencies related to his claim that the State failed to

19   disclose exculpatory information, documents related to Dianne and Lester Bauer bearing on his guilt

20   and penalty phase defenses, and documents related to Sherman and his family related to mitigation

21   evidence.

22         Because he seeks a hearing on procedural issues, the restrictions imposed by 28 U.S.C. §

23   2254(e)(2) do not necessarily apply to Sherman's request.  Even so, he must allege facts which, if

24   true, would entitle him to relief, in order to be entitled to an evidentiary hearing. *See, e.g., Mendoza*

25   *v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006) (holding that petitioner should have been granted a

26   hearing by the district court because he alleged facts that, if true, may warrant equitable tolling).  "If

the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *West v. Ryan*, 608 F.3d 477, 485 (9th Cir. 2010) (internal quotations omitted).

In analyzing Sherman's *Martinez* arguments above, the court accepted Sherman's proffered evidence at face value and nonetheless determined that none of his claims of ineffective assistance of post-conviction counsel are meritorious.  The discovery Sherman proposes is not likely to produce evidence that would strengthen his cause and prejudice argument.  Thus, the court declines to grant him leave to conduct discovery or an evidentiary hearing.

**IT IS THEREFORE ORDERED** that all of the sub-claims within Claim Two, except for Claim Two(Y), are dismissed as procedurally defaulted.

**IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** from the date on which this order is entered within which to file their answer to petitioner's remaining claims. In all other respects, the scheduling of this matter is governed by the order entered on November 19, 2010 (ECF No. 108).

**IT IS FURTHER ORDERED** that respondents' motion for leave to file excess pages (ECF No. 186) is GRANTED *nunc pro tunc* as of June 11, 2012.

DATED this 28th day of January, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

14