UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DONALD SHERMAN, | ) |
| Petitioner, | ) 2:02-CV-1349-LRH-VCF |
| vs. | ) |
| | ) **ORDER** |
| RENEE BAKER, *et al.*, | ) |
| Respondents. | ) |

On September 16, 2015, this court entered a final order denying petitioner Sherman's amended petition for writ of habeas corpus (ECF No. 103) on the merits. ECF No. 225. Judgment was entered the following day. ECF No. 226. On January 14, 2016, Sherman filed a motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e). ECF No. 227. With his motion, Sherman asks the court to reconsider its decision denying relief on the merits, as well as prior decisions denying leave to conduct discovery and dismissing claims as procedurally defaulted.

*Rule 59(e) Standards*

Federal Rule of Civil Procedure 59(e) provides authority for a court to alter, amend, or vacate a prior order. *See* Fed. R. Civ. Pro. 59(e); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1415 (9th Cir. 1994). Even so, the remedy provided by the rule is extraordinary and, in the interests of finality and conservation of judicial resources, to be used sparingly. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Where a party presents no arguments in a Rule 59(e) motion that have not already been raised, relief may be denied. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

Case law in the Ninth Circuit acknowledges that Rule 59(e) amendments are appropriate under the following circumstances: (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or its initial decision was manifestly unjust, or (3) there is an intervening change in controlling law. *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir.2003); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Rule 59(e) motions may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *Carroll*, 342 F.3d at 945.

*Discussion*

1. Denial of Ground One

Sherman argues that this court's decision to deny Ground One of his petition is erroneous in several respects. Ground One is a claim that Sherman's constitutional rights were violated due to an order *in limine* issued by the state trial court that had the effect of preventing him from presenting evidence of his ex-girlfriend's (Dianne Bauer's) culpability in the murder of her father. This court concluded that the Nevada Supreme Court's denial of Sherman's challenge to the state trial court's exclusion of the evidence was entitled to deference under 28 U.S.C. § 2254(d). ECF No. 225, p. 10-12. Additionally, this court reached the alternative conclusion that the trial court's exclusion of the evidence, if error, was harmless error – i.e., it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Id*. at 12 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Sherman advances several reasons why this court's analysis was flawed, but has not demonstrated that "the state court's decision to reject his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011). In particular, he has not shown that the state court's harmless error determination was unreasonable. *See id.* ("[A] prisoner who seeks federal habeas corpus relief must

satisfy *Brecht*, and if the state court adjudicated his claim on the merits, the *Brecht* test subsumes the limitations imposed by [§ 2254(d)]."). Regardless of how relevant the excluded evidence may have been on the issue of motive, the fact remains that it had little, if any, exculpatory value. As discussed in this court's order denying relief, even if the excluded evidence had been presented to the jury and viewed by the jury in a light most favorable to Sherman, it would have shown only that Dianne Bauer emotionally manipulated him into committing the murder. Sherman fails to explain how that would have resulted in an acquittal or conviction on a lesser charge than first degree murder.

With respect to the penalty phase, Sherman was permitted to present evidence that was excluded in the guilt phase – i.e., evidence showing that Bauer was able to manipulate Sherman and had made comments to others about her animosity toward her father, inheriting her father's money, and her father's alleged sexual abuse. And, as recounted in the court's final order denying habeas relief, a psychologist testified at length about Sherman's version of the murder and his justification for committing it. ECF No. 225, p. 13-14. Sherman faults this court for not resolving the "important factual issue" as to whether the trial court ruled off the record that the defense was not permitted to present evidence in the penalty phase about comments Bauer had made in Sherman's presence. ECF No. 227, p. 6-7. However, this court implicitly resolved that issue in Sherman's favor when it conducted its harmless error analysis. The court stands by its conclusion that, in light of the mitigating circumstance found by the jury, the presentation of that additional evidence would not have had an impact on the jury's penalty phase verdict.[1]

2. Procedural Default of Ineffective Assistance of Appellate Counsel Claims

Sherman also asks the court to revisit claims of ineffective assistance of appellate counsel this court dismissed as procedurally defaulted. He relies upon the decision in *Ha Van Nguyen v.*

---

[1] Sherman also faults this court for giving short shrift to the trial court's exclusion of testimony from a witness about an interaction between Bauer and Sherman on an Alaska roadway that Bauer described during her testimony for the State. However, defense counsel effectively cross-examined Bauer on this subject, using her preliminary hearing testimony to impeach her trial testimony about the incident. ECF No. 125-9, p. 15-19.

3

*Curry*, 736 F.3d 1287 (9th Cir. 2013), which was issued subsequent to this court's procedural default ruling. In that case, the Ninth Circuit expanded the holding of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), to include claims of ineffective assistance of appellate counsel: "We therefore conclude that the *Martinez* standard for 'cause' applies to all Sixth Amendment ineffective-assistance claims, *both trial and appellate*, that have been procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding." *Nguyen*, 736 F.3d at 1295 (emphasis added).

Sherman contends that, in light of *Nguyen*, this court must reconsider whether he can show cause and prejudice to excuse the default of the ineffective assistance of appellate counsel claims contained in Claim Sixteen of his petition. Claim Sixteen alleges that appellate counsel was ineffective by failing to raise, in essence, all the claims and factual allegations contained in his federal petition that could have been, but were not raised on direct appeal. It is only with respect to appellate counsel's failure to raise the issue under Claim Five of his federal petition that Claim Sixteen includes any specific factual allegations.

Likewise, the points and authorities in support of Sherman's Rule 59(e) motion do not include any supporting argument as to why the default of any of his appellate IAC claims (except for the claim related to Claim Five) should be excused under the *Martinez* standard. Thus, the court declines to reconsider its decision to dismiss Sherman's appellate IAC claims as procedurally defaulted. Sherman's appellate IAC claim in relation to Claim Five is addressed below.

        3. <u>Denial of Motions for Leave to Conduct Discovery</u>

Sherman argues that this court should reconsider its decisions denying formal discovery and factual development in relation to his prosecutorial misconduct allegations. He claims that "uncontradicted evidence of the State's knowing misconduct and presentation of false testimony should have been more than sufficient to authorize formal discovery and factual development in this case." ECF No. 227, p. 11. In this regard, he points to the Nevada Supreme Court's finding that the State improperly withheld information about the criminal histories of two informants (Michael Placencia and Christine Kalter). ECF No. 140-12, p. 5. He also refers to the fact that the State did

not dispute that it possessed records from the Longview Police Department (Longview, Washington), which, according to Sherman, show Dianne Bauer gave false testimony at trial.  Lastly, he cites to what he claims are "other instances[2] where the prosecutor knowingly presented, and failed to correct, the false testimony of their witnesses," which, according to Sherman, this court failed to acknowledge.  ECF No. 227, p. 12.

        Sherman claims that discovery is necessary to demonstrate the aforementioned evidence was in the actual possession of the prosecution thereby enabling him to satisfy elements this court found missing with respect to his *Napue*[3] claim.  Quoting *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005), he suggests that a demonstration that the prosecutor knowingly permitted the introduction of false evidence is grounds for "automatic" reversal.  *See Hayes*, 399 F.3d at 978 ("'Indeed, if it is established that the government knowingly permitted the introduction of false testimony reversal is "virtually automatic."'  *United States v. Wallach*, 935 F.2d 445, 456 (2nd Cir. 1991) (quoting *United States v. Stofsky*, 527 F.2d 237, 243 (2nd Cir.1975).").  He also cites to footnote nine in *Brecht*, which states, "Our holding does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict." *Brecht*, 507 U.S. at 638 n.9.

        Sherman's citation to *Hayes* is misleading inasmuch as the court in that case also noted that "[n]either *Napue* nor *Alcorta*[4] creates a *per se* rule of reversal" and the court still "must assess whether the constitutional violation was material." *Hayes*, 399 F.3d at 984.[5]  With respect to

---

[2] These all involve alleged benefits received by Christine Kalter and Michael Placencia in exchange for information and/or testimony.

[3] *Napue v. Illinois*, 360 U.S. 264 (1959).

[4] Referring to *Alcorta v. Texas*, 355 U.S. 28 (1957), which held that the state violates a criminal defendant's right to due process of law when, although not soliciting false evidence, it allows false evidence to go uncorrected when it appears.

[5] Indeed, this court quoted *Hayes*'s recitation of the *Napue* elements in its final order denying habeas relief.  ECF No. 225, p. 24.

footnote nine in *Brecht*, the Ninth Circuit has characterized this type of error as one that is "incapable of redemption by actual prejudice analysis" and held that "the key consideration is whether the integrity of the proceeding was so infected that the entire trial was unfair." *Hardnett v. Marshall*, 25 F.3d 875, 879 (9th Cir. 1994).  The court in *Hardnett* concluded that the petitioner's trial involved a "pattern of egregious [prosecutorial] misconduct" combined with trial court error, but that the petitioner was not entitled to relief because it was not "'the unusual case' where the combination of misconduct and error infected the entire proceeding and destroyed its fairness." *Id*. at 880.  In particular, the court determined that "[t]he poison was not removed from the case but it was confined and did not spread to the entire trial." *Id*. at 880-81.

        This court analyzed, under the appropriate standard, the materiality of the Longview Police Department/Dianne Bauer evidence and the Placencia/Kalter evidence. ECF No. 225, p. 18-22.  To the extent Sherman has demonstrated any prosecutorial misconduct in this case, it can hardly be described as "egregious" or indicative of a "pattern."  The subject matter of the alleged misconduct is limited in scope, and this court remains unconvinced that the misconduct was as blatant or intentional as Sherman claims.  In short, Sherman falls well short of showing that this may be "the unusual case" that calls for relief under *Brecht*'s footnote nine.  The likelihood that additional discovery will enable him to meet that standard is not high enough for this court to alter or amend its final order denying relief.

        4.  <u>Dismissal of Claims Seven, Eight(D), and Seventeen</u>

        Sherman argues that this court should reconsider its dismissal of certain claims of trial court error and prosecutorial misconduct that, according to him, were either exhausted or not raised due to ineffective assistance of appellate counsel.  In deciding respondents' motion to dismiss, this court determined that Claim Seven and Claim Eight(D) are procedurally defaulted because Sherman did not present them until his second state post-conviction proceeding, which the Nevada Supreme Court dismissed on adequate and independent state procedural grounds. ECF No. 179, p. 12-24.

///

Sherman argues this court erred in doing so because it did not separate out the portions of those claims that were exhausted in his direct appeal. He further argues that, rather than find his cumulative error claim (i.e., Claim Seventeen) procedurally defaulted, this court should have considered the portions that were exhausted and determined whether there was prejudice under *Brecht*. In addition, Sherman contends that *Nguyen* obligates this court to consider the procedurally defaulted portions of those claims because appellate counsel was ineffective in failing to raise them on direct appeal.

Sherman analogizes his case to *Lopez v. Ryan*, 630 F.3d 1198 (9th Cir. 2011), where the Ninth Circuit rejected petitioner's attempt to enhance his federal court habeas claim with new evidence, but nonetheless considered the claim as presented to the state court. 630 F.3d at 1204-06. That hardly compares, however, to what Sherman asks the court to do here, which is piece together portions of his state appellate briefs to construct "exhausted" claims. As respondents point out, a claim is not exhausted unless the state court brief notifies the state court that petitioner is "making a claim under the U.S. Constitution . . . and describe[s] 'both the operative facts and the federal legal theory on which his claim is based so that the state courts [could] have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Castillo v. McFadden*, 399 F.3d 993, 998-99 (9th Cir. 2005) (citations and internal quotation marks omitted). Because Sherman's state court briefs did not do this with respect to Claim Seven or Claim Eight(D), this court did not commit clear error in concluding that those claims are procedurally defaulted.

This court also stands by its decision to dismiss Sherman's cumulative error claim. The Ninth Circuit has held that a claim of cumulative error was not exhausted where "cumulative error was not labeled as an issue in the [state court] brief's table of contents and the petitioner did not argue cumulative error or cite any authority on cumulative error." *Wooten v. Kirkland*, 540 F.3d 1019, 1026 (9th Cir. 2008). Sherman has not shown that this holding does not apply to his cumulative error claim.

///

1    Lastly, Sherman's *Nguyen* argument is a non-starter in that he is seeking to excuse the default
2 of non-IAC claims.  *Martinez* applies only to ineffective assistance of trial or, under *Nguyen*,
3 appellate counsel.  It has not been expanded to other types of claims.  *Pizzuto v. Ramirez*, 783 F.3d
4 1171, 1177 (9th Cir. 2015) (explaining that the Ninth Circuit has "not allowed petitioners to
5 substantially expand the scope of *Martinez* beyond the circumstances present in *Martinez*"); *Hunton*
6 *v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013) (denying petitioner's claim that *Martinez*
7 permitted the resuscitation of a procedurally defaulted *Brady*[6] claim, holding that only the Supreme
8 Court could expand the application of *Martinez* to other areas).

9    5. Treatment of Claim Five and Related Appellate IAC Claim

10    Sherman argues that this court is required to reconsider its dismissal of his claim that
11 appellate counsel was ineffective in failing to argue on direct appeal the issue presented in Claim
12 Five of his federal petition – i.e., that his constitutional rights were violated by improper comments
13 by the trial judge during jury selection.  As with the appellate IAC claims discussed above, Sherman
14 argues that reconsideration is warranted because of the intervening decision in *Nguyen*.  Unlike his
15 argument relative to those claims, however, Sherman provided specific factual allegations and
16 evidence to support this claim – in particular, a declaration from appellate counsel indicating that he
17 did not raise the issue on appeal because he had not raised a contemporaneous objection to the trial
18 judge's comments and that he did not otherwise have a strategic justification for not raising the issue.
19 ECF No. 115-4, p. 52-53.

20    Sherman also contends that this court overlooked the substantive claim of trial court error
21 and only addressed the issue as one of ineffective assistance of trial counsel.  On this point, he also
22 argues that this court must address the claim *de novo* because the Nevada Supreme Court did not
23 adjudicate the claim on the merits.

24    The improper comments challenged in Claim Five are primarily ones in which the trial judge
25 responded to jurors' religion-based qualms about the death penalty by noting that the Bible condones
26

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

8

1  death as a form of punishment.  Sherman also asserted in Claim Five that the trial judge was
2  disparate in his treatment of death-scrupled and life-scrupled jurors.  According to Sherman, the trial
3  judge's misconduct "skewed the composition of the jury towards a tribunal that was organized to
4  return a verdict of death and contaminated the jurors . . . with inflammatory, irrelevant, and
5  prejudicial information that was contrary to the state law sentencing scheme in capital cases and a
6  violation of the Eight Amendment right to a reliable sentencing determination."  ECF No. 210, p. 79.
7       Sherman's arguments notwithstanding, this court did review Claim Five *de novo* and
8  determined that any improper conduct by the trial judge in the jury selection process did not rise to
9  the level of a constitutional violation warranting habeas relief.  Moreover, this court did not
10 speculate, as Sherman contends, that there is no federal law addressing alleged misconduct by the
11 trial court during the jury selection process.  Instead, the court merely explained why the U.S.
12 Supreme Court cases cited by Sherman did not support his claim for relief.
13      To clarify any ambiguity, the federal law question posed by Claim Five is whether the trial
14 court's voir dire process resulted in the selection of an impartial jury.  *See Morgan v. Illinois*, 504
15 U.S. 719, 729 (1992) ("The Constitution, after all, does not dictate a catechism for *voir dire*, but only
16 that the defendant be afforded an impartial jury.").  This court considered the particular instances of
17 alleged misconduct cited by Sherman within the context of the voir dire process as a whole and
18 concluded that he failed to demonstrate that the jury (or any particular juror) chosen in his case was
19 not impartial, as that term is defined by the Supreme Court.  *See Wainwright v. Witt*, 469 U.S. 412,
20 423 (1985) (holding an impartial jury consists of nothing more than "jurors who will conscientiously
21 apply the law and find the facts").
22      In seeking reconsideration, Sherman accuses this court of believing "that a state trial court
23 could tell the first two Christian jurors on the panel that Bible prescribes the death penalty as the
24 appropriate punishment for murder and then to remove them from the venire without contravening
25 the federal constitutional [sic]."  ECF No. 227, p. 24.  This is a mischaracterization, or at least a
26 gross oversimplification, of what occurred.  With respect to one of the jurors, the trial judge's

9

comment about the Bible was followed by several questions from the prosecutor, in response to which the juror continued to express her reservations about the death penalty. ECF No. 128-11, p. 22-26. Even so, the trial court initially rejected the State's challenge for cause. *Id*. After additional questioning by the defense and the trial judge, the juror stated that she did not think she could impose the death penalty under any circumstances. *Id.*, p. 26-30. It was only then that the trial court dismissed her for cause. *Id*. As for the other juror, she was dismissed for cause after stating unequivocally, in response to questioning by defense counsel, that she would not consider the death penalty as a possible punishment. ECF No. 128-14, p. 152. Both of the dismissals were in accordance with federal law. *See Lockhart v. McCree*, 476 U.S. 162, 173 (1986) (holding that the Constitution does not prohibit states from "death qualifying" juries in capital cases).

  This court is also not convinced that the trial court was markedly uneven in its treatment of potential jurors who expressed disfavor of the death penalty as compared to those who expressed reluctance to consider mitigating circumstances. More to the point, the court stands by its conclusion that the record does not support Sherman's claim that the judge's conduct resulted in a jury that was predisposed to imposing a sentence of death. Accordingly, the court also declines to reconsider whether Sherman's trial counsel or appellate counsel were ineffective in failing to adequately address the trial judge's conduct during jury selection.

*Certificate of Appealability*

  Finally, as an alternative form of relief, Sherman asks this court to expand its certificate of appealability to include Claims Two, Three, Five, Seven, Eight, Sixteen, and Seventeen. Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only

///

if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Sherman's petition, the court finds that the *Slack* standard is not met with respect to the court's resolution of Claim Two, Three, Five, Seven, Eight, Sixteen, or Seventeen, or with respect to its procedural rulings. In addition, reasonable jurists would agree that petitioner failed, under the rigorous standards of Fed. R. Civ. P. 59(e), to show grounds for altering either the habeas denial or the COA determination. Thus, the court declines to expand its COA to include additional habeas claims or the denial of his motion to alter or amend judgment.

**IT IS THEREFORE ORDERED** that petitioner's motion to alter or amend judgment (ECF No. 227) is DENIED.

**IT IS FURTHER ORDERED** that an expansion of the certificate of appealability is DENIED.

DATED this 8th day of September, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE